UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MS. JAMIE EVANS<br>1116 New Brunswick Avenue<br>Manasauan, NJ  08736<br><br>PLAINTIFF,<br><br>v.<br><br>THE WASHINGTON CENTER<br>FOR INTERNSHIPS AND ACADEMIC<br>SEMINARS<br>1333 16th Street NW<br>Washington, DC  20036<br><br>STEPHEN KULAWY<br>Doctor of Chiropractic (D.C.)<br>5525 Wisconsin Avenue NW<br>Suite 601<br>Washington, DC  20015<br><br>CENTER FOR INTEGRATIVE<br>BODY THERAPIES<br>5525 Wisconsin Avenue NW<br>Suite 601<br>Washington, DC  20015<br><br>DR. DANIEL STORK<br>5525 Wisconsin Avenue NW<br>Suite 401<br>Washington, DC  20015<br><br>**(continued)** | **JURY TRIAL DEMANDED**<br><br><br><br>CASE NO.  _____ |

| | |
|---|---|
| NATIONAL INTEGRATED<br>HEALTH ASSOCIATES<br>a.k.a. Physical Medical Associates, LLC<br>5225 Wisconsin Avenue NW<br>Suite 401<br>Washington, DC  20015<br><br>     DEFENDANTS. | |

## COMPLAINT

Plaintiff Jamie Evans, through counsel, brings this action against Defendants The Washington Center for Internships and Academic Seminars (The Washington Center), Steven Kulawy, D.C.,[1] The Center for Integrative Body Therapies (Integrative Body Therapies), Dr. Daniel Stork, and National Integrated Health Associates (NIHA) to recover compensatory and punitive damages and reasonable attorney's fees and costs for acts of negligence, sexual battery, and sexual harassment.

### I.  PARTIES AND JURISDICTION.

1. Jamie Evans is a citizen and resident of New Jersey, residing at 1116 New Brunswick Avenue in Manasauan, NJ 08736.

2. The Washington Center for Internships and Academic Seminars (hereinafter The Washington Center) is a placement center for college students seeking internships in Washington, D.C.  The Washington Center is incorporated and has its principal place of business in Washington, DC, at 1333 16th Street NW, Washington, DC 20036.

---

[1] Doctor of Chiropractic, abbreviated D.C.

-2-

3. Steven Kulawy is a doctor of chiropractic medicine. He is licensed in Washington, DC, and the Commonwealth of Virginia. Dr. Kulawy practices at the Center for Integrative Body Therapies in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 601, Washington, DC 20015.

4. The Center for Integrative Body Therapies is a health practice with its principal place of business in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 601, Washington, DC 20015.

5. Dr. Daniel Stork is an owner and partner of National Integrated Health Associates, a health practice incorporated in and with its principal place of business in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 401, Washington, DC 20015.

6. National Integrated Health Associates (NIHA), a.k.a., Physical Medical Associates, LLC, is a health practice incorporated and with its principal place of business in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 401, Washington, DC 20015.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (2008), because diversity of citizenship between the parties. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as Ms. Evans seeks $500,000.00 in compensatory damages.

8. Jurisdiction is also proper under the District of Columbia Human Rights Law, D.C. Code § 2-1403.16(a) (2008).

## II. FACTS.

9. Ms. Evans reasserts paragraphs 1-8.

10. Ms. Evans was a 19-year-old sophomore at Stockton College in New Jersey in March 2007.

11. Ms. Evans was interested in a career as a physical therapist.

12. In March 2007, Ms. Evans applied to The Washington Center for a 2007 summer internship in physical therapy.

13. The Washington Center accepted Ms. Evans as an intern.

14. Ms Evans would receive twelve college credits for successfully completing the internship.

15. The cost of the summer internship was approximately $7200.00. Ms. Evans took out a loan to pay this expense.

16. On The Washington Center's recommendation, Ms. Evans took out a personal, high-interest loan of $800.00 for personal expenses for the summer.

17. The Washington Center placed Ms. Evans at The Center for Integrative Body Therapies.

18. Dr. Kulawy was the chiropractor whose practice was at Integrative Body Therapies. He was also the contact with The Washington Center.

