UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MS. JAMIE EVANS<br>1116 New Brunswick Avenue<br>Manasauan, NJ  08736<br><br>     PLAINTIFF,<br><br>     v.<br><br>THE WASHINGTON CENTER<br>FOR INTERNSHIPS AND ACADEMIC<br>SEMINARS<br>1333 16th Street NW<br>Washington, DC  20036<br><br>STEVEN KULAWY<br>Doctor of Chiropractic (D.C.)<br>5525 Wisconsin Avenue NW<br>Suite 409<br>Washington, DC  20015<br><br>CENTER FOR INTEGRATIVE<br>BODY THERAPIES<br>aka Physical Medicine Associates, LLC<br>5525 Wisconsin Avenue NW<br>Suite 409<br>Washington, DC  20015<br><br>DANIEL G. STORCK<br>5525 Wisconsin Avenue NW<br>Suite 401<br>Washington, DC  20015 | FIRST AMENDED COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br><br>CASE NO.  1:08–cv– 0875 –ESH<br><br><br>Judge Helen Segal Huvelle<br><br><br>July 2, 2008 |

(continued)

NATIONAL INTEGRATED
HEALTH ASSOCIATES, LLC,
5225 Wisconsin Avenue NW
Suite 401
Washington, DC  20015

    DEFENDANTS.

## FIRST AMENDED COMPLAINT

Plaintiff Jamie Evans, through counsel, brings this action against Defendants The Washington Center for Internships and Academic Seminars (The Washington Center); Steven Kulawy, D.C.;[1] The Center for Integrative Body Therapies (Integrative Body Therapies or CIBT), aka Physical Medicine Associates LLC (PMA); Daniel G. Storck; and National Integrated Health Associates LLC (NIHA) to recover compensatory and punitive damages and reasonable attorney's fees and costs for acts of negligence, battery, and sexual harassment.

### I. PARTIES AND JURISDICTION.

1.    Jamie Evans is a citizen and resident of New Jersey, residing at 1116 New Brunswick Avenue in Manasauan, New Jersey 08736.

2.    The Washington Center for Internships and Academic Seminars (hereinafter The Washington Center) is a placement center for college students seeking internships in Washington, D.C.  The Washington Center is incorporated and has its principal place of business in Washington, DC, at 1333 16th Street NW, Washington, DC 20036.

---

[1] Doctor of Chiropractic, abbreviated here as D.C.

3. Steven Kulawy is a doctor of chiropractic medicine. He is licensed in Washington, DC, and the Commonwealth of Virginia. Dr. Kulawy practices at the Center for Integrative Body Therapies in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 409, Washington, DC 20015.

4. The Center for Integrative Body Therapies (CIBT or Integrative Body Therapies) is a trade name for Physical Medicine Associates LLC (PMA) and is a health practice with its principal place of business in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 409, Washington, DC 20015.

5. Daniel Storck is an owner and partner of National Integrated Health Associates LLC (NIHA), a health practice incorporated in and with its principal place of business in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 401, Washington, DC 20015.

6. Doing business as CIBT, Physical Medicine Associates LLC (PMA) is a health practice, organized as a limited liability corporation, and with its principal place of business in Washington, DC, at 5225 Wisconsin Avenue NW, Suite 401, Washington, DC 20015. Daniel Storck is an owner and manager of PMA.

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 (2008), because diversity of citizenship between the parties. The amount in controversy exceeds $75,000.00, exclusive of interest and costs, as Ms. Evans seeks $500,000.00 in compensatory damages.

8. Jurisdiction is also proper under the District of Columbia Human Rights Law, D.C. Code § 2-1403.16(a) (2008).

## II.  FACTS.

9. Ms. Evans reasserts paragraphs 1-8.

10. Ms. Evans was a 19-year-old sophomore at Stockton College in New Jersey in March 2007.

11. Ms. Evans was interested in a career as a physical therapist.

12. In March 2007, Ms. Evans applied to The Washington Center for a 2007 summer internship in physical therapy.

13. The Washington Center accepted Ms. Evans as an intern.

14. Ms. Evans would receive twelve college credits for successfully completing the internship.

15. The cost of the summer internship was approximately $7200.00.  Ms. Evans took out a loan to pay this expense.

16. On The Washington Center's recommendation, Ms. Evans took out a personal, high-interest loan of $800.00 for personal expenses for the summer.

