UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ms. Jamie Evans,

    Plaintiff,

    v.                                                    Case No. 1:08-cv-00875

The Washington Center for
Internships and Academic Seminars, et al.

    Defendants

---

**DEFENDANTS NATIONAL INTEGRATED HEALTH ASSOCIATES, CENTER FOR INTEGRATIVE BODY THERAPIES, AND DANIEL G. STORCK'S REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION DISMISS**

This memorandum is filed on behalf of Defendants National Integrated Health Associates, LLC, ("NIHA,"), Center for Integrative Body Therapies ("CIBT") and Daniel G. Storck.[1] Plaintiff's opposition seeks to create disputed facts in an effort to deflect Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6), but the undisputed facts nonetheless require dismissal of the entire matter, and failing that, certainly against Storck, NIHA, and CIBT. *See* Defendants National Integrated Health Associates, Center for Integrative Body Therapies, and Daniel G. Storck's Statement of Undisputed Facts, Attachment A.

Further, Defendant Kulawy's Motion to Dismiss Pursuant to FRCP 12(b)(6) demonstrates that essential elements of the causes of action are not met. As the case against these defendants

---

[1] Defendants continue to maintain that have not been properly served. Because Plaintiff has filed a First Amended Complaint and stated that they intend to reserve, this issue will likely become moot and thus a reply brief is not being filed.

    Counsel has received the amended complaint by electronic filing, but is not authorized to accept service and, as of this date, to the best of undersigned counsel's information, service of the First Amended Complaint has not been made.

cannot be sustained where Plaintiff was an unpaid intern who was never employed, never had a job condition to be affected, and who did not give notice to Kulawy that the alleged touch, which is not prohibited under the plain language of the District of Columbia Human Rights Act, was offensive nor complain to any manager, has no case for battery or sexual harassment. There being no underlying claims, there can be no negligence.

I.      Central Matters Raised by Defendant are Properly Subject to a Motion to Dismiss Pursuant to FRCP 12(b)(6), Do Not Rely Upon Contested Facts, and are Not Subject to Conversion to a Motion for Summary Judgment.

As set forth in the accompanying Statement of Undisputed Facts,[2] there are a number of bases upon which this matter should be dismissed as a matter of law. The issue of whether other matters should be treated as a summary judgment motion are addressed *infra*.

A.      The Pleading Does Not Make Out a Case Against Daniel G. Storck in his Personal Capacity.

1.      Generally, cases under the District of Columbia Human Rights Act may not be brought against individuals in their personal capacity given District of Columbia Law about the liability of LLC members to third-parties and the requirement that DCHRA suits be levied against employers.

The Respondent Superior claims made in the Complaint, at most, arguably point to Physical Medicine Associates, LLC, the location of Evan's internship. They do not point to Storck in his individual capacity no matter what his connection to PMA or co-defendant National Integrated Health Associates, LLC (NIHA"). The District of Columbia courts have addressed those rare instances when sexual harassment suits may be laid at the feet of an employer in his

---

[2]      Having it brought to his attention by Evan's counsel that the Motion to Dismiss did not contain a proposed order, Defendant files a proposed order for his Motions to Dismiss and to Quash, and asks leave of the Court to accept them for filing.

individual capacity, and none of the facts that can lead to such a finding are alleged in the

Complaint (or in the First Amended Complaint, for that matter). Even were Plaintiff to allege that

Storck is an owner of PMA/CIBT, where the events complained of unfolded (a matter that

Plaintiff has not plead even in her First Amended Complaint, *see* First Amended Complaint, ¶ 5,)

as a matter of law, Storck cannot be found to be personally liable and he should be dismissed as a

Defendant.

      As a threshold matter, mere membership in an limited liability company is not adequate to

place individual liability. Suits against individuals are in fact barred on this basis:

> (b) Except as otherwise provided by this chapter or as expressly provided in the
> articles of organization, no member, manager, employee, or other agent of a
> limited liability company shall have any personal obligation for any debts,
> obligations, or liabilities of a limited liability company, whether such debts,
> obligations, or liabilities arise in contract, tort, or otherwise, solely by reason of
> being a member, manager, employee, or agent of a limited liability company.
> D.C. Code § 29-1014  (2008) (Liability to third parties).

It would therefore take some conduct on the part of Storck to place personal liability, or a means

to pierce the corporate veil. As argued below, this complaint alleges no facts that could support

such a finding.


