# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **JAMIE EVANS**<br><br>    **Plaintiff,**<br><br>    **v.**<br><br>**WASHINGTON CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS, STEVEN KULAWY,** *et al.,*<br><br>    **Defendants.** | **Case No. 1:08–cv– 0875 –ESH**<br><br><br><br>**July 11, 2008** |

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OF DEFENDANTS STEVEN KULAWY, D.C., AND CENTER FOR INTEGRATIVE BODY THERAPIES

Plaintiff Jamie Evans, through counsel, respectively submits this Opposition to the Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. Pro. 12(b)(6) of Defendants Steven Kulawy, D.C., and Center for Integrative Body Therapies (CIBT). Defendants' Motion to Dismiss is clearly one for summary judgment, and the Court should summarily deny it.[1]

Their motion is premature and in actuality simply highlights the disputed facts in this case.[2]

---

[1] Plaintiff's counsel notes that since Defendants' motion to dismiss also fails to include a proposed order, as did their earlier motion to quash, they are again in violation of Local Civil Rule 7(c), and their pleadings of June 30, 2008, are also subject to being stricken from the record.

[2] Ms. Evans filed an Opposition to the Motion to Quash Service on Dr. Kulawy on Thursday, July 10, 2008, and therefore will not address this issue in this opposition.

## I. STANDARDS FOR MOTION TO DISMISS
## AND SUMMARY JUDGMENT.

### A. Rule 12(b)(6) Motion to Dismiss.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of the inferences that can be derived from the alleged facts. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In deciding whether to dismiss a claim under Rule 12(b)(6), the Court can consider only the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice. *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F. 3d 621, 624-25 (D.C. Cir. 1997).

### B. Summary Judgment.

However, this motion to dismiss is replete with references to "matters outside the [complaint]," thereby requiring that the Court treat the motion as one for summary judgment. *See* Fed.R.Civ.P. 12(b):

> If, on a motion asserting the defense numbered (6) ... matters outside the pleading are presented to and not excluded by the court, the motion ***shall*** be treated as one for summary judgment ... and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

(Emphasis added).

Moreover, "[m]ost courts ... view 'matters outside the pleading' as including any written or oral evidence in support of or in opposition to the pleading that provides some substantiation

for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott,* 958 F.2d 814, 816 (8th Cir.1992) (quoting Wright & Miller, Federal Practice and Procedure § 1366).

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Semaan v. Mumford*, 335 F.2d 704, 705 (D.D.C. 1964). The non-movant needs to establish that only contrary inferences "might be permissible." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

Materiality is "a function of the applicable legal standard." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). A "genuine issue" is one that, if resolved, "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. ARGUMENT.

### A. Ms. Evans Has Filed an Amended Complaint which Changed the Sexual Battery Claim to One for Battery.

This argument is moot. On July 3, 2008, Ms. Evans filed an Amended Complaint in which she dropped the sexual battery and claim and added a battery claim.[3] The Court accepted the Amended Complaint on July 7, 2008.

---

[3] To support their argument about sexual battery, Defendants cite to the District of Columbia criminal sexual contact statute, D.C. Code § 22-3001(9) (2008). However, this is a civil suit, not a criminal prosecution. Defendants do not cite any authority supporting application of the criminal statute in a civil matter.

### B. Dismissal under Rule 12(b)(6) or a Motion
### for Summary Judgment Is Premature.

Defendants claim that the Court must dismiss Ms. Evans' Complaint because the allegations are "too trivial" to sustain a *prima facie* case for sexual harassment. Defendants further argue that the Complaint alleges only "a few isolated incidents." (Defendants' Mem. at 2). The fallacy of Defendants' argument is that the rules of pleading do not require a plaintiff to prove the case in the complaint.

The requirements for a complaint are well-established. As the District of Columbia Circuit explained in *Fame Jeans, Inc.*, 525 F.3d at 15:

> Ordinarily, a sufficient complaint "contain[s] a short and plain statement of the claim showing that the pleader is entitled to relief," enough to give a defendant "fair notice of the claims against him."

Thus, notice pleading is all that the rules require.

Summary judgment on the sexual harassment claim is premature and inappropriate. Discovery is necessary to determine further facts. Moreover, this case hinges on material factual determinations as well as witness credibility. Resolving credibility is "within the province of the trier of facts." *In re Estate of Walker*, 890 A. 2d 216, 221 (D.C. App. 2006).

Therefore, even summary judgment is improper because Ms. Evans does not have to prove a *prima facie* case in her pleadings and because genuine issues of material fact, including credibility, exist. Indeed, the authority which Defendants cite establishes the case-by-case determination that sexual harassment occurred. (Defendants' Mem. at 2-3).

### C.  Ms. Evans' Allegations Are Sufficient for
### a Sexual Harassment Claim.

Defendants claim that Ms. Evans "alleges only a few isolated incidents," which do not "rise to the level of sexual harassment."  (Defendants' Mem. at 2).  This statement does not accurately reflect the allegations in the Complaint,[4]  which stated:

> 29.  Dr. Kulawy began making advances and comments to Ms. Evans.
>
> 30.  Dr. Kulawy repeatedly approached Ms. Evans from behind when she was typing and massaged her shoulders.
>
> 31.  Dr. Kulawy repeatedly wrapped his arm around Ms. Evans' waist while they were walking through the office.
>
> 32.  Dr. Kulawy repeatedly made comments to Ms. Evans about her appearance.

These are not "isolated incidents," but a pattern of conduct on Dr. Kulawy's part.