19. The Washington Center arranged for Ms. Evans to work with Dr. Kulawy.

20. The Washington Center did not visit Integrative Body Therapies before placing Jamie Evans at the site.

21. The Washington Center did not interview Dr. Kulawy in person before placing Jamie Evans as an intern at Integrative Body Therapies.

22. The Washington Center did not investigate Dr. Kulawy's professional credentials and possible professional discipline before placing Jamie Evans as an intern at Integrative Body Therapies.

23. At the end of May 2007, Ms. Evans came to Washington, D.C., to begin her physical therapy internship.

24. The Washington Center held mandatory seminars concerning appropriate behavior for the interns. The Washington Center specifically warned the interns not to get involved with office gossip.

25. On May 29, 2007, Jamie Evans started her internship with Integrative Body Therapies.

26. Ms. Evans worked with Dr. Kulawy and several physical therapists.

27. During her first few days at Integrative Body Therapies, Ms. Evans was informed that when Dr. Kulawy was with a female patient, the door to the exam room had to remain open.

28. No one explained the reason for this policy concerning Dr. Kulawy to Ms. Evans.

29. Dr. Kulawy began making sexual advances and comments to Ms. Evans.

30. Dr. Kulawy repeatedly approached Ms. Evans from behind when she was typing and massaged her shoulders.

31. Dr. Kulawy repeatedly wrapped his arm around Ms. Evans' waist while they were walking through the office.

32. Dr. Kulawy repeatedly made comments to Ms. Evans about her appearance.

33. As a result, Ms. Evans grew increasingly anxious and uncomfortable working around Dr. Kulawy.

34. Ms. Evans stopped wearing make-up and changed the style of her clothes to make herself less attractive in an effort to stop Dr. Kulawy's advances and comments as well as any possible unwanted attention from other males.

35. Upset, Ms. Evans called her parents about Dr. Kulawy's sexual behavior toward her and asked her parents how to handle Dr. Kulawy.

36. Ms. Evans also asked her fellow summer interns how to handle Dr. Kulawy.

37. Ms. Evans frequently drove home to New Jersey to seek the comfort of her parents.

38. Ms. Evans had not worked in a professional office before her internship and was unsure of how to deal with Dr. Kulawy's inappropriate behavior.

39. Integrative Body Therapies, Dr. Stork, and National Integrated Health Associates did not have any complaint mechanism in place for employees who were subjected to sexual harassment.

40. If Integrative Body Therapies, Dr. Stork, and National Integrated Health Associates had any complaint mechanism in place for employees who were subjected to sexual harassment, they did not inform Ms. Evans about them.

41. This was not the first time that Dr. Kulawy had engaged in inappropriate sexual touching.

42. Dr. Kulawy had a history of inappropriate sexual behavior in the office and work place.

43. The District of Columbia Health Professional Licensing Administration's Board of Chiropractic suspended Dr. Kulawy's license to practice for one year on March 20, 2003, on the basis of inappropriate sexual conduct with female patients.

44. On July 14, 2004, the District of Columbia Board of Chiropractic reinstated Dr. Kulawy's license. The Board ordered Dr. Kulawy to complete an ethics course offered by the National Chiropractic Board, continue involvement in applicable 12-step programs, and hire a board-approved chaperone to be present at all times Dr. Kulawy had any interactions with female patients.

45. Dr. Kulawy agreed to the imposed conditions on January 11, 2005.

46. On November 14, 2006, the District of Columbia Board of Chiropractic found that Dr. Kulawy was not in compliance with the order that a female chaperone be present during all his interactions with female patients. The Board fined Dr. Kulawy $1,000.00.

47. On September 20, 2002, the Virginia Board of Medicine found that Dr. Kulawy had fondled the breasts of female patients and placed Dr. Kulawy on indefinite probation.

48. Dr. Kulawy informed the Virginia Board that he was also under investigation by the District of Columbia Board of Medicine for inappropriately touching a female patient in June 2000.

49. The Virginia Board ordered Dr. Kulawy to continue therapy, complete a course on ethics, and have a chaperone present at all times during evaluation and treatment of a female patient.