17. The Washington Center placed Ms. Evans at The Center for Integrative Body Therapies (CIBT/PMA).

18. Dr. Kulawy was the chiropractor whose practice was at CIBT/PMA.  He was also the contact with The Washington Center.

19. The Washington Center arranged for Ms. Evans to work with Dr. Kulawy.

20. The Washington Center did not visit CIBT/PMA before placing Jamie Evans at the site.

21. The Washington Center did not interview Dr. Kulawy in person before placing Jamie Evans as an intern at CIBT/PMA.

22. The Washington Center did not investigate Dr. Kulawy's professional credentials and possible professional discipline before placing Jamie Evans as an intern at CIBT/PMA.

23. At the end of May 2007, Ms. Evans came to Washington, D.C., to begin her physical therapy internship.

24. The Washington Center held mandatory seminars concerning appropriate behavior for the interns. The Washington Center specifically warned the interns not to get involved with office gossip.

25. On May 29, 2007, Jamie Evans started her internship with CIBT/PMA.

26. Ms. Evans worked with Dr. Kulawy and several physical therapists.

27. During her first few days at CIBT/PMA, Ms. Evans was informed that when Dr. Kulawy was with a female patient, the door to the exam room had to remain open.

28. No one explained the reason for this policy concerning Dr. Kulawy to Ms. Evans.

29. Dr. Kulawy began making advances and comments to Ms. Evans.

30. Dr. Kulawy repeatedly approached Ms. Evans from behind when she was typing and massaged her shoulders.

31. Dr. Kulawy repeatedly wrapped his arm around Ms. Evans' waist while they were walking through the office.

32. Dr. Kulawy repeatedly made comments to Ms. Evans about her appearance.

33. As a result, Ms. Evans grew increasingly anxious and uncomfortable working around Dr. Kulawy.

34. Ms. Evans stopped wearing make-up and changed the style of her clothes to make herself less attractive in an effort to stop Dr. Kulawy's advances and comments as well as any possible unwanted attention from other males.

35. Upset, Ms. Evans called her parents about Dr. Kulawy's behavior toward her and asked her parents how to handle Dr. Kulawy.

36. Ms. Evans also asked her fellow summer interns how to handle Dr. Kulawy.

37. Ms. Evans frequently drove home to New Jersey to seek the comfort of her parents.

38. Ms. Evans had not worked in a professional office before her internship and was unsure of how to deal with Dr. Kulawy's inappropriate behavior.

39. CIBT/PMA, Mr. Storck, and National Integrated Health Associates did not have any complaint mechanism in place for employees who were subjected to sexual harassment.

40. If CIBT/PMA, Mr. Storck, and National Integrated Health Associates had any complaint mechanisms in place for employees who were subjected to sexual harassment, they did not inform Ms. Evans about them.

41. This was not the first time that Dr. Kulawy had engaged in inappropriate touching.

42. Dr. Kulawy had a history of inappropriate sexual behavior in the office and work place.

43. The District of Columbia Health Professional Licensing Administration's Board of Chiropractic suspended Dr. Kulawy's license to practice for one year on March 20, 2003, on the basis of inappropriate sexual conduct with female patients.

44. On July 14, 2004, the District of Columbia Board of Chiropractic reinstated Dr. Kulawy's license. The Board ordered Dr. Kulawy to complete an ethics course offered by the National Chiropractic Board, continue involvement in applicable 12-step programs, and

        hire a board-approved chaperone to be present at all times Dr. Kulawy had any interactions with female patients.

45. Dr. Kulawy agreed to the imposed conditions on January 11, 2005.

46. On November 14, 2006, the District of Columbia Board of Chiropractic found that Dr. Kulawy was not in compliance with the order that a female chaperone be present during all his interactions with female patients. The Board fined Dr. Kulawy $1,000.00.