    2.    The general rule in sexual harassment cases under both Federal and District of
        Columbia law is that suits against persons in their individual capacity are not
        favored.

      To survive a motion to dismiss Storck in his individual capacity, Plaintiff must

demonstrate either direct participation by him or a corporate veil that insufficiently covers him

because he is operating a company as an alter ego. In sexual harassment cases, courts have

examined the issue and consistently found that individual supervisors and employees cannot be

held personally liable for actions which subject the employer to the federal equivalent of the

District of Columbia Human Rights Act ("DCHRA"), which is liability under Title VII, 42 U.S.C.

§ 2000e *et seq. See Silk v. City of Chicago* 194 F.3d 788. 797 n.5 (7th. Cir. 1999).

Title VII cases are apposite here because D.C. Courts look to federal cases interpreting

Title VII, 42 U.S.C. § 2000e-16 in construing the DCHRA under which the instant suit is filed.[3]

*See Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship,* 518 F. Supp. 2d 179, 183 (D.D.C. 2007);

*Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 134 (D.D.C. 2004).[4]

The established rule in a majority of circuits, including the District, is that personal

capacity suits against individual supervisors or managers are inappropriate under Title VII. *See,*

*e.g., Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 1997 U.S. Dist. LEXIS 11110,

1997 WL 431830, at 2-3 (D.D.C. 1997); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996);

---

[3]    Plaintiff brings six counts – Count I is against the Washington Center for Negligence; Count II against Kulawy for Battery; Count III against CIPT/PMA/NIHA and Storck for Negligence, Count IV against Kulawy for Sexual Harassment; Count V against CIBT/PMA for Respondent Superior, and Count VI against Storck and NIHA for Respondent Superior.
    The entire case is predicated upon Kulawy having committed battery and sexual harassment; if these claims fall, no claims survive against any party. The Battery claim appears to be a common law tort, while the sexual harassment claim is predicated specifically upon DCHRA, Code §§ 2-1401 and 2-1402 (neither statutes, incidentally which confer rights to plaintiff.)

[4]    When the action is brought against not only the employer and but also against one or more employees in their official or representative capacity, the claims against the employees merge with the claim against the employer. *Gary v. Long*, 313 U.S. App. D.C. 403, 59 F.3d 1391 (D.C. Cir.), *cert. denied*, 116 S. Ct. 569 (1995); *see Sauers*, 1 F.3d at 1125; *Busby*, 931 F.2d at 772. The dismissal of the official or representative capacity suits promotes "judicial economy and efficiency" and "prevents the possibility of juror confusion." *Gallardo*, 1995 WL 106366, at 2; *see Cooke-Seals* v. District of Columbia, 973 F. Supp. 184, 1997 WL 431830, at 3. *See Land v. Midwest Office Technology, Inc., et al.*, 979 F. Supp. 1344 (D.C.Ka. 1997). The Plaintiffs interests are protected by seeking relief against the actual company(ies) that employed them, not by carrying the Court thorough a lengthy effort to somehow parts a corporate actor away from the corporation in which he functions.

*see Wathen v. General Elec. Co.*, 115 F.3d 400, 404-06 (6th Cir. 1997). "'The proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly.'" *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993) (quoting *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991)).

Moreover, "courts have determined that individuals cannot be "employers" under Title VII. *See Gastineau v. Fleet Mortgage Corp.* 137 F.3d 490, 493-94 (7th Cir. 1998) and *Sullivan v. Presstronics, Inc.,* 1997 U.S. Dist. LEXIS 8402, 1997 WL 327126 (N.D. Ill. 1997)(Aspen) (*citing Williams v. Banning,* 72 F.3d 552 at 554-555)(dismissing Tile VII claim against an owner of a small, closely held business because there is no owner exception to the rule that supervisors cannot be held liable under Title VII). *Sanchez v. Magnum Insurance Agency Co., Inc.* et al, 2001 U.S. Dist. LEXIS 11079 (N.D. Il. 2001).

Given this disfavor against individual capacity suits, they may only be sustained in unusual cases: either the individual's own conduct independently give rise to an action under statute or contract, generally due to actual participation in the harassment, or because the activity was outside the corporate protection as it was conducted *ultra vires* or in which the corporate veil can be pierced. Neither was plead here, certainly neither can be demonstrated.