Further, Dr. Kulawy's conduct is neither trivial nor frivolous, as Defendants contend.  In *Howard University v. Best*, 484 A.2d 958, 979 (D.C. App. 1984), which Defendants cite,[5]  the court listed conduct which constituted sexual harassment.  These actions included:

> (1) verbal harassment and abuse;
>
> ***
>
> (2) unnecessary patting or pinching;
>
> (3) constant brushing against another employee's body.

The *Best* court pointed out that:

---

[4]  All references to the Complaint are to the First Amended Complaint.

[5]  (Defendants' Mem. at 6).

> These guidelines, which are more specific than the EEOC
> guidelines (though by no means exhaustive), offer assistance to a
> trial court faced with the question whether the plaintiff has
> established a *prima facie* case.

Id.

*Best* refutes Defendants' reliance on the number and severity of the incidents.  The Court

there explained:

> No specific number of incidents, and no specific level of
> egregiousness, can be set forth; nor is the fact that each incident
> may not be individually actionable determinative.  Instead, the trier
> of fact must consider the totality of circumstances, ... keeping in
> mind that "there are cases in which the extreme and outrageous
> nature of the conduct arises not so much from what is done as from
> the abuse by the defendant of a relationship with the plaintiff
> which gives him power to damage the plaintiff's interests."

Id. at 980.

*Best* then enunciated a balancing test for the question of whether sexual harassment had

occurred.

> Thus this standard, which employs a balancing test including
> factors such as amount and nature of the conduct, the plaintiff's
> response, and the relationship between the plaintiff and the
> harassing party, allows the jury to determine, as the representative
> of the larger community, on a case by case basis, the behavior
> which the values and norms of the community, as only generally
> expressed in the D.C. Statute, will not tolerate.

Id. at 980-81.

The court reiterated this balancing test, stating:

> The test to determine whether the plaintiff has met her burden is
> essentially a balancing test, in which the trier of fact should
> consider, *inter alia*, the amount and nature of the conduct, the
> plaintiff's response to such conduct, and the relationship between
> the harassing party and the plaintiff.  In other words, the totality of
> the circumstances must be considered.

Id. at 982.

Also, the burden of proving that the alleged incidents of sexual harassment are "isolated or trivial" is on the defendant as a defense against the *prima facie* case.  Id. at 980, fn. 25.

*Best* also explained that:

> Whether the person engaging in harassing behavior or co-employee is relevant to the determination of employer liability.

Id. at 979, fn. 22.

### D.  The Human Rights Provision concerning Comments on Appearance which Defendants Cite Does Not Apply to Ms. Evans' Case.

Defendants claim that the Humans Rights Law, in the definition section, D.C. Code § 2-1401.02 "Personal appearance," sanctions Dr. Kulawy's comments on Ms. Evans' appearance. (Defendants' Mem. at 4).  Defendants, however, misinterpret the section that they cite.  This exception applies to uniforms, cleanliness, or dress standards.

> It shall not relate, however, to the requirement of cleanliness, uniforms, or prescribed standards, when uniformly applied for admittance to a public accommodation, or when uniformly applied to a class of employees for a reasonable business purpose; or when such bodily conditions or characteristics, style or manner of dress or personal grooming presents a danger to the health, welfare or safety or any individual.

Defendants' speculation about what Kulawy may have said to Ms. Evans about her appearance precludes application of the above code section.

> Defendant Kulawy might have neutrally informed Plaintiff that she looked nice, or told her that she was dressed inappropriately for a work environment, or a host of other legally acceptable comments.

(Defendants' Mem. at 4).

-7-

But the Kulawy comments were not about cleanliness, prescribed standards or uniforms.

Rather, the first part of the "Personal appearance" definition applies. This section states:

> "Personal appearance" means the outward appearance of any person, irrespective of sex, with regard to bodily condition or characteristics, manner or style of dress, and manner or style of personal grooming, including, but not limited to, hair style and beards.

Defendants also cite *Beckwith v. Career Blazers Learning Ctr.*, 946 F.Supp. 1035

(D.D.C. 1996), to support their argument that Kulawy's comments were acceptable.

(Defendants' Mem. at 5). This case is inapposite. The quotation that Defendants cite

specifically states that:

> ... the employee solicited [the male supervisor's] opinion on the business appropriateness of her attire.

*Beckwith* at 946 F.Supp. at 1048. Ms. Evans never asked Dr. Kulawy to comment on her

appearance.

### E. The Human Rights Law Does Not Specifically Exclude Interns.[6]

Defendants claim that because Ms. Evans was an intern that it was legally impossible for

Dr. Kulawy to affect her conditions of employment. The Defendants rely upon the definitions of

"Employee" and "Employer" in the Human Rights law. D.C. Code §§ 2-1401.02(9)-(10).

(Defendants' Mem. at 5).

Defendants, however, do not cite any court decisions involving interns asserting sexual

harassment under the Human Rights law. *Estate of Underwood v. National Credit Union*

---

[6] Defendants point out that D.C. Code §§ 12-1401 and 2-1402 do not in themselves prohibit conduct. (Defendants' Mem. at 5-6). The First Amended Complaint refers to § 2-1403.16(a) (2008), in the jurisdiction section at ¶ 8.

*Admin.*, 665 A.2d 621, 640 (D.C. App. 1995), does not apply to this argument.  Rather, the

discussion on page 640 involves intentional infliction of emotional harm and a comparison of

this claim to that of sexual harassment.  Moreover, the plaintiff in *Underwood* was an employee

of the defendant company.

      Contrary to what Defendants claim, Ms. Evans did have a vested interest in her position.