50. Dr. Kulawy attended Sex Addicts Anonymous meetings in support of his recovery.

51. Dr. Kulawy told the Virginia Board that he sold his practice in September 2002 to focus on issues that caused him to inappropriately touch his female patients.

52. On October 20, 2004, the Virginia Board terminated Dr. Kulawy's indefinite probation, but required that a chaperone be present during evaluation and treatment of female patients and that Dr. Kulawy continue therapy.

53. During mid-July 2007, Julie Zimmerman, an employee of The Washington Center, conducted a site visit at Integrative Body Therapies.

54. As Ms. Zimmerman left Integrative Body Therapies after meeting individually with Dr. Kulawy, Ms. Evans followed her out the door and reported Dr. Kulawy's sexual touching and comments.

55. Ms. Evans also told Ms. Zimmerman about the open-door requirement whenever Dr. Kulawy was treating a female patient.

56. Ms. Zimmerman directed Ms. Evans to go back into the office to find out the reason for the open-door policy.

57. An Integrative Body Therapies employee told Ms. Evans that the open door was necessary in light of Dr. Kulawy's previous inappropriate touching of female patients and fondling their breasts.

58. Ms. Evans told Kathleen Troust, a physical therapist who she worked with during the internship, that Dr. Kulawy was inappropriately touching her and commenting on her appearance.

59. Ms. Troust immediately confronted Dr. Kulawy in his office with the door closed. Ms. Evans overheard Ms. Troust screaming at Dr. Kulawy concerning his behavior with Ms. Evans.

60. Later that same day, Dr. Kulawy called Ms. Evans into his office. Dr. Kulawy instructed Ms. Evans to sit down and stood between her and the door, preventing Ms. Evans from leaving. Dr. Kulawy then asked her in a derisive, threatening manner if it was all right to close the door.

61. This was Ms. Evans' last day at Integrative Body Therapies. On The Washington Center's recommendation, Ms. Evans did not return to work.

62. Dr. Kulawy's sexual advances and comments caused Ms. Evans to stop leading a normal life. She stopped showering, refused to take part in touring and other recreational activities, and stayed in bed watching TV.

63. As a result of Dr. Kulawy's sexual battery and sexual harassment, Ms. Evans changed her career choice to environmental sciences to avoid the discomfort and bad memories of working in a personal interaction-related profession.

64. Ms. Evans becomes emotionally and physically distressed when she remembers Dr. Kulawy's sexual battery and sexual harassment of her.

### III.  FIRST CAUSE OF ACTION.
### NEGLIGENCE
### THE WASHINGTON CENTER FOR INTERNSHIPS
### AND ACADEMIC SEMINARS.

65. Ms. Evans reasserts paragraphs 1-64.

66. The Washington Center had a duty to adhere to the industry standard of care by investigating Dr. Kulawy's background, professional credentials, disciplinary record, and possible recent professional discipline before placing Ms. Evans at the Center for Integrative Body Therapies.

67. The industry standard requires a placement agency to review the business requesting interns before placing an intern with the company, including a site visit, review of professional credentials, and discussion with human resources at the company.

68. The Washington Center did not visit Integrative Body Therapies, investigate Dr. Kulawy's professional credentials and possible discipline, contact human resources at

Integrative Body Therapies, or interview Dr. Kulawy in person before deciding to place an intern there.

69. The Washington Center's negligence in failing to follow the industry standard was the proximate cause of Ms. Evans' injuries resulting from Dr. Kulawy's sexual battery and comments and sexual harassment of Ms. Evans.

### IV.  SECOND CAUSE OF ACTION.
### SEXUAL BATTERY - DR. KULAWY.

70. Ms. Evans reasserts paragraphs 1-69.

71. Dr. Kulawy intentionally touched Ms. Evans in an offensive manner each time he came up behind her and massaged her shoulders while she was typing or filing and each time he put his arm around her waist.