47. On September 20, 2002, the Virginia Board of Medicine found that Dr. Kulawy had fondled the breasts of female patients and placed Dr. Kulawy on indefinite probation.

48. Dr. Kulawy informed the Virginia Board that he was also under investigation by the District of Columbia Board of Medicine for inappropriately touching a female patient in June 2000.

49. The Virginia Board ordered Dr. Kulawy to continue therapy, complete a course on ethics, and have a chaperone present at all times during evaluation and treatment of a female patient.

50. Dr. Kulawy attended Sex Addicts Anonymous meetings in support of his recovery.

51. Dr. Kulawy told the Virginia Board that he sold his practice in September 2002 to focus on issues that caused him to inappropriately touch his female patients.

52. On October 20, 2004, the Virginia Board terminated Dr. Kulawy's indefinite probation, but required that a chaperone be present during evaluation and treatment of female patients and that Dr. Kulawy continue therapy.

53. During mid-July 2007, Julie Zimmerman, an employee of The Washington Center, conducted a site visit at CIBT/PMA.

54. As Ms. Zimmerman left CIBT/PMA after meeting individually with Dr. Kulawy, Ms. Evans followed her out the door and reported Dr. Kulawy's touching and comments.

55. Ms. Evans also told Ms. Zimmerman about the open-door requirement whenever Dr. Kulawy was treating a female patient.

56. Ms. Zimmerman directed Ms. Evans to go back into the office to find out the reason for the open-door policy.

57. A CIBT/PMA employee told Ms. Evans that the open door was necessary in light of Dr. Kulawy's previous inappropriate touching of female patients and fondling their breasts.

58. Ms. Evans told Kathleen Troust, a physical therapist who she worked with during the internship, that Dr. Kulawy was inappropriately touching her and commenting on her appearance.

59. Ms. Troust immediately confronted Dr. Kulawy in his office with the door closed. Ms. Evans overheard Ms. Troust screaming at Dr. Kulawy concerning his behavior with Ms. Evans.

60. Later that same day, Dr. Kulawy called Ms. Evans into his office. Dr. Kulawy instructed Ms. Evans to sit down and stood between her and the door, preventing Ms. Evans from leaving. Dr. Kulawy then asked her in a derisive, threatening manner if it was all right to close the door.

61. This was Ms. Evans' last day at CIBT/PMA. On The Washington Center's recommendation, Ms. Evans did not return to work.

62. Dr. Kulawy's advances and comments caused Ms. Evans to stop leading a normal life. She stopped showering, refused to take part in touring and other recreational activities, and stayed in bed watching TV.

63. As a result of Dr. Kulawy's battery and sexual harassment, Ms. Evans changed her career choice to environmental sciences to avoid the discomfort and bad memories of working in a personal interaction-related profession.

64. Ms. Evans becomes emotionally and physically distressed when she remembers Dr. Kulawy's battery and sexual harassment of her.

### III.  FIRST CAUSE OF ACTION.
### NEGLIGENCE
### THE WASHINGTON CENTER FOR INTERNSHIPS
### AND ACADEMIC SEMINARS.

65. Ms. Evans reasserts paragraphs 1-64.

66. The Washington Center had a duty to adhere to the industry standard of care by investigating Dr. Kulawy's background, professional credentials, disciplinary record, and possible recent professional discipline before placing Ms. Evans at the CIBT/PMA.

67. The industry standard requires a placement agency to review the business requesting interns before placing an intern with the company, including a site visit, review of professional credentials, and discussion with human resources at the company.

68. The Washington Center did not visit CIBT/PMA, investigate Dr. Kulawy's professional credentials and possible discipline, contact human resources at CIBT/PMA, or interview Dr. Kulawy in person before deciding to place an intern there.

69. The Washington Center's negligence in failing to follow the industry standard was the proximate cause of Ms. Evans' injuries resulting from Dr. Kulawy's battery and comments and sexual harassment of Ms. Evans.