        3.      The Pleading Does Not Allege that Storck Participated in the Alleged Wrongs; Courts Have in Fact Held That Individual Liability Does Not Rest in Sexual Harassment Cases.

By alleging the Storck should have taken certain actions, see Complaint at ¶¶ 78 ("a duty to warn"), Plaintiff appears to be asserting that Storck's alleged participation in the claimed

conduct makes him individually liable. But reading the Complaint reveals no alleged misfeasance on Storck's part, but merely alleged omissions Plaintiff asserts would have protected her from alleged misconduct; Plaintiff should have been told about Kulawy's history, and a formal communicated to Evans about how to make a complaint in a small office where the staff were known to Evans.

Even in jurisdictions where participation is seen as a route to individual exposure, the pleading here would be insufficient. In Pennsylvania, for example, a plaintiff in a sexual harassment suit indirectly asserted the 'participation theory,' under which a corporate officer can be held individually liable as an actor for *participating* in tortious activity. See Wicks, 503 Pa. at 621. The Supreme Court of Pennsylvania has endorsed the following definition of 'participation theory:'

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such tort, nor for the acts of other agents, officers or employees of the corporation in committing it, *unless he specifically directed the particular act to be done or participated, or cooperated therein*. (Emphasis added) Id. at 621-22, citing 3A Fletcher, Cyclopedia of the Law of Private Corporations § 1137, p. 207 (perm. ed. rev. 1975).
> *McGovern v. Jack D's, Inc., et al.*, 2004 U.S. Dist. LEXIS 1985 (E.D. Pa. 2004).

A corporate officer may only be held individually liable if he or she has taken some sort of affirmative act in furtherance of the alleged tort. Even in such a case:

> . . . the court noted that corporate officers may only be held liable for misfeasance, and not 'mere nonfeasance.' Id. at 622. Accordingly, the Wicks court reasoned that the fact that 'a corporate officer should have known the consequences of the liability-creating corporate act . . . is insufficient to create liability.' Id. at 622-23.
> *McGovern*, 2004 U.S. Dist. LEXIS at 3.

6

This is precisely the allegation here; not that Storck was complicit in a scheme to sexually harass Plaintiff, but rather that he allegedly should have known about the potential for Kulawy to act improperly and failed to act to inform Evans as to Kulawy's history, and how to tell someone if there was a problem. Whether or not these facts are true, and whether or not they rise to the level of negligence, interpreting the Complaint in favor of the Plaintiff, by her own pleading she at most points to nonfeasance, not malfeasance. No allegation is made that Storck participated in any fashion in the alleged battery or harassment, and as matter of law the suit can at most be addressed to the corporation, but not to Storck's individually.[5]

> Applying the foregoing to a sexual harassment case, the court in *McGovern* said that: Returning to the case at hand, we find that Plaintiff has failed to allege facts which would show that the DiMaios directed, participated, or cooperated in tortious conduct. Plaintiff has alleged that tortious and criminal conduct occurred, but she has not alleged that the DiMaios were complicit in it.
> *McGovern*, 2004 U.S. Dist. LEXIS at 3.

In that case, unlike here, Plaintiff:

> 'alleged that she complained to the DiMaios and that they did nothing in response to investigate or stop the harassment,' even under those additional circumstances, the court said that 'we believe that this failure to act does not rise to the level of affirmative action required by the court in *Wick*, and is more akin to nonfeasance than misfeasance. As such, we find that under the facts alleged, the DiMaios could not be held individually liable under the 'participation theory.'
> *McGovern*, 2004 U.S. Dist. LEXIS at 3.

The facts in the instant case lay even less blame on Storck individually, as it is admitted in the pleading by Evans that she never came and sought help and informed Storck that she perceived difficulties. Knowing that the failure by Plaintiff to take the simple, obvious, and available act of communicating to anyone in a management position that Evans believed she had a problem, she

---

[5]    Plaintiff argues in her Opposition that Storck was negligent in hiring Kulawy. Assuming *arguendo* that Storck "hired" Kulawy, there is no allegation in the original or amended complaints that Storck was negligent in hiring Kulawy, so this argument is without merit.

instead tries to create fault for Storck individually by claiming that he should have told her who she could speak to in the event of some difficulty. Such pleading does not allege participation, and must fail as a matter of law.