She had to complete the internship to obtain college credits.  As the Complaint stated:

> 14.  Ms. Evans would receive twelve college credits for
> successfully completing the internship.

Therefore, Kulawy's sexual harassment of Ms. Evans did affect a term or condition of her

working — her ability to complete the internship and earn the college credits.  Moreover, as Ms.

Evans has alleged, her adverse experience caused her to abandon  her career plans to work in

physical therapy and change her college major to environmental sciences.[7]  (First Amended

Complaint at ¶ 63).

### F.  The Court Should Not Dismiss CIBT at this Time and Without Further Discovery on the Legal Status of CIBT.

      Ms. Evans opposes dismissal of CIBT at this time and without further discovery on its

legal status.  She wishes to depose Mr. Storck and Dr. Kulawy on this matter.  There is a genuine

issue of material fact whether "[t]here is no legal entity by the name CIBT [Center for Integrative

Body Therapies]." Storck Affidavit, ¶ 4, when the record shows that Mr. Storck informed Jon

Pinkus, a process server for the Plaintiff, on June 11, 2008, that he [Storck] was authorized to

---

[7]  In counsel's legal research, counsel did not find any District of Columbia cases concerning the application or nonapplication of the District of Columbia Human Rights Act to an "intern."

accept service for the Center, information from which it is reasonable to infer status as a legal entity and knowledge on Mr. Storck's part of that status.

July 11, 2008                                  Respectfully submitted,

                                               **KLIMASKI & ASSOCIATES, P.C.**

                                               _ /s/  James R. Klimaski_
                                               James R. Klimaski, #243543

                                               _ /s/  Lynn I. Miller_
                                               Lynn I. Miller, #941559

                                               1625 Massachusetts Avenue NW
                                               Suite 500
                                               Washington, DC 20036-2245
                                               (202) 296-5600, Fax (202) 296-5601

                                               klimaski@klimaskilaw.com
                                               miller@klimaskilaw.com

                                               *Counsel for Jamie Evans*

───────────────

**Certificate of Service**

I certify that the foregoing *Plaintiff's Opposition to Motion to Dismiss for Failure to State a Claim by Defendants Steven Kulawy and the Center for Integrative Body Therapies* will be served to the following counsels for defendants through the Court's CM/ECF electronic notification system – upon the successful uploading and filing of electronic copies of the above along with any attachments or exhibits – on July 11, 2008:

Leslie H. Wiesenfelder
Dow Lohnes PLLC
1200 New Hampshire Ave. NW
Suite 800
Washington, DC 20036-6802
Fax  202-776-4726

lwiesen@dowlohnes.com

Alan Dumoff
Law Office of Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
Fax  301-987-0971
alandlmc@aol.com

                                        ___*/s/  Jon Pinkus*_____
                                         Klimaski & Associates, P.C.

*Attachment   1*





## National Integrated Health Associates

**Home || New Patients || Search || Our Staff || Patient Services ||**
**Contact Us || Site Map |**

Monday July 7th 2008

**Areas of Focus:**

Chiropractic Care

**Modalities:**

**Musculo-Skeletal**

**Neuromuscular**

**Pain**



Copyright Notice:
All rights reserved
© 2003
National Integrated
Health Associates
(NIHA)

**Steven M. Kulawy, D.C.**
**Chiropractor**



Licensed to practice chiropractic care in Virginia and the District of Columbia

Graduate of the National College of Chiropractic, 1978

Bachelor of Science, State of Illinois/National College, IL

Associates of Arts, Queensboro College, NY

Dr. Kulawy has been in both private practice and group practice in the Washington , D.C. area since 1979. He brings 22 years of diverse chiropractic experience to NIHA. He specializes in non-invasive, non-traumatic protocols to facilitate healing to the body's neurological and musculo-skeletal structure.

**My Credentials**

**Frequently Asked Questions**

**Download Files**

**NIHA Health Education Lectures**



 

## National Integrated Health Associates

**Home || New Patients || Search || Our Staff || Patient Services || Contact Us || Site Map |**

Friday July 11th 2008

**Areas of Focus:**

Chiropractic Care

**Modalities:**

**Musculo-Skeletal**

**Neuromuscular**

**Pain**



Copyright Notice:
All rights reserved
© 2003
National Integrated
Health Associates
(NIHA)

### CURRICULUM VITAE – STEVEN M. KULAWY, D.C.

#### EDUCATION
National College of Chiropractic, Lombard, Illinois 1978
Awarded Doctorate of Chiropractic
Bachelor of Science in Human Biology (State of Illinois)
Queensboro College (CUNY), Bayside, New York 1974
Associate of Arts degree

#### LICENSURE
District of Columbia Real Estate Board 2001
State of Virginia Real Estate Board 2001
District of Columbia Healing Arts Commission 1982
Doctor of Chiropractic License
Virginia Board of Medicine, 1980
Doctor of Chiropractic License

#### PROFESSIONAL EXPERIENCE & TRAINING
Lordex Spinal Care Systems 2002
Copes Scoliosis Treatment Seminars 1999
Independent Medical Reviewer 1995
National Youth Leadership Seminars 1998
Kaplan/ Mazion Post Graduate Seminars
Quirosur, Founder- Chiropractic marketing in South America (Chile)

#### AFFILIATIONS & MEMBERSHIPS
American Chiropractic Association
American Public Health Association

My Credentials

Frequently Asked Questions

Download Files

NIHA Health Education Lectures

American College of Legal Medicine
American Back Society
Arlington Chamber of Commerce
Foundation for Chiropractic Education and
Research (FCER)
Technical Advisors Services (TASA)
National Association of Realtors (NAR)
Business Networks International (BNI)

## BUSINESS EXPERIENCE

**National Integrated Health Associates,
Washington, D.C.**
Multi-discipline integrative health care practice
(Jan 2006-present)
Chiropractic provider for a premier Integrative
Medical and Dental practice.