72. Dr. Kulawy did not have Ms. Evans' permission to touch her.

73. Dr. Kulawy's inappropriate sexual touching was offensive to Ms. Evans.

74. Dr. Kulawy's inappropriate sexual touching was the proximate cause of Ms. Evans' injuries.Given Dr. Kulawy's attendance at Sex Addicts Anonymous meetings, therapy sessions, and discipline by the District of Columbia Board of Chiropractic and Virginia Board of Medicine, he knew or should have known that his sexual touching was offensive and he should not touch female employees without their permission.

### V.  THIRD CAUSE OF ACTION
### NEGLIGENCE
### INTEGRATIVE BODY THERAPIES, DR. STORK, NIHA

75. Ms. Evans reasserts paragraphs 1-74.

76. Integrative Body Therapies, Dr. Stork, and NIHA knew or should have known that Dr. Kulawy had his chiropractic license suspended due to his inappropriate touching of female patients and fondling their breasts.

77. Given this knowledge, it was foreseeable to Integrative Body Therapies, Dr. Stork, and NIHA that Dr. Kulawy would commit sexual battery against and sexually harass other female patients and/or employees.

78. Integrative Body Therapies, Dr. Stork, and NIHA had a duty to warn Ms. Evans about Dr. Kulawy's past sexual battery of females.

79. Integrative Body Therapies, Dr. Stork, and NIHA did not warn Ms. Evans about Dr. Kulawy's past sexual battery of females.

80. Integrative Body Therapies, Dr. Stork, and NIHA did not take any actions to prevent Dr. Kulawy from committing sexual battery against Ms. Evans.

81. As a result of Integrative Body Therapies', Dr. Stork's, and NIHA's failure to exercise their duty of care, Dr. Kulawy committed sexual battery on Ms. Evans.

82. Integrative Body Therapies', Dr. Stork's, and NIHA's failure to exercise their duty of care was the proximate cause of Ms. Evans' injuries.

## VI. FOURTH CAUSE OF ACTION.
## SEXUAL HARASSMENT
## DR. KULAWY.

83. Ms. Evans reasserts paragraphs 1-82.

84. Dr. Kulawy sexually harassed Ms. Evans, in violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 and 2-1402 (2008).

85. Dr. Kulawy repeatedly sexually touched Ms. Evans and commented on her appearance.

86. Dr. Kulawy intentionally intimidated Ms. Evans after she told physical therapist Kathryn Troust about Dr. Kulawy touching her when he called Ms. Evans into his office alone and closed the door and stood between her and the door, not permitting her to leave.

### VII.  FIFTH CAUSE OF ACTION.
### RESPONDEAT SUPERIOR
### INTEGRATIVE BODY THERAPIES

87. Ms. Evans reasserts paragraphs 1-86.

88. Integrative Body Therapies employs Dr. Kulawy as a chiropractor.  Dr. Kulawy is therefore an agent of this Defendant.

89. Integrative Body Therapies aided Dr. Kulawy in his intimidation and sexual harassment of Ms. Evans because it invested him with authority and supervisory powers over her.

90. Integrative Body Therapies knew or should have known that Dr. Kulawy had his chiropractic license suspended due to his inappropriate touching of female patients and fondling their breasts.

91. Given this knowledge, it was foreseeable to Integrative Body Therapies that Dr. Kulawy would commit sexual battery against and sexually harass other female patients and/or employees.

92. Integrative Body Therapies had the duty to inform females working with Dr. Kulawy of his previous sexual misbehavior against women.

93. Integrative Body Therapies did not inform Ms. Evans of Dr. Kulawy's propensity for sexual battery and sexual harassment of women.

94. Integrative Body Therapies' failure to warn Ms. Evans of Dr. Kulawy's propensity for sexual battery was the proximate cause of the injuries Ms. Evens suffered from Dr. Kulawy's sexual battery.

95. Integrative Body Therapies is therefore vicariously liable for Dr. Kulawy's tort of sexual battery.

96. Integrative Body Therapies' failure to exercise reasonable care to prevent any sexually harassing behavior by Dr. Kulawy.

97. Integrative Body Therapies did not have any complaint mechanism in place for employees subjected to sexual harassment.

98. If Integrative Body Therapies had any complaint mechanism in place for employees who were subjected to sexual harassment, it did not inform Ms. Evans about them.