### IV.  SECOND CAUSE OF ACTION.
### BATTERY
### STEVEN KULAWY.

70. Ms. Evans reasserts paragraphs 1-69.

71. Dr. Kulawy intentionally touched Ms. Evans in an offensive manner each time he came up behind her and massaged her shoulders while she was typing or filing and each time he put his arm around her waist.

72. Dr. Kulawy did not have Ms. Evans' permission to touch her.

73. Dr. Kulawy's inappropriate touching was offensive to Ms. Evans.

74. Dr. Kulawy's inappropriate touching was the proximate cause of Ms. Evans' injuries. Given Dr. Kulawy's attendance at Sex Addicts Anonymous meetings, therapy sessions, and discipline by the District of Columbia Board of Chiropractic and Virginia Board of Medicine, he knew or should have known that his touching was offensive, and that he should not touch female employees without their permission.

### V.  THIRD CAUSE OF ACTION
### NEGLIGENCE
### CIBT/PMA, MR. STORCK, NIHA

75. Ms. Evans reasserts paragraphs 1-74.

76. CIBT/PMA, Mr. Storck, and NIHA knew or should have known that Dr. Kulawy had his chiropractic license suspended due to his inappropriate touching of female patients and fondling their breasts.

77. Given this knowledge, it was foreseeable to CIBT/PMA, Mr. Storck, and NIHA that Dr. Kulawy would commit sexual battery against and sexually harass other female patients and/or employees.

78. CIBT/PMA, Mr. Storck, and NIHA had a duty to warn Ms. Evans about Dr. Kulawy's past sexual battery of females.

79. CIBT/PMA, Mr. Storck, and NIHA did not warn Ms. Evans about Dr. Kulawy's past sexual battery of females.

80. CIBT/PMA, Mr. Storck, and NIHA did not take any actions to prevent Dr. Kulawy from committing battery against Ms. Evans.

81. As a result of CIBT/PMA's, Mr. Storck's, and NIHA's failure to exercise their duty of care, Dr. Kulawy committed battery on Ms. Evans.

82. CIBT/PMA's, Mr. Storck's, and NIHA's failure to exercise their duty of care was the proximate cause of Ms. Evans' injuries.

### VI.  FOURTH CAUSE OF ACTION.
### SEXUAL HARASSMENT
### STEVEN KULAWY.

83. Ms. Evans reasserts paragraphs 1-82.

84. Dr. Kulawy sexually harassed Ms. Evans, in violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 and 2-1402 (2008).

85. Dr. Kulawy repeatedly touched Ms. Evans and commented on her appearance.

86. Dr. Kulawy intentionally intimidated Ms. Evans after she told physical therapist Kathryn Troust about Dr. Kulawy touching her when he called Ms. Evans into his office alone and closed the door and stood between her and the door, not permitting her to leave.

## VII.  FIFTH CAUSE OF ACTION.
### *RESPONDEAT SUPERIOR*
### CENTER FOR INTEGRATIVE BODY THERAPIES/PMA

87. Ms. Evans reasserts paragraphs 1-86.

88. PMA LLC, operating as the Center for Integrative Body Therapies (CIBT) employs Dr. Kulawy as a chiropractor.  Dr. Kulawy is therefore an agent of this Defendant.

89. CIBT/PMA aided Dr. Kulawy in his intimidation and sexual harassment of Ms. Evans because it invested him with authority and supervisory powers over her.

90. CIBT/PMA knew or should have known that Dr. Kulawy had his chiropractic license suspended due to his inappropriate touching of female patients and fondling their breasts.

91. Given this knowledge, it was foreseeable to CIBT/PMA that Dr. Kulawy would commit battery against and sexually harass other female patients and/or employees.

92. CIBT/PMA had the duty to inform females working with Dr. Kulawy of his previous sexual misbehavior against women.

93. CIBT/PMA did not inform Ms. Evans of Dr. Kulawy's propensity for  sexual battery and sexual harassment of women.

94. CIBT/PMA's failure to warn Ms. Evans of Dr. Kulawy's propensity for  battery was the proximate cause of the injuries Ms. Evens suffered from Dr. Kulawy's  battery.