> 4.   The pleading is insufficient as a matter of law to pierce the corporate veil and take the Plaintiff's cause of action to Storck.

No facts in the pleading allege, as indeed they could not, that NIHA or PMA are alter egos of Storck. As Judge Marten recently considered this test in a Title VII case brought against an individual defendant:

> The exact test will depend upon the particular facts of the case. *Id.* [*Frank*, 3 F.3d at 1362-64]. However, the federal common law doctrine of piercing the corporate veil under an alter ego theory can best be described by the following two-part test: (1) was there such a unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (2) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations. *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993). *Roberts v. Air Capitol Plating, Inc.*, 1997 U.S. Dist. LEXIS 11245, 1997 WL 446266, at 8, 9.
> *Land v. Midwest Office Technology, Inc., et al.*, 979 F. Supp. 1344 (D.C.Ka. 1997).

These are not simply facts that must be proven, but are allegations that must be plead.

In short:

> to plead a claim of individual liability under the alter ego doctrine, two essential elements must be *plead*: (1) that the person exercises such dominion and control with respect to the transaction attacked that the corporation had no separate will of its own; and (2) that the domination and control was used to commit a fraud or wrong against the plaintiff which proximately caused the plaintiff's injuries." *Lane v. Maryhaven Center of Hope*, 944 F. Supp. at 163 (citations omitted)(emphasis added).
> *Land*, 979. F.Supp. at 1349.

The pleading of individual liability through an alter ego theory, the only remaining vehicle that would place liability with Storck, was not made. Therefore the suit against Storck must be

dismissed.

B.    NIHA is not a Proper Party to This Suit and Should Be Dismissed.

Plaintiff's suit against NIHA is based on three facts; that Storck is an owner of NIHA as well as PMA, that the NIHA's suite was used as a formal address for PMA, where the notice from Washington Center that Evans was terminating her internship to Mr. Storck, and that while the events complained of occurred in a separate suite on a separate floor under a separate organizational entity, Plaintiff has suspicions that NIHA is involved in these events. None of these are sufficient as a matter of law to place any legal responsibility upon NIHA.

That two companies have an owner in common does not make the equally responsible to third-parties. The very concept is absurd and against the grain of all the jurisprudence of corporate existence which recognizes separate companies as distinct entities. None of the alleged conduct occurred at NIHA or under NIHA's direction or control. Defendant points to a common mailing address filed for corporate purposes, but that does not create liability for NIHA for events claimed to occur in the conduct of PMA's business.

All the common filing address does is explain the only other connection that Plaintiff has between NIHA and the alleged events; the letter sent to Storck from the Washington Center notifying him of Evans departure. That letter was sent to NIHA because that was the address on file for Storck. That does nothing to raise a legitimate question of liability on the part of NIHA. Plaintiff would have to plead some actual conduct on the part of NIHA that would impose liability. What Plaintiff has chosen to do instead of finding a basis for fault is to sue every party it can find, irrespective of fault.

Finally, while Plaintiff can plead no conduct on the part of NIHA in these events, it is

suspicious of the connection and on the basis has filed suit against it. It is common practice for those involved in delivery of health care to legitimately provide distinct services through separate entities, and without some affirmative act on the part of NIHA that Plaintiff can plead in good faith, pleading based on mere suspicion is improper, and NIHA should be dismissed forthwith.

C.    Center for Integrative Body Therapies is a Tradename and Has No Capacity to Be Sued.

CIBT has no capacity to be sued. In an innovative argument, Plaintiff attempts to turn this into a disputed fact by claiming that this is an issue because "Storck informed Jon Pinkus, a process server for the Plaintiff, on June 11, 2008, that he (Storck) was authorized to accept service for the Center, information from which it is reasonable to infer status as a legal entity, and knowledge on Storck's part of that status." Plaintiff's Statement of Material Facts in Dispute Regarding Defendants' Motion to Dismiss of June 19, 2008, ¶ 8.

First, Storck disputes this statement in is entirety, though he is traveling and unavailable to answer by affidavit. The effort to describe a dramatic encounter including impertinent comments about Stork's supposedly "clenched teeth" in the affidavit of Kulawy's alleged service aside, the idea that Storck's failure to engage a process server in a legal debate over the existence of a corporate entity as an argument for its existence is absurd. CIBT either is or is not a tradename, and it either is or is not a legal entity. A search of the D.C. Corporations database, where NIHA and PMA are organized and can be found, shows no legal entity by that name. Amazingly, though Defendants have been forthcoming and explained that the entity at issue is PMA, an actual legal entity that uses CIBT as a tradename, Plaintiff persists in trying to sue a mere name and use that to create an issue of dispute.