**Capstar Commercial Medical Brokerage,
Rockville, MD**
Commercial real estate and business
broker-agent (2003-2005)
Initiated a tri-state marketing strategy to reach
every medical physician (county by county) with
a self designed format to assist physicians in
sales and acquisitions of their practices and
assets.

**Columbia Pike Chiropractic Center,
Arlington, VA**
President and clinical director (1980-2002)

- Principal chiropractic physician serving
  northern Virginia.
- Providing examinations, consultations,
  radiology services, physical therapy,
  lifestyle and nutrition counseling.
- Supervised bilingual staff of up to 10
  persons
- Treatment and management of acute and
  chronic spinal and structural injury for
  athletes, injured workers, trauma and
  chronic pain.
- Administered practice principally last 2
  years of practice

**Inner Health, Washington, DC**
Chiropractic provider (1999-2002)

- Providing chiropractic care in a
  multi-doctor facility offering general and
  internal medicine, naturopathic medicine,

acupuncture, nutritional and homeopathic medicine, and massage therapy.
- Serving mainly an affluent and educated northwest Washington DC population.

**Chiroplus, Gaithersburg, MD**
Director (1999-2001)

- Preferred provider network of up to 80 doctors participating in a series of contracts with Aetna and George Washington University Health Plan serving over 1.5 million patient members.
- Set up provider membership guidelines and contracts.

**Managed Chiropractic Network (MCN), Gaithersburg, MD**
Co-Founder/President (1994-1999)

- Managed Care Organization of 120 plus doctors serving the Washington DC, Northern Virginia, Southern Maryland and Baltimore areas.
- Preferred provider organization (PPO) whose contracts included NYL Care, Kemper, Kaiser Permanente, GW Health Plan, Aetna, Prudential, Humana and Johns Hopkins Health Plan
- Negotiated and consummated above plan contracts, participated in from the ground up formation of infrastructure, doctor. contracts, membership acquisition, peer review

**Associated Health Practitioners, Washington, DC**
Managing Partner (1985-1989)

- A holistic center providing chiropractic, internal medicine, acupuncture, dermatology, massage therapy, podiatry and miscellaneous health related services
- A one stop health care facility
- Provided chiropractic services in the Foggy Bottom area of Washington D.C.
- Managed the daily business and practitioner relations to patients and to each other.

## PROFILE

**Experience-**
Successful clinical chiropractic physician for 23 years.

**Teamwork-**
Strong background in multidisciplinary health delivery.
Successful managed care network leadership.
Motivating team participant.

**Skills-**
Running an organization.
Health services marketing.
Business brokerage/ Commercial Realtor

**Communication-**
Articulate & expressive, compassionate

**Education-**
Seven years academic background.

**Future-**
Ready to take on new experiences and challenges with abundance.

---

### National Integrated Health Associates
5225 Wisconsin Avenue, Suite 401,
Washington DC 20015
**Phone (202) 237-7000**
**Fax (202) 237-0017**

Home | New Patients | Search | Our Staff | Patient Services | Contact Us | Site Map | Privacy | Disclaimer

Contact NIHA Webmaster

### STATEMENT AS TO NATURE OF SERVICES

In addition to conventional care, many of the diagnostic procedures and treatments used at NIHA are not considered proven. The integrative care we specialize in often provides patients care that is outside of approaches considered the current standard of care in the medical community. . . . . More . . .

# *Attachment   2*

GOVERNMENT OF THE DISTRICT OF COLUMBIA
DEPARTMENT OF HEALTH
BOARD OF CHIROPRACTIC

RECEIVED
HEALTH REGULATION
ADMINISTRATION

2004 NOV 29 P 2: 44

IN RE:                                    :
                                          :
Steven Kulawy, D.C.                       :
5405 Nibud Court                          :
Rockville, Maryland  20852                :
                                          :
                                          :

## CONSENT ORDER

### Jurisdiction

This matter comes before the District of Columbia Board of Chiropractic (the "Board") pursuant to D.C. Official Code § 3-1202.16(b) (2001), otherwise known as the Health Occupations Revision Act (The "HORA"). The HORA authorizes the Board of Chiropractic to regulate the practice of chiropractic in the District of Columbia.

### Background

Dr. Kulawy's license to practice chiropractic in the District of Columbia was suspended for one (1) year by Consent Order dated March 20, 2003 on the basis of inappropriate conduct with female patients. The Consent Order gave Dr. Kulawy the right to apply for reinstatement of his license at the end of the one- year period, which he did by reinstatement application dated February 10, 2004.

Dr. Kulawy appeared before the Board on May 11, 2004, in support of his reinstatement application. The Board issues a Consent Order with conditions. Dr. Kulawy appeared before the Board on September 14, 2004 requesting modifications of the conditions outlined by the Board.

After meeting with Dr. Kulawy on September 14, 2004, the Board voted to approve his application for reinstatement and outlined the conditions for approval in its Order below.