99. Integrative Body Therapies is vicariously liable for Dr. Kulawy's sexual harassment of Ms. Evans.

## VIII.  SIXTH CAUSE OF ACTION.
## RESPONDEAT SUPERIOR
## DR. STORK AND NIHA.

100. Ms. Evans reasserts paragraphs 1-99.

101. NIHA and Dr. Stork own and operate the Center for Integrative Body Therapies.

102. NIHA and Dr. Stork employ Dr. Kulawy as a chiropractor at The Center for Integrative Body Therapies.  Dr. Kulawy is therefore an agent of these two defendants.

103. NIHA and Dr. Stork aided Dr. Kulawy in his sexual battery and sexual harassment of Ms. Evans because it invested him with authority and supervisory powers over her.

104. NIHA and Dr. Stork knew or should have known that Dr. Kulawy had his chiropractic license suspended due to his inappropriate touching of female patients and fondling their breasts.

105. Given this knowledge, it was foreseeable to NIHA and Dr. Stork that Dr. Kulawy would commit sexual battery against and sexually harass other female patients and/or employees.

106. NIHA and Dr. Stork had the duty to inform females working with Dr. Kulawy of his previous sexual misbehavior against women.

107. NIHA and Dr. Stork did not inform Ms. Evans of Dr. Kulawy's propensity for sexual battery and sexual harassment of women.

108. NIHA's and Dr. Stork's failed to warn Ms. Evans of Dr. Kulawy's propensity for sexual battery. This failure was the proximate cause of the injuries Ms. Evens suffered from Dr. Kulawy's sexual advances.

109. NIHA and Dr. Stork are therefore vicariously liable for Dr. Kulawy's tort of sexual battery.

110. NIHA and Dr. Stork failed to exercise reasonable care to prevent any sexually harassing behavior by Dr. Kulawy.

111. Dr. Stork and NIHA did not have any complaint mechanism in place for employees who were subjected to sexual harassment.

112. If Dr. Stork and NIHA had any complaint mechanism in place for employees who were subjected to sexual harassment, it did not inform Ms. Evans about them.

113. Dr. Stork and NIHA are vicariously liable for Dr. Kulawy's sexual harassment of Ms. Evans.

### IX. REQUEST FOR RELIEF.

Plaintiff Jamie Evans respectfully asks that this Court grant the following relief:

A. Compensatory damages in the amount of $500,000.00;

B. Punitive damages against Dr. Kulawy, to deter him from future sexual battery and sexual harassment;

C. Reasonable attorney's fees and costs pursuant to D.C. Code § 2-1403.16(b) (2008); and

D. Any other relief this Court deems appropriate.

May 22, 2008                                Respectfully submitted,

                                            **KLIMASKI & ASSOCIATES, P.C.**

                                            _____
                                            James R. Klimaski, #243543

                                            _____
                                            Lynn I. Miller, #941559

                                            _____
                                            Megins S. Skolnick, #498452

                                            1625 Massachusetts Avenue NW
                                            Suite 500
                                            Washington, DC 20036-2245
                                            (202) 296-5600
                                            (202) 296-5601 Fax
                                            klimaski@klimaskilaw.com
                                            skolnick@klimaskilaw.com
                                            miller@klimaskilaw.com

                                            *Counsel for Jamie Evans*

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Ms. JAMIE EVANS

## DEFENDANTS
Washington Ctr. for Internships, Dr. Stephen Kulawy, Ctr. for Integrative Therapies, et al.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF: New Jersey
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
James R. Klimaski, Lynn I. Miller, Megins Skolnick
1625 Massachusetts Avenue NW -- Suite 500
Washington, DC 20036-2245
202-296-5600

ATTORNEYS (IF KNOWN)
Not known at this time.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ● 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|   | PTF | DFT |   | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ● 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ● 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
- ☐ 410 Antitrust

### ● B. Personal Injury/Malpractice
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☒ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Sexual battery and sexual harassment, DC Human Rights Law, DC Code 2-1403.16(a)(2008) and 28 USC 1332 (2008)

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐  DEMAND $ 500,000.00  Check YES only if demanded in complaint  JURY DEMAND: YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE May 22, 2008    SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.