95. CIBT/PMA is therefore vicariously liable for Dr. Kulawy's tort of  battery.

96. CIBT/PMA failed to exercise reasonable care to prevent any sexually harassing behavior by Dr. Kulawy.

97. CIBT/PMA did not have any complaint mechanism in place for employees subjected to sexual harassment.

98. If CIBT/PMA had any complaint mechanism in place for employees who were subjected to sexual harassment, it did not inform Ms. Evans about them.

99. CIBT/PMA is vicariously liable for Dr. Kulawy's sexual harassment of Ms. Evans.

### VIII. SIXTH CAUSE OF ACTION.
### *RESPONDEAT SUPERIOR*
### DANIEL STORCK AND NIHA.

100. Ms. Evans reasserts paragraphs 1-99.

101. Mr. Storck owns and operates the Center for Integrative Body Therapies/PMA (CIBT/PMA).

102. Mr. Storck employs Dr. Kulawy as a chiropractor at CIBT/PMA. Dr. Kulawy is therefore an agent of these defendants.

103. Storck aided Dr. Kulawy in his battery and sexual harassment of Ms. Evans because Storck invested Kulawy with authority and supervisory powers over her.

104. NIHA and Storck knew or should have known that Kulawy had his chiropractic license suspended due to his inappropriate touching of female patients and fondling their breasts.

105. Given this knowledge, it was foreseeable to NIHA and Storck that Kulawy would commit battery against and sexually harass other female patients and/or employees.

106. NIHA and Storck had the duty to inform females working with Dr. Kulawy of his previous sexual misbehavior against women.

107. NIHA and Storck did not inform Ms. Evans of Kulawy's propensity for sexual battery and sexual harassment of women.

108. NIHA and Storck failed to warn Ms. Evans of Kulawy's propensity for sexual battery. This failure was the proximate cause of the injuries Ms. Evans suffered from Kulawy's advances.

109. NIHA and Storck are therefore vicariously liable for Kulawy's tort of battery.

110. NIHA and Storck failed to exercise reasonable care to prevent any sexually harassing behavior by Kulawy.

111. Storck and NIHA did not have any complaint mechanism in place for employees who were subjected to sexual harassment.

112. If Storck and NIHA had any complaint mechanism in place for employees who were subjected to sexual harassment, neither NIHA nor Storck informed Ms. Evans about them.

113. Storck and NIHA are vicariously liable for Kulawy's sexual harassment of Ms. Evans.

## IX.  REQUEST FOR RELIEF.

Plaintiff Jamie Evans respectfully asks that this Court grant the following relief:

A. Compensatory damages in the amount of $500,000.00;

B. Punitive damages against Dr. Kulawy, to deter him from future battery and sexual harassment;

C. Reasonable attorney's fees and costs pursuant to D.C. Code § 2-1403.16(b) (2008); and

    D.  Any other relief this Court deems appropriate.

Respectfully submitted,

**KLIMASKI & ASSOCIATES, P.C.**

July 2, 2008

_____
James R. Klimaski, #243543

July 2, 2008

_____
Lynn I. Miller, #941559

1625 Massachusetts Avenue NW
Suite 500
Washington, DC 20036-2245
(202) 296-5600
(202) 296-5601 Fax
klimaski@klimaskilaw.com
miller@klimaskilaw.com

***Counsel for Jamie Evans***

## Certificate of Service

I certify that Jamie Evans' foregoing *First Amended Complaint* will be served to the following counsel for defendants through the Court's CM/ECF electronic notification system – upon the successful uploading and filing of electronic copies of the above on or about July 3, 2008, when the Court posts an electronic copy of it to its CM/ECF website to:

Alan Dumoff
Law Office of Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
Fax  301-987-0971
alandlmc@aol.com

AND BY FIRST CLASS MAIL TO

Leslie H. Wiesenfelder
Dow Lohnes PLLC
1200 New Hampshire Ave. NW
Suite 800
Washington, DC 20036-6802
Fax  202-776-4726
lwiesen@dowlohnes.com
Counsel to Washington Center for Interns

_____
Jon Pinkus
Klimaski & Associates, P.C.