10

II.     The Pleading Does Not Make Out the Elements of Sexual Battery, Harassment or
        Negligence and Should Be Dismissed in its Entirety.

        A.      As noted in Kulawy's Motion to Dismiss, Plaintiff Evans, as an unpaid intern, is
                not a protected member of the class and has no recourse under the DCHRA.

        As Defendant Kulawy has noted in his Motion to Dismiss for Failure to State a Claim,

filed after the instant motion, Plaintiff's case fails to meet essential elements of the underlying

case[6] under the DCHRA and for battery. Without validity to the underlying complaint, there can

be no negligence on the part of Storck, NIHA, or any other Defendant.

        First, Evans was an unpaid intern and thus not a member of the protected class. Evans

received no pay, no benefits, nor other remuneration from any source, not PMA/CIBT, Kulawy,

nor the Washington Center (and NIHA was entirely uninvolved). Courts have examined whether

one who is uncompensated can be an "employee" and receive protection under the DCHRA, and

the clear answer is "no."

        In a Title VII case, for example, which apply to DCHRA cases as well, one court noted

that:

        In O'Connor, we articulated the requirement that a Title VII plaintiff be "hired in
        the first instance." O'Connor, 126 F.3d at 115. In that case, a college student sued
        a hospital in which she had been working as an intern, alleging sexual harassment
        in violation of Title VII. Id. at 113. In rejecting the intern's Title VII claim, we
        held that she had never been hired as a hospital employee because she was owed
        no "direct or indirect economic remuneration" amounting to "compensation" for
        her work. Id. at 116. We specifically relied on the fact that the plaintiff received
        "no salary or other wages, and no employee benefits such as health insurance,

---

        [6]      In order to demonstrate a discrimination claim under the DCHRA, a plaintiff "must
show that (1) he is a member of a protected class; (2) he suffered an adverse employment action;
(3) and the adverse action gives rise to an inference of discrimination. Tex. Dep't of Cmty. Affairs
v. Burdine, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); Brown v. Brody, 339
U.S. App. D.C. 233, 199 F.3d 446, 452 (D.C. Cir. 1999).
Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship, 518 F. Supp. 2d 179, 185 (D.D.C. 2007) fn. 11

vacation, or sick pay, nor was she promised any such compensation." Id.
*United States v. City of New York*, 359 F.3d 83, 104 (2d Cir. 2004)

This case was following the more exhaustive consideration to whether an intern is an

employee for the purpose of sexual harassment claims in *O'Connor v. Davis*, 126 F.3d 112, 115-

116 (2d Cir. N.Y. 1997):

> O'Connor's first argument on appeal is that the district court improperly
> concluded that she was not a Rockland employee within the meaning of Title VII.
> She argues that although she worked at Rockland as an unpaid intern, she
> nevertheless satisfies the common-law agency definition of "employee." We disagree.
>
> The definition of the term "employee" provided in Title VII is circular: the Act
> states only that an "employee" is an "individual employed by an employer." 42
> U.S.C. § 2000e(f); see also *EEOC v. Johnson & Higgins*, 91 F.3d 1529, 1538 (2d
> Cir. 1996). However, it is well-established that when Congress uses the term
> "employee" without defining it with precision, courts should presume that
> Congress had in mind "the conventional master-servant relationship as understood
> by the common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503
> U.S. 318, 322-23, 117 L. Ed. 2d 581, 112 S. Ct. 1344 (1992) (quoting *Community
> for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40, 104 L. Ed. 2d 811, 109
> S. Ct. 2166 (1989)); see also *Walters v. Metropolitan Educ. Enters. Inc.*, 136 L.
> Ed. 2d 644, 117 S. Ct. 660, 666 (1997); *Frankel v. Bally, Inc.*, 987 F.2d 86, 90
> (2d Cir. 1993).
> . . .
>
> As a volunteer . . . . [w]e believe that the preliminary question of remuneration is
> dispositive in this case. It is uncontested that O'Connor received from Rockland
> no salary or other wages, and no employee benefits such as health insurance,
> vacation, or sick pay, nor was she promised any such compensation.
> *O'Connor v. Davis*, 126 F.3d 112, 115-116 (2d Cir. N.Y. 1997).