### ORDER

Based on the foregoing, it is hereby ORDERED that Steven Kulawy, D.C., shall be granted reinstatement of his license on the following conditions:

(1) Dr. Kulawy shall complete the Ethics and Boundaries course offered by the National Board of Chiropractic Examiners;    *done*

(2) Dr. Kulawy continue his involvement in applicable 12-step programs;

(3) Dr. Kulawy has been under the care of Dr. Joseph Poirer since his prior treating practitioner left the area. The board approves this change in practitioners. (Dr. Kulawy shall notify the Board of any other changes in his treating practitioner or practitioners and get approval for the changes.) The practitioner shall provide written reports to the Board regarding Dr. Kulawy's medical conditions on a quarterly basis commencing June 30, 2004;

(4) Dr. Kulawy shall sign an authorization form providing unrestricted communications between and among the Board and Dr. Kulawy's current treating practitioner or practitioners;

(5) From the date of this Consent Order forward, any and all interaction between Dr. Kulawy and any of his female patients shall be constantly monitored by a female chaperone. The chaperone shall comply with the following:

    (a) The chaperone shall co-sign all charts of female patients seen by Dr. Kulawy each time he administers care to those patients;

    (b) Prior to beginning to serve as chaperone, the individual shall be interviewed in person by a member of the Board. The chaperon will then be presented to the Board for approval through a report made by the interviewing member;

    (c) The chaperone shall be required to submit written reports to the Board regarding Dr. Kulawy's interactions with his female patients on a quarterly basis commencing June 30, 2004, or the date the chaperone is approved by the Board;

    (d) Until such time as the chaperone is approved by the Board, Dr. Kulawy shall be absolutely prohibited from interacting with female patients in any manner;

(6) Dr. Kulawy shall sign this Consent Order and return it to the District of Columbia Board of Chiropractic within thirty (30) days of receiving this Consent Order;

(7) If Dr. Kulawy fails to comply with any of the conditions of this Consent Order, he could be subject to disciplinary action in the District of Columbia, including but not limited to revocation or suspension of his license, and Dr. Kulawy's license will not be reinstated until he complies with all of the conditions stated above.

2

1/11/05
Date

Anthony Mirando, D.C.
Chairperson
Board of Chiropractic

## CONSENT OF APPLICANT

My signature on the foregoing Consent Order signifies my acceptance of the terms and conditions of the Consent Order and my agreement to be bound by its provisions.

I acknowledge the validity of this order, as if made after a hearing in which I would have had the right to counsel, to confront witnesses, to give testimony, to call witnesses on my behalf, and to all other substantive and procedural due process protections provided by the laws of the District of Columbia.

I also recognize that, by this Consent, I am waiving my right to appeal this Order. I am also waiving my right to appeal any adverse ruling of the Board of Chiropractic had this matter gone to a hearing.

I have had an opportunity to review this document. I choose willingly to sign this Order, and I understand its meaning and effect.

11/2/04
Date

Steven Kulawy, D.C.

Sworn and subscribed to before me this 23rd day of Nov, 2004.

I, Steven Kulawy, approve unrestricted communication between the Board & my treating practitioners
11/1/04

Notary Public

MARY G. KABIGTING
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires May 6, 2008

3

*Attachment   3*

VIRGINIA:

## BEFORE THE BOARD OF MEDICINE

IN RE:     STEVEN M. KULAWY, D.C.
           License No.: 0104-000209

### ORDER

In accordance with Sections 54.1-2400(10), 2.2-4019 and 2.2-4021 of the Code of Virginia (1950), as amended ("Code"), an informal conference was held with Steven M. Kulawy, D.C., on September 29, 2004, in Fredericksburg, Virginia. Members of the Virginia Board of Medicine ("Board") serving on the Special Conference Committee ("Committee") were: Christine Ober Bridge, Chairperson; Patrick W. Clougherty, M.D., and Jane E. Piness, M.D. Dr. Kulawy appeared personally and was not represented by legal counsel. The purpose of the informal conference was to review Dr. Kulawy's compliance with the terms and conditions of indefinite probation imposed upon his license to practice chiropractic pursuant to an Order of the Board entered August 20, 2002, as set forth in a Notice of Informal Conference dated August 26, 2004.

### FINDINGS OF FACT

Now, having properly considered the evidence and statements presented, the Committee makes the following Findings of Fact:

1.     Steven M. Kulawy, D.C., was issued license number 0104-000209 to practice chiropractic in Virginia on June 30, 1978. Said license is currently active and will expire on May 31, 2006, unless renewed or otherwise restricted.

2.    By Order entered August 20, 2002, Dr. Kulawy's license was placed on indefinite probation subject to certain terms and conditions.  This action was based on findings of inappropriate conduct with female patients.

3.    By Order entered January 13, 2004, Dr. Kulawy's license was mandatorily suspended by the Department of Health Professions due to the suspension of his license to practice chiropractic in the District of Columbia by Consent Order entered April 8, 2003.

4.    The Board reinstated Dr. Kulawy's license by Consent Order entered July 3, 2004, subject to the terms of the Board's Order entered August 20, 2002.

5.    Dr. Kulawy received psychotherapy from Bette A. Weinstein, Ph.D, L.C.S.W., from early 2001 until he was discharged on April 22, 2004, due to her relocation.  Dr. Kulawy initially saw Dr. Weinstein on a weekly basis until 2004, when it was decreased to one visit every three weeks.  In her last report, dated April 4, 2004, Dr. Weinstein reported that, in her opinion, Dr. Kulawy no longer required psychotherapy and supported his return to practice at this time.

6.    Upon approval by the Board, Dr. Kulawy began psychotherapy with Joseph G. Poirier, Ph.D., on July 4, 2004.  In his report dated September 4, 2004, Dr. Poirier reported that Dr. Kulawy is "committed and motivated in his work with me."

7.    Dr. Kulawy completed a board approved course, entitled "Maintaining Proper Boundaries," in February 26-28, 2002, sponsored by The Center for Professional Health at Vanderbilt University Medical Center, and received 20.5 hours of continuing medical education.