As a result, Title VII claims did not apply and O'Conner was not a member of the class of persons

protected by the suit. This is true of Evans as well.

Because Evans was not an employee, she also cannot meet other key elements of a

DCHRA claim. Such a claim must establish the following:

> A plaintiff may establish a *prima facie* case of hostile work environment sexual
> harassment by showing that (1) the employee belongs to a protected group; (2) the
> employee was subjected to unwelcome sexual harassment in the form of requests

for sexual favors, sexual advances, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a "term, condition, or privilege" of employment; and (5) either that the harasser meets the definition of employer or that the employer is liable through respondeat superior. *Sparks,* 830 F.2d at 1557; *Henson v. City of Dundee,* 682 F.2d 897, 903-05 (11th Cir. 1982).
*Conley v. Bostic,* 1993 U.S. Dist. LEXIS 20260 (N.Ga. 1993).

The first element falls because she is not an employee. The forth element also cannot be met, as the alleged harassment could not affect a "term, condition, or privilege" of a relationship that did not exist, and the fifth element is also missing, as none of the defendants were Evans employer. As a matter of law, the DCHRA claims must be dismissed; certainly they must be dismissed against Storck and NIHA.

> B.      Plaintiff Evans gave no notice to Storck, Kulawy or any other manager or staff at CIBT/PMA, and thus failed to meet an element of sexual harassment.

One of the elements of sexual harassment is that the defendant be given express notice that the conduct complained of is offensive. *Conley,* 1993 Lexis at 20274. This is particularly true where the allegations are not of the clearly offensive behavior documented in numerous sexual harassment cases, but rather massaging shoulders, putting an arm around the waist, and making comments upon appearance. Such conduct may be offensive, but crossed no clear or statutory lines. Plaintiff had an obligation, especially if she found the conduct so offensive that she now comes to Federal Court demanding $500,000 in compensation, to give notice that she found this conduct offensive. But she gave notice to no one until the time of her leaving, after the conduct complained of allegedly occurred, and thus cannot fill this critical element of a sexual harassment claim.

None of the defendants is alleged by the original or amended complaints, by its own terms,

to have been given such notice. The sexual harassment claim cannot be sustained.

III.    Plaintiff's Motion is Not One for Summary Judgment; The Missing Elements as to Storck, NIHA, and the Elements of the Underlying Torts are Not Matters of Dispute for Which Plaintiff Should Be Allowed Discovery.

The Original (and Amended) Complaints must make out a case on its own merits. Plaintiff cannot merely make unfounded allegations, call the misunderstandings they plead "disputed" and then claim that she needs discovery to find some basis to treat Storck as a an individual, find a way to bring NIHA into the case, turn an intern into an employee or find some means to turn allegations of shoulder massages and an arm around the waist into a $500,000 law suit. Plaintiff had an obligation before bringing such an action to research and properly plead her case.

In *Land*, the court noted that "[o]ther than saying she needs to take additional discovery, the plaintiff does not reveal any potential factual or legal basis for treating Egly and Illig as "employers" under Title VII, KAAD, and ADA. *Land*, 979 F.Supp. at 1348. From what little the plaintiff does argue, the court infers she wants to pierce the corporate veil and hold Egly and Illig liable as the alter egos of Midwest Office. As one court noted in a Title VII case brought against an individual defendant:

> Dismissals under Rule 12(b)(6) typically occur only after the plaintiff is afforded notice and an opportunity to amend the complaint to cure the defective allegations. *Hall v. Belmon*, 935 F.2d at 1109-10. The court, however, "may dismiss sua sponte 'when it is patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)). *Land*, 979 F.Supp. at 1349.

See also *White v. Midwest Office Technology, Inc. et* al, 979 F. Supp. 1354 (U.S. Ka. 1997) (dismissing suit against a person in his individual capacity under FRCP 12(b)(6).