Order – Steven M. Kulawy, D.C.
Page 3 of 5

8.    Dr. Kulawy continues to attend Sex Addicts Anonymous meetings regularly in support of his recovery.

9.    Dr. Kulawy reported that he sold his practice in September 2002, and removed himself from clinical chiropractic practice in order to focus on the issues that led him to his inappropriate behavior with female patients.  He stated that he now feels that he is able to return to practice and utilize safeguards to maintain appropriate boundaries with female patients he treats.

10.    Dr. Kulawy demonstrated knowledge and sensitivity to the issues that lead the Board to place his license on probation.

11.    Dr. Kulawy expressed an interest in professional development related to boundaries for other practitioners.

## CONCLUSIONS OF LAW

This matter is properly before the Committee.

## ORDER

WHEREFORE, based on the above Findings of Fact and Conclusions of Law, it is hereby ORDERED that the INDEFINITE PROBATION placed on the license of Steven M. Kulawy, D.C., be, and hereby is, TERMINATED, and that the matter be continued subject to the following terms and conditions:

1. Dr. Kulawy shall have a chaperone present at all times during a physical exam or treatment of a female patient.  Dr. Kulawy shall submit the name and identification of the chaperone for approval by the Executive Director of the Board.  Dr. Kulawy shall provide a

complete copy of the August 20, 2002, Order and this current Order to the chaperone.  The chaperone may not be a family member, former patient, or a person who has a personal or prior professional relationship with Dr. Kulawy.

2.  Dr. Kulawy shall remain under the care of Dr. Joseph Poirier or other practitioner approved by the Board.  Quarterly reports regarding his progress in therapy shall be submitted to the Board on a calendar quarterly basis.  The report shall contain a detailed statement on Dr. Kulawy's current condition, prognosis and any change in the treatment plan or diagnosis.

3.  Upon twelve (12) months of cumulative chiropractic practice, Dr. Kulawy's compliance with the terms of this Order shall be reviewed.  The Committee authorizes the Executive Director of the Board of Medicine to review and close this matter or refer the matter to an informal conference.

Dr. Kulawy shall maintain a course of conduct in his practice of chiropractic commensurate with the requirements of Title 54.1, Chapter 29 or the Code and all laws of the Commonwealth.  Dr. Kulawy shall cooperate with the Virginia Board of Medicine and the Department of Health Professions in the investigation or inspection of his practice to verify that he is in compliance with this Order.  Dr. Kulawy shall notify the Executive Director of the Board by certified mail of any change of address within ten days of such occurrence. Further, Dr. Kulawy shall notify the Board immediately in writing should he intend to change the location of his practice.

Order – Steven M. Kulawy, D.C.
Page 5 of 5

Violation of this Order may constitute grounds for suspension or revocation of Dr. Kulawy's license. In the event that Dr. Kulawy violates this Order, an administrative proceeding may be convened to determine whether his license shall be revoked.

Pursuant to Section 54.1-2400.2(F) of the Code, the signed original of this Order shall remain in the custody of the Department of Health Professions as a public record, and shall be made available for public inspection and copying upon request.

Pursuant to Section 54.1-2400(10) of the Code, Dr. Kulawy may, not later than 5:00 p.m., on November 22, 2004, notify William L. Harp, M.D., Executive Director, Board of Medicine, 6603 West Broad Street, Richmond, Virginia 23230, in writing that he desires a formal administrative hearing before the Board. Upon the filing with the Executive Director of a request for the hearing, this Order shall be vacated.

Therefore, this Order shall become final on November 22, 2004, unless a request for a formal administrative hearing is received as described above.

FOR THE BOARD

William L. Harp, M.D.
Executive Director
Virginia Board of Medicine

ENTERED: 10/20/04

JAS\ORD\KULAWY

*Attachment   4*

VIRGINIA:

## BEFORE THE BOARD OF MEDICINE

IN RE:    STEPHEN M. KULAWY, D.C.
License No.: 0104-000209

## ORDER

In accordance with Sections 54.1-2919, 2.2-4019 and 2.2-4021 of the Code of Virginia (1950), as amended ("Code"), an informal conference was held with Stephen M. Kulawy, D.C., on August 15, 2002, in Fredericksburg, Virginia. Members of the Virginia Board of Medicine ("Board") serving on the Informal Conference Committee ("Committee") were: Cedric Rucker, Chairman; Robert Bettini, M.D.; and Robert Nirschl, M.D. Dr. Kulawy appeared personally and was represented by Claire Pettrone, Esquire. The purpose of the informal conference was to inquire into allegations that Dr. Kulawy may have violated certain laws governing the practice of medicine in the Commonwealth of Virginia, as set forth in a Notice of Informal Conference dated March 19, 2002.

## FINDINGS OF FACT

Now, having properly considered the evidence and statements presented, the Committee makes the following Findings of Fact:

1.    Periodically during the course of his practice of chiropractic, Dr. Kulawy fondled the breasts of female patients.

2.    On March 23, 2001, Dr. Kulawy began participating in Health Practitioner's Intervention Program. On June 21, 2002, Dr. Kulawy was dismissed from the program due to lack of evidence that supports impairment related to a depressive disorder.

3.    Dr. Kulawy informed the Committee that he is under investigation by the District of Columbia Board of Medicine for inappropriately touching of a female patient in June 2000.