A plaintiff is not required to state precisely each element of the claim. 5 Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1216 at 154-59

14

(1990). Nonetheless, a plaintiff must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Co.*, 851 F.2d 513, 515 (1st Cir. 1988). In short, Rule 8(a) relieves a plaintiff from pleading technicalities and from alleging detailed facts that establish her right to judgment. *Trevino v. Union Pacific R. Co.*, 916 F.2d 1230, 1234 (7th Cir. 1990). But, it still requires minimal factual allegations on those material elements that must be proved to recover. *See Hall v. Bellmon*, 935 F.2d at 1110.
*Land.*, 979 F. Supp. at 1347.

## CONCLUSION

Plaintiff has plead no basis upon which to ground the highly unusual finding of individual liability against Storck, nor any actual negligence on his part under the requirements of DCHRA case law, plead no action on the part of NIHA that suggests liability on its part other than Plaintiff's mere and unfounded suspicion, and continues to argue for suing CIBT, a tradename.

Further, the underlying suit has no merit. An intern has no rights under the DCHRA, and both the sexual harassment and battery claims for alleged touching of Evans shoulders and waist, and comments about appearance, were by Plaintiff's own pleading never the subject of notice to anyone by her as objectionable. This case cannot be sustained, and if not dismissed in its entirety, should be dismissed against Storck, NIHA, and CIBT.

Dated: July 10, 2008

Alan Dumoff
Law Office of Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
D.C. bar No. 425926
voice: 301-987-0970
fax: 301-987-0971
alandlmc@aol.com

15

CERTIFICATE OF SERVICE

I certify that I have served the attached DEFENDANTS NATIONAL INTEGRATED HEALTH ASSOCIATES, CENTER FOR INTEGRATIVE BODY THERAPIES, AND DAN STORCK'S MEMORANDUM REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6) AND FOR INSUFFICIENT SERVICE OF PROCESS PURSUANT TO F.R.C.P.12(b)(5) upon the opposing party's counsel by successfully electronically filing the document with the Court's CMF filing system.

James R. Klimaski, Esq.
Klimaski & Associates P.C.
1625 Massachusetts Avenue, NW
Suite 500
Washington, D.C. 20036-2245

Date: July 10, 2008

_____
Alan Dumoff

*Attachment A*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Ms. Jamie Evans, | |
|     Plaintiff, | |
|     v. | Case No. 1:08-cv-00875 |
| The Washington Center for | |
| Internships and Academic Seminars, et al. | |
|     Defendants | |

**DEFENDANTS NATIONAL INTEGRATED HEALTH ASSOCIATES, CENTER FOR INTEGRATIVE BODY THERAPIES, AND DANIEL G. STORCK'S STATEMENT OF UNDISPUTED FACTS**

Defendants National Integrated Health Associates, LLC, ("NIHA,"), Center for Integrative Body Therapies ("CIBT") and Daniel G. Storck hereby file the following statement of undisputed facts:

1)      Evans was an intern, was not an employee of Physical Medicine Associates, L.L.C. ("PMA") d/b/a Center for Integrative Body Therapies ("CIBT") and had no legally viable interest in employment in PMA/CIBT; Evans received no salary or work benefits from any source; PMA/CIBT was not Evan's work environment.

2)      Evans was not discriminated against as no adverse action was taken or threatened against the conditions of any employment or participation due to the conduct alleged.

3)      Evans was not in privity with, and had no relationship of any kind with National Integrated Health Associates, LLC. ("NIHA").

4)      National Integrated Health Associates, L.L.C. and Physical Medicine Associates, L.L.C. are separate and distinct companies that do not have equity participation, ownership or control

over the other, nor any contractual agreement whereby NIHA has management obligations over
PMA/CIBT.

5)      NIHA and PMA are properly organized companies and neither is an alter ego of Storck.

6)      At all relevant times, PMA and NIHA operated from different suites on different floors.

7)      PMA/CIBT was not organized not used as a vehicle for misconduct by Storck.

8)      CIBT is a tradename and not a legal entity; CIBT is a tradename used by PMA, PMA is
limited liability company and not a tradename used by CIBT.

9)      Evans was not touched by Kulawy either directly or through the clothing, on the genitalia,
anus, groin, breast, inner thigh, or buttocks.

10)     Kulawy's previous history involved patients, and not staff or interns.

11)     Evans did not inform Daniel G. Storck of any alleged misconduct on the part of Kulawy.

12)     Storck did not participate in the alleged battery or harassment.

13)     Evans did not inform Kulawy, any manager of other staff person at PMA/CIBT until just
prior to her departure that she believed Dr. Kulawy had acted inappropriately.