4.    Bettie Ann Weinstein, Ph.D., L.C.S.W., testified on behalf of Dr. Kulawy. She stated that

Dr. Kulawy was remorseful about his actions, and attends therapy on a regular basis, and has made changes in his practice. Dr. Weinstein stated that she believes that Dr. Kulawy is unlikely to repeat his behavior.

5.     Dr. Kulawy acknowledge to the Committee that his actions were harmful to his patients. He indicated to the Committee that he is more aware of the warning signals that causes him to act out inappropriately in the clinical setting.

6.     Dr. Kulawy informed the Committee that he has instituted the following safeguards in his District of Columbia practice:

      a.     He has informed his office manager and a physician working in the practice;

      b.     He leaves the door open when seeing female patients; and

      c.     He uses a chaperone when treating female patients.

Dr. Kulawy stated that he has not instituted similar safeguards in his Virginia practice, as he only has approximately four (4) patients at that location. Dr. Kulawy has not informed his District of Columbia practice chaperone of his past inappropriate behavior.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Committee concludes that Dr. Kulawy has violated Section 54.1-2915.A (3), as further defined in Sections 54.1-2914.A (7), (8), (11), (13) and (14) of the Code.

## ORDER

WHEREFORE, it is hereby ORDERED that the license of Stephen M. Kulawy, D.C., be, and hereby is, placed on INDEFINITE PROBATION with the following terms and conditions:

1.     Dr. Kulawy shall remain under the care of Errol Segall, M.D., and Bettie Ann Weinstein, Ph.D., L.C.S.W., who shall provide written reports to the Board regarding Dr. Kulawy's condition on a calendar quarterly basis. The initial report shall include a statement of the diagnosis, treatment plan and prognosis. Thereafter, the report shall contain a detailed statement on the current condition, prognosis and

Order – Stephen M. Kulawy, D.C.
Page 3

any change in the treatment plan or diagnosis. Should Dr. Kulawy wish to change treating practitioners, he shall submit the name and curriculum vitae of a practitioner for approval by the Board. Upon approval, Dr. Kulawy shall advise the Board when he has made an appointment and shall await authorization from the Board before seeing the practitioner. The Board will provide a copy of any materials deemed necessary to assist the practitioner.

2.    Dr. Kulawy shall sign an authorization for providing unrestricted communication between and among the Board and Dr. Kulawy's current treating practitioners.

3.    Within one (1) year of entry of this Order, Dr. Kulawy shall successfully complete a course of Category I, AMA approved continuing education ("CE") in the area of professional boundaries. All CE hours shall be approved in advance of registration by the Executive Director of the Board. Any CE hours obtained for the requirement of license renewal shall not be used towards compliance with term.

4.    Dr. Kulawy shall have a chaperone present at all times during an evaluation and treatment of a female patient.

5.    Dr. Kulawy shall provide a complete copy of this Order to all personnel who work as chaperones in his practice.

6.    In approximately eighteen (18) months, Dr. Kulawy shall be noticed to appear before an informal conference committee of the Board.

7.    Dr. Kulawy shall maintain a course of conduct in his practice of medicine commensurate with the requirements of Title 54.1, Chapter 29 of the Code and all laws of the Commonwealth.

8.    Dr. Kulawy shall cooperate with the Virginia Board of Medicine and the Department of Health Professions in the investigation or inspection of his practice to verify that he is in compliance with this Order.

Order – Stephen M. Kulawy, D.C.
Page 4

9       Dr. Kulawy shall notify the Executive Director of the Board by certified mail of any change of address within ten days of such occurrence.

10.     Dr. Kulawy shall notify the Board immediately in writing should he intend to change the location of his practice.

Violation of this Order may constitute grounds for suspension or revocation of Dr. Kulawy's license. In the event that Dr. Kulawy violates this Order, an administrative proceeding may be convened to determine whether his license shall be revoked.

Pursuant to Section 2.2-4023 of the Code, the signed original of this Order shall remain in the custody of the Department of Health Professions as a public record, and shall be made available for public inspection and copying upon request.

Pursuant to Section 54.1-2919 of the Code, Dr. Kulawy may, not later than 5:00 p.m., on September 20, 2002, notify William L. Harp, M.D., Executive Director, Board of Medicine, 6606 West Broad Street, Richmond, Virginia 23230, in writing that he desires a formal administrative hearing before the Board.  Upon the filing with the Executive Director of a request for the hearing, this Order shall be vacated.

Therefore, this Order shall become final on September 20, 2002, unless a request for a formal administrative hearing is received as described above.

FOR THE BOARD

William L. Harp, M.D.
Executive Director
Virginia Board of Medicine

Entered: _____

CGORD/KULAWY

*Attachment  5*

10/30/06
for failing to submit
Jan 05 order

## GOVERNMENT OF THE DISTRICT OF COLUMBIA
## DEPARTMENT OF HEALTH
## BOARD OF CHIROPRACTIC

In Re:                              :
                                    :
Steven Kulawy, D.C.                 :
5405 Nibud Court                    :
Rockville, Maryland 20852           :

### CONSENT ORDER

#### Jurisdiction

This matter comes before the District of Columbia Board of Chiropractic pursuant to D.C. Official Code § 3-1202.16(b) (2001) otherwise known as the Health Occupations Revision Act ("HORA"). The "HORA" provides for the regulation of the practice of chiropractic by the D.C. Board of Chiropractic.

#### Background

On May 11, 2006 at its regularly scheduled board meeting the Board of Chiropractic requested an investigation to determine whether Dr. Kulawy was in compliance with the terms of his Consent Order.[1] On June 2, 2006 during an unannounced visit by HPLA investigators a random audit was conducted of some of Dr. Kulawy's patients' records.

Thirteen records were reviewed. Of the thirteen, nine of the records reviewed indicated that Dr. Kulawy was not in compliance.[2] Upon further review of the records

---

[1] Section 5 of the "Consent Order" signed on January 11, 2005 by the Chairman of the Board, Anthony Mirando, D.C., provided: "From the date of this Consent Order forward, any and all interaction between Dr. Kulawy and any of his female patients shall be constantly monitored by a female chaperone. The chaperone shall comply with the following: (a) The chaperone shall co-sign all charts of female patients seen by Dr. Kulawy each time he administers care to those patients;" …

[2] The 9 patients visited Dr. Kulawy a total of 54 times. Of the 54 visits, during 34 of the visits Dr. Kulawy was non-compliant with the Consent Order.

the investigators indicated that it was difficult to determine who, exactly, was signing the patients' charts. The initials of "LW" appeared on some of the records. However, "LW" was not an approved chaperone.[3]

In addition, Dr. Kulawy treated female staff of National Integrated Health Associates as his patients under the mistaken belief that he was not required to have a chaperone while treating them.

On June 13, 2006 the Board of Chiropractic reviewed the investigator's report. After extensive discussion the Board voted to sanction Dr. Kulawy for his failure to comply with the January 2005 Consent Order.

## ORDER

Based upon the aforementioned it is hereby **ORDERED** – that Steven Kulawy, D.C. shall be and is hereby fined in the amount of one thousand dollars ($1,000). If Dr. Kulawy refuses to accept this Consent Order the Board shall take such other action as it deems appropriate.

11/14/06
Date

Anthony Mirando, D.C.
Chairman
D.C. Board of Chiropractic

## CONSENT OF APPLICANT

By signing this Consent Order, I agree to accept and abide by its terms. I acknowledge its validity and acknowledge that I have agreed to this Order in lieu of a hearing at which I would have had the right to counsel, to confront witnesses, to give

---

[3] The investigators were unable to determine the identity of "LW."

testimony, to call witnesses on my behalf, and to all other substantive and procedural

protections provided by law.  I also recognize that I am waiving my right to appeal any

adverse ruling by the Board of Chiropractic that might have followed any such hearing.

By signing this order, I waive all such rights.  I choose to sign this order willingly and

without reservation and am fully aware of its meaning and effect.

10/30/06
_____
Date

_____
Steven Kulawy, D.C.

Sworn to and subscribed before me this _30_ day of _October_, 2006.

AMY HOWARD-BOYD
Notary Public, District of Columbia
My Commission Expires February 14, 2010

_____
Notary Public

Dr. Kulawy shall return this signed Consent Order along with a check or money order
in the amount of one thousand dollars ($1,000) made payable to "D.C. Treasurer" to:
James Granger, Executive Director, 717 14th Street, 10th Floor, Washington, D.C. 20005
within ten (10) days of receipt.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JAMIE EVANS** | |
| **Plaintiff,** | |
| | **Case No. 1:08–cv– 0875 –ESH** |
| **v.** | |
| **WASHINGTON CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS, STEVEN KULAWY, *et al.,*** | |
| | **July 11, 2008** |
| **Defendants.** | |

**PLAINTIFF'S STATEMENT OF GENUINE ISSUES OF MATERIAL FACTS IN DISPUTE CONCERNING THE JUNE 30, 2008 MOTION TO DISMISS OF DEFENDANTS STEVEN KULAWY, D.C., AND CENTER FOR INTEGRATIVE BODY THERAPIES**

Plaintiff Jamie Evans, through counsel, respectfully submits this Statement of Genuine Issues of Material Fact.

1.    Steven Kulawy, D.C., was employed for National Integrated Health Associates, LLC, NIHA) during the time the events described in the Complaint occurred.  **(Attachment 1).**

2.    Dr. Kulawy was also employed by Physical Medicine Associates, LLC, (PMA) and/or Center for Integrative Body Therapies (CIBT) during the time the events described in the Complaint occurred.

3.    Dr. Kulawy repeatedly approached Ms. Evans from behind when she was typing and massaged her shoulders.  (Amended Complaint at ¶ 30).

4.    Dr. Kulawy repeatedly wrapped his arm around Ms. Evans' waist while they were walking through the office.  (Amended Complaint at ¶ 31).

5.    Dr. Kulawy repeatedly made inappropriate sexual comments to Ms. Evans about her

appearance.  (Amended Complaint at ¶ 32).

6.      Dr. Kulawy's conduct toward Ms. Evans was sexual in nature.

7.      Dr. Kulawy's conduct toward Ms. Evans was sufficient for allegations of sexual

        harassment under the District of Columbia Human Rights Act.

8.      Dr. Kulawy knew or should have known that his touching of Ms. Evans and his

        comments on Ms. Evans' appearance were sexually inappropriate, especially in light of

        the actions against him by the licensing boards of the District of Columbia and the

        Commonwealth of Virginia, fining him and placing restrictions on him concerning

        women during the performance of his work.  **(Attachments 2, 3, 4 and 5).**

July 11, 2008                          Respectfully submitted,

                                       **KLIMASKI & ASSOCIATES, P.C.**

                                        */s/  James R. Klimaski*
                                       James R. Klimaski, #243543

                                        */s/  Lynn I. Miller*
                                       Lynn I. Miller, #941559

                                       1625 Massachusetts Avenue NW
                                       Suite 500
                                       Washington, DC 20036-2245
                                       (202) 296-5600, Fax (202) 296-5601

                                       klimaski@klimaskilaw.com
                                       miller@klimaskilaw.com

                                       ***Counsel for Jamie Evans***

2