## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| JAMIE EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:08-cv-00875-ESH |
| ) | |
| THE WASHINGTON CENTER FOR ) | |
| INTERNSHIPS AND ACADEMIC ) | |
| SEMINARS, ) | |
| ) | |
| STEVEN KULAWY, ) | |
| ) | |
| CENTER FOR INTEGRATIVE BODY ) | |
| THERAPIES, ) | |
| ) | |
| DANIEL STORCK,   and ) | |
| ) | |
| NATIONAL INTEGRATED HEALTH ) | |
| ASSOCIATES, ) | |
| ) | |
| Defendants. ) | |

_____)

## MOTION OF DEFENDANT WASHINGTON CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS TO DISMISS COUNT I OF THE FIRST AMENDED COMPLAINT

Defendant Washington Center for Internships and Academic Seminars respectfully moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing Count I of the First Amended Complaint, with prejudice, for failure to state a claim upon which relief can be granted.  The grounds for this motion are set forth more fully in the accompanying memorandum in support of this motion, which is incorporated herein by reference.

Respectfully submitted,

/s/ Leslie H. Wiesenfelder_____
Leslie H. Wiesenfelder (D.C. Bar. No. 173500)
Adam M. Jones (D.C. Bar. No. 973761)
DOW LOHNES PLLC

1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C.  20036
Tel:     (202) 776-2726
Fax:     (202) 776-4726 or (202) 776-2222

Attorneys for Defendant Washington
         Center for Internships and
         Academic Seminars

Dated:     July 16, 2008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ | ) |
| JAMIE EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Case No. 1:08-cv-00875-ESH |
| | ) |
| THE WASHINGTON CENTER FOR | ) |
|      INTERNSHIPS AND ACADEMIC | ) |
|      SEMINARS, | ) |
| | ) |
| STEVEN KULAWY, | ) |
| | ) |
| CENTER FOR INTEGRATIVE BODY | ) |
|      THERAPIES, | ) |
| | ) |
| DANIEL STORCK,   and | ) |
| | ) |
| NATIONAL INTEGRATED HEALTH | ) |
|      ASSOCIATES, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES OF DEFENDANT WASHINGTON CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS IN SUPPORT OF MOTION TO DISMISS COUNT I OF THE FIRST AMENDED COMPLAINT

Leslie H. Wiesenfelder (D.C. Bar. No. 173500)
Adam M. Jones (D.C. Bar. No. 973761)
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C.  20036
Tel:     (202) 776-2726
Fax:     (202) 776-4726 or (202) 776-2222

Attorneys for Defendant Washington
     Center for Internships and
     Academic Seminars

Dated:     July 16, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

STANDARD OF DECISION .............................................................................................. 5

ARGUMENT ..................................................................................................................... 6

I.    PLAINTIFF'S SOLE CAUSE OF ACTION AGAINST THE WASHINGTON
      CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P.
      12(b)(6) BECAUSE MS. EVANS WAS CONTRIBUTORILY NEGLIGENT AS
      A MATTER OF LAW. .............................................................................................. 6

      A.    Contributory Negligence Is a Bar to Plaintiff's Claims Against TWC. ................ 6

      B.    Ms. Evans' Failure to Exercise Due Care to Prevent Injury After Dr.
            Kulawy's Touching and Comments Began Constitutes Contributory
            Negligence. ................................................................................................... 8

      C.    Ms. Evans' Failure to Exercise Due Care to Prevent Injury Upon
            Recognition of the Danger Posed by Dr. Kulawy Constituted Contributory
            Negligence. ................................................................................................... 15

      D.    Ms. Evans' Claims Against TWC Are Also Barred By the Doctrine of
            Avoidable Consequences. .............................................................................. 16

CONCLUSION ................................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

*Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8 (D.C. Cir. 2008) ............5

*Andrews v. Wilkins*, 934 F.2d 1267 (D.C. Cir. 1991) .................................................................6, 15

Brown v. Consol. Rail Corp.*, 717 A.2d 309 (D.C. 1998) ................................................................6

Campbell v. Balt. Gas & Elec. Co.*, 619 A.2d 213 (Md. Ct. Spec. App. 1993) .............................7

*Campbell v. Montgomery County Bd. of Educ.*, 533 A.2d 9 (Md. Ct. Spec. App. 1987) .............12

Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ........................................................3

Chudson v. Ratra*, 548 A.2d 172 (Md. Ct. Spec. App. 1988) ........................................................12

Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991) ...........................................3

*Craig v. Greenbelt Consumer Servs., Inc.*, 222 A.2d 836 (Md. 1966) ....................................15, 16

District of Columbia v. Brown*, 589 A.2d 384 (D.C. 1991) ............................................................7

*Doe v. Prudential Ins. Co. of Am.*, 860 F. Supp. 243 (D.Md. 1991) ................................10, 11, 14

Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621
    (D.C. Cir. 1997) .......................................................................................................................3

*Flowers v. District of Columbia*, 478 A.2d 1073 (D.C. 1984) ................................................16, 17

Fore v. Vermeer Mfg. Co.*, 287 N.E.2d 526 (Ill. App. Ct. 1972) ...................................................13

Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) .....................3

Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507 (6th Cir. 1999) ....................................................3

Jacobsen v. Oliver*, 201 F. Supp. 2d 93 (D.D.C. 2002) .............................................................3, 5

Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549 (D.C. Cir. 1993) ..............................................6

Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251 (D.C. Cir. 2008) .........................................................5

Krombein v. Gali Serv. Indus., Inc.*, 317 F. Supp. 2d 14 (D.D.C. 2004) ......................................15

Le Vonas v. Acme Paper Board Co.*, 40 A.2d 43 (Md. 1944) .........................................................7

Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015 (5th Cir. 1996) ................................................3

*Maalouf v. The Swiss Confederation*, 208 F. Supp. 2d 31 (D.D.C. 2002) ...................................6, 7

*Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221 (D.C. Cir. 1993) ........................5

*Menish v. Polinger Co.*, 356 A.2d 233 (Md. 1976) ......................................................11

*Myers v. Estate of Alessi*, 560 A.2d 59 (Md. Ct. Spec. App. 1989)................................12

*Napoleon v. Heard*, 455 A.2d 901 (D.C. 1983) ......................................................7

*O'Connor v. District of Columbia,* 921 F. Supp. 5 (D.D.C. 1996).................................7

*O'Leary v. Siegel*, 256 N.E.2d 127 (Ill. App. Ct. 1970) ...........................................13

*Parrino v. FHP, Inc.*, 146 F.3d 699 (9th Cir. 1998) ...............................................3

*Payne v. Restaurant Corp. of Am.*, Civ. No. 7866-74 (D.C. Super. June 10, 1976) ...................10

*Phillips v. D.C. Transit Sys., Inc.*, 198 A.2d 740 (D.C. 1964) ......................................7

*Poyner v. Loftus*, 694 A.2d 69 (D.C. 1997) ......................................................6, 7

*Quigley v. Speedy Muffler King*, 745 F. Supp 3 (D.D.C. 1990) ......................................9

*Scoggins v. Jude*, 419 A.2d 999 (D.C. 1980) ..................................................7, 14

*Sears v. Waste Processing Equip., Inc.*, 695 So. 2d 51 (Ala. Civ. App. 1997) ........................13

*Smith v. Wash. Sheraton Corp.*, 135 F.3d 779 (D.C. Cir. 1998)......................................6

*Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169 (D.C. Cir. 2006)........................................5

*Stancill v. Potomac Elec. Power Co.*, 744 F.2d 861 (D.C. Cir. 1984)................................6

*Sugar v. Traub*, 196 A.2d 869 (Md. 1964) ......................................................16

*Sutton v. Mayor & City Council of Balt.*, 136 A.2d 383 (Md. 1957)..............................16

*Thomas v. City Lights School, Inc.*, 124 F. Supp. 2d 707 (D.D.C. 2000).........................6

*Thomas v. Wash. Indus. Med. Ctr., Inc.*, No. 08-1652, 1999 U.S. App. LEXIS 16771 (4th Cir. July 19, 1999).............................................11, 12

*Tilghman v. Johnson*, 513 A.2d 1350 (D.C. 1986) ..............................................6, 7

*TMG II v. United States*, 1 F.3d 36 (D.C. Cir 1993)................................................7

*Vanover v. Hantman*, 77 F. Supp. 2d 91 (D.D.C. 1999)........................................3

*Washington v. A.&H. Garcias Trash Hauling Co.*, 584 A.2d 544 (D.C. 1990) .......................6

*Wingfield v. Peoples Drug Store*, 379 A.2d 685 (D.C. 1977).......................................6

**STATUTES & RULES**

*Fed. R. Civ. P. 12(b)(6) ...........................................................................................*Passim*

 Fed. R. Civ. P. 12(d) ....................................................................................................3

**OTHER AUTHORITIES**

*Restatement (Second) of Torts § 463 (1965) ...............................................................7

 Restatement (Second) of Torts § 464 (1965) .............................................................13

 Restatement (Second) of Torts § 466 (1965) .............................................................15

*Restatement (Second) of Torts § 918 (1979) .......................................................16, 17

Defendant Washington Center for Internships and Academic Seminars ("TWC"), by and through counsel, hereby respectfully submits this memorandum of points and authorities in support of its motion to dismiss Count I of the First Amended Complaint, which is the sole cause of action asserted against it, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff Jamie Evans alleges she was the victim of battery and sexual harassment at the hands of Dr. Steven Kulawy ("Dr. Kulawy") during the course of a summer academic internship in physical therapy arranged by TWC and that TWC was negligent in failing to adhere to an industry standard of care which she alleges required TWC to investigate Dr. Kulawy's background, professional credentials, and disciplinary record prior to placing her in an internship at Dr. Kulawy's place of employment.  Assuming the truth of Ms. Evans' factual allegations in the First Amended Complaint for purposes of this motion to dismiss, her claims against TWC are nonetheless barred as a matter of law under the doctrines of contributory negligence and avoidable consequences.  Ms. Evans' allegations demonstrate that, as a matter of law, she failed to take actions that a reasonably prudent person would take to avoid the injuries she complains of that were proximately caused by Dr. Kulawy because she allowed his battery and sexual harassment of her to continue on a daily basis, rather than notify either TWC or Dr. Kulawy's employer, the Center for Integrative Body Therapies.  Because Ms. Evans' failures to take the steps a reasonable person would take to protect herself were a contributing cause of the injuries she claims, she was contributorily negligent, which is a complete bar to any recovery for TWC's alleged negligence under District of Columbia law.  Accordingly, Count I of the First Amended Complaint, which is plaintiff's sole cause of action against TWC, must be dismissed as a matter of law.

## STATEMENT OF FACTS

TWC provides internship opportunities for academic credit to college students seeking internships in Washington, D.C.  First Am. Compl. ¶¶ 2 and 10-14.[1]  In March 2007, Ms. Evans applied to, and was accepted by, TWC for a 2007 summer academic internship in physical therapy.  *Id*. ¶¶ 12-13.   The cost of  Ms. Evans' internship was $7,200, and she would earn twelve credits toward her college degree for successfully completing this internship.  *Id*. ¶¶ 14-15.

TWC placed Ms. Evans in an internship at the Center for Integrative Body Therapies ("CIBT") based on her expressed interest in a career as a physical therapist.  First Am. Compl. ¶¶ 11 and 17.  Dr. Kulawy is a chiropractor whose practice is at CIBT.  *Id*. ¶ 18.

On May 29, 2007, Ms. Evans started her academic internship with CIBT.  First Am. Compl. ¶ 25.  She worked with Dr. Kulawy and several physical therapists.  *Id*. ¶ 26.  Ms. Evans states that "during her first few days at CIBT, [she] was informed that when Dr. Kulawy was with a female patient, the door to the exam room had to remain open," although "no one explained the reason for this policy" to her.  *Id*. ¶¶ 27-28.[2]

---

[1] Ms. Evans filed her original Complaint on May 22, 2008, and her First Amended Complaint on July 3, 2008.  The First Amended Complaint is hereinafter referred to as "First Am. Compl."

[2] Ms. Evans states that she never asked anyone about the reason for the policy until her last day at CIBT, and even then only because a representative of TWC who was there on that date to conduct a site visit "directed" her to do so, after Ms. Evans made her first and only report to TWC about Dr. Kulawy's "touching and comments."  First Am. Compl. ¶¶ 54-56.

On June 5, 2007, Ms. Evans executed an internship agreement ("Internship Agreement") with TWC and CIBT, a copy of which is attached hereto as Exhibit A.[3]  In the Internship Agreement, which covers the period May 29, 2007, through August 3, 2007, Ms. Evans agreed to "[i]nform in a timely and reasonable manner, [CIBT] and/or TWC of any problems that may occur, including substantive work issues, during the course of the internship."  Internship Agreement at 1.

On an undisclosed date, "Dr. Kulawy began making advances and comments to Ms. Evans."  First Am. Compl. ¶ 29.  As examples of this behavior, the First Amended Complaint

---

[3]  Ms. Evans did not include a copy of the Internship Agreement with the Complaint or the First Amended Complaint.  TWC requests that the Court consider the Internship Agreement when deciding this motion to dismiss because the sole cause of action asserted against TWC is predicated on the allegation that, as a "placement agency" hired by Ms. Evans for a fee, TWC had a duty to Ms. Evans to adhere to the industry standard of care for such placement agencies that TWC allegedly breached.  *See* First Am. Compl. ¶¶ 12-15, 17 and 66-67.  Thus, the only basis for the existence of the duty Ms. Evans alleges was owed to her by TWC is the contractual relationship between her and TWC, which makes the Internship Agreement central to her cause of action against TWC.  Accordingly, this case presents an exception to the general rule that in deciding a motion to dismiss for failure to state a claim, courts limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint.  *See Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997) (citing *Lovelace v. Software Spectrum, Inc*., 78 F.3d 1015, 1017-18 (5th Cir. 1996)); *see also* Fed. R. Civ. P. 12(d).  The exception is triggered here because "'where a document is referred to in the complaint and is central to plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'"  *Jacobsen v. Oliver*, 201 F. Supp. 2d 93, 110 (D.D.C. 2002) (quoting *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999) and citing *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th  Cir. 1999)); *see also Cortec Indus., Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).  Additionally, at least two Circuits have held that "if a plaintiff's claims are predicated upon a document, the defendant may attach the document to [its] Rule 12(b)(6) motion, even if the plaintiff's complaint does not *explicitly* refer to it."  *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (citing *Cortec*, 949 F.2d at 47 (2d Cir. 1991)) (emphasis added).  Furthermore, the primary problem that Rule 12(d) is designed to address is the lack of notice that a plaintiff may encounter where a court considers matters extraneous to the complaint.  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002).  Lack of notice of the Internship Agreement is not an issue here because Ms. Evans is a signatory, which also eliminates any question of authenticity.  *Parrino*, 146 F.3d at 706.

states that "Dr. Kulawy repeatedly approached Ms. Evans from behind when she was typing and massaged her shoulders," "repeatedly wrapped his arm around Ms. Evans' waist while they were walking through the office," and "repeatedly made comments to Ms. Evans about her appearance." *Id*. ¶¶ 30-32.

Ms. Evans states that as a result of Dr. Kulawy's advances and comments, she "*grew increasingly* anxious and uncomfortable working around Dr. Kulawy," First Am. Compl. ¶ 33 (emphasis added), and that she "stopped wearing make-up and changed the style of her clothes to make herself less attractive in an effort to stop Dr. Kulawy's advances and comments as well as any possible unwanted attention from other males." *Id*. ¶ 34. Ms. Evans further states that she "asked her fellow summer interns how to handle Dr. Kulawy," "asked her parents how to handle Dr. Kulawy," and "*frequently* drove home to New Jersey to seek the comfort of her parents." *Id*. ¶ 35-37 (emphasis added).

During mid-July 2007, Julie Zimmerman, an employee of TWC, conducted a site visit at CIBT. First Am. Compl. ¶ 53. As Ms. Zimmerman left CIBT, Ms. Evans reported Dr. Kulawy's touching and comments to Ms. Zimmerman. *Id*. ¶ 54. Ms. Evans also told Ms. Zimmerman about the open-door requirement whenever Dr. Kulawy was treating a female patient. *Id*. ¶ 55. Ms. Zimmerman "directed" Ms. Evans to go back into the office to find out the reason for the open-door policy. *Id*. ¶ 56. A CIBT employee told Ms. Evans that the open door was necessary in light of Dr. Kulawy's previous inappropriate touching of female patients. *Id*. ¶ 57.

Upon hearing this, according to a pleading filed in this case by Ms. Evans on July 3, 2008,[4] Ms. Evans states that she "finally reported this [Dr. Kulawy's touching her] to another [CIBT] staffmember," Pl.'s July 3 Oppo. at 4 (emphasis added), thereby admitting that this day was the very first time that Ms. Evans reported Dr. Kulawy's actions to anyone at TWC or CIBT.

The very day Ms. Evans finally reported Dr. Kulawy's repeated touching and comments over the period of her internship was the last day she spent at CIBT because once "Ms. Evans notified [TWC],…[TWC] immediately removed her" from CIBT. Pl.'s July 3 Oppo. at 4.

**STANDARD OF DECISION**

A motion to dismiss must be granted where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor, accept[ing] as true all of the factual allegations contained in the complaint." *Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008) (quoting *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 252 (D.C. Cir. 2008)). The plaintiff is to receive "the benefit of all reasonable inferences derived from the facts alleged." *Aktieselskabet*, 525 F.3 at 15 (quoting *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006)).

As is demonstrated below, the standard for granting a motion to dismiss under Rule 12(6)(b) is met in this case.

---

[4] Plaintiff Jamie Evans' Opposition to Defendants National Integrated Health Associates', Center for Integrative Body Therapies', and Daniel G. Storck's June 19, 2008 Motion to Dismiss for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) and for Insufficient Service of Process Pursuant to F.R.C.P. 12(b)(5) (hereinafter "Pl.'s July 3 Oppo."). On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider a plaintiff's previous filings before this Court. *See Jacobsen,* 201 F. Supp. 2d at 110 (citing *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222 (D.C. Cir. 1993)).

**ARGUMENT**

I.    **PLAINTIFF'S SOLE CAUSE OF ACTION AGAINST THE WASHINGTON CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6) BECAUSE MS. EVANS WAS CONTRIBUTORILY NEGLIGENT AS A MATTER OF LAW**

    A.    **Contributory Negligence Is a Bar to Plaintiff's Claims Against TWC**

Under District of Columbia law,[5] to state a claim for negligence, a plaintiff must demonstrate that "'(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused harm to the plaintiff.'" *Maalouf v. The Swiss Confederation*, 208 F. Supp. 2d 31, 38-39 (D.D.C. 2002) (quoting *Thomas v. City Lights Sch., Inc.*, 124 F. Supp. 2d 707, 709 (D.D.C. 2000)); *Brown v. Consol. Rail Corp.*, 717 A.2d 309, 311-12 (D.C. 1998).  However, in the District of Columbia the contributory negligence of a plaintiff is a complete bar to recovery for the alleged negligence of a defendant. *Andrews v. Wilkins*, 934 F.2d 1267, 1272 (D.C. Cir. 1991) (citing *Wingfield v. Peoples Drug Store*, 379 A.2d 685, 687 (D.C. 1977)).

TWC recognizes that "[o]rdinarily, questions of negligence and contributory negligence must be decided by the trier of fact," *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997) (citing *Washington v. A.&H. Garcias Trash Hauling Co.*, 584 A.2d 544, 545 (D.C. 1990), and that "'[o]nly in the exceptional case is evidence so clear and unambiguous that contributory negligence should be found as a matter of law.'" *Poyner*, 694 A.2d at 71 (quoting *Tilghman v.*

---

[5] In this diversity case, the substantive tort law of the District of Columbia should control because all the acts and omissions alleged as well as Ms. Evans' injuries occurred in the District of Columbia, all defendants are domiciled in the District of Columbia, and the relationship among the parties was centered in the District of Columbia.  *See Stancill v. Potomac Elec. Power Co.*, 744 F.2d 861, 864 n. 16 (D.C. Cir. 1984); *Smith v. Wash. Sheraton Corp.*, 125 F.3d 779, 782 (D.C. Cir. 1998) (citing *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 553 (D.C. Cir. 1993)).

*Johnson*, 513 A.2d 1350, 1351 (D.C. 1986)).  However, when, as here, "the facts clearly appear

from the evidence to be such that, conceding every logical inference, but one reasonable

conclusion may be drawn, the issue becomes one of law for the court."  *Phillips v. D.C. Transit

Sys., Inc.*, 198 A.2d 740, 741 (D.C. 1964) (citations omitted); *Poyner*, 694 A.2d at 71 (citing

*District of Columbia v. Brown*, 589 A.2d 384, 387-88 (D.C. 1991)).  Maryland courts have

established a similar test for establishing contributory negligence as a matter of law.[6]  "The trial

court may…take the issue of contributory negligence from the jury and rule that there was

contributory negligence as a matter of law when the undisputed facts of the case support such a

finding as a matter of law."  *Campbell v. Balt. Gas & Elec. Co.*, 619 A.2d 213, 216 (Md. Ct.

Spec. App. 1993) (citing *Le Vonas v. Acme Paper Board Co.*, 40 A.2d 43 (Md. 1944)).

      "Contributory negligence is 'conduct 'which falls below the standard to which a plaintiff

should conform for his [or her] own protection' and contributes to the plaintiff's injury.'"

*Maalouf*, 208 F. Supp. 2d at 42 (quoting *Scoggins v. Jude*, 419 A.2d 999, 1004 (D.C. 1980)

(quoting Restatement (Second) of Torts § 463 (1965))).  Based on Ms. Evans' description of her

conduct in response to Dr. Kulawy's touching and comments, as detailed in the next section of

this memorandum, Ms. Evans was contributorily negligent and her claims against TWC are

barred as a matter of law.

---

[6] In *O'Connor v. District of Columbia,* 921 F. Supp. 5, 7 (D.D.C. 1996), the Court viewed as
persuasive Maryland case law applying the common law doctrine of contributory negligence as a
matter of law when there were no District of Columbia cases applying the particular fact pattern
at issue.  The Court noted that "[i]t is well-established in this Circuit that Maryland law is 'the
source of the District's common law and an especially persuasive authority when the District's
common law is silent.'" *Id.* (quoting *TMG II v. United States*, 1 F.3d 36, 41 (D.C. Cir. 1993)
(quoting *Napoleon v. Heard*, 455 A.2d 901, 903 (D.C. 1983)).  Accordingly, reference to
Maryland cases applying the common law doctrine of contributory negligence as a matter of law
to various fact patterns analogous to the instant case is appropriate.

**B.**    **Ms. Evans' Failure to Exercise Due Care to Prevent Injury After Dr. Kulawy's Touching and Comments Began Constitutes Contributory Negligence**

This case does not involve a single incident between Ms. Evans and Dr. Kulawy or even two or three incidents.  To the contrary, Ms. Evans states that she "*grew increasingly* anxious and uncomfortable working around Dr. Kulawy," First Am. Compl. ¶ 33 (emphasis added), because he "repeatedly" engaged in behavior that was ever more injurious to the plaintiff, to the point where she "stopped leading a normal life," *Id*. ¶ 62, ultimately "changed her career plans to environmental science to avoid the discomfort and bad memories of working in a personal interaction-related profession,"  *Id*. ¶ 64, and to this day "becomes emotionally and physically distressed when she remembers Dr. Kulawy's battery and sexual harassment of her."  *Id*. ¶ 64.

Ms. Evans seeks to hold TWC responsible for these injuries; however, the facts she presents demonstrate that she failed to notify either TWC or CIBT, Dr. Kulawy's employer, regarding his repeatedly engaging in acts of battery and sexual harassment, despite the fact that is what a reasonable person would have done under the circumstances.  Ms. Evans' failure to notify TWC or CIBT constitutes contributory negligence as a matter of law even if the Court were to disregard the additional fact that Ms. Evans affirmatively undertook in her agreement with TWC and CIBT to "[i]nform in a timely and reasonable manner, [CIBT] and/or TWC of any problems that may occur, including substantive work issues, during the course of the internship." Internship Agreement at 1.  However, instead of doing that, or having anyone do that on her behalf, she "stopped wearing make-up and changed the style of her clothes to make herself less attractive in an effort to stop Dr. Kulawy's advances and comments as well as any possible unwanted attention from other males," she "asked her parents how to handle Dr. Kulawy," and

she also "asked her fellow summer interns how to handle Dr. Kulawy."  First Am. Compl. ¶¶ 34-36.[7]

These facts establish as a matter of law that Ms. Evans' conduct fell below the standard to which a reasonable person should conform for her or his own protection, and this failure contributed to the injuries for which she seeks to hold TWC responsible.  The First Amended Complaint makes it clear that each and every instance of Dr. Kulawy touching Ms. Evans and making comments to her was unwanted and each one, from the first one to the final one, contributed to the ultimate injuries she alleges.

District of Columbia courts have held plaintiffs to be contributorily negligent as a matter of law in circumstances where a plaintiff *repeatedly or continuously* exposes himself or herself to a known hazard that was created by another party, and thereafter is injured by that hazard.  For example, in *Quigley v. Speedy Muffler King*, 745 F. Supp 3 (D.D.C. 1990), the plaintiff stated that two days after the defendant repaired her brakes, she was almost in an accident because the brakes came close to failing.  *Quigley*, 745 F. Supp at 4-5.  Despite the fact that the plaintiff heard noises and felt that the brakes were soft, she did not take her car back to the defendant or to any other repair shop.  Instead, she continued to drive the car.  *Id*.  Five days after the first near-accident, the plaintiff continued to hear noises, which by then had become louder and more persistent, and was again nearly involved in an accident.  *Id*. at 5.  She continued to drive the car and was involved in an accident.  *Id*.  Based on these facts, the court held  that "there is but one reasonable inference that can be drawn, and that is that the [plaintiff was] contributorily negligent." *Id*. at 5-6.

---

[7] Neither the Complaint nor the First Amended Complaint indicates what advice, if any, Ms. Evans received.

In a second D.C. "repeat exposure" case, a delivery person testified that he had made regular deliveries to the defendant's restaurant six days per week for a year. *Payne v. Restaurant Corp. of America*, Civ. No. 7866-74 (D.C. Super. June 10, 1976).[8] Due to the configuration of the service entrance, there was a ramp from the street up to the walkway into the restaurant. The plaintiff's practice was to walk backwards up the ramp, pulling the hand truck rather than pushing it forward. The plaintiff testified that the ramp was always greasy. On the day the plaintiff was injured on the ramp, "the plaintiff knew that the ramp was slippery, that it was dangerous, that he had slipped on it before, that caution had to be exercised in traversing it, and that persons having their back to him were washing with a hose the walkway at the top of the ramp." Because the plaintiff continued up the ramp "[n]otwithstanding these uncontradicted facts," the court held that the plaintiff "acted in a manner that contributed to his own injury" and entered judgment for the defendant.

A number of Maryland cases also have found contributory negligence as a matter of law where a plaintiff repeatedly exposes himself or herself to a known danger. In *Doe v. Prudential Insurance Company of America*, 860 F. Supp. 243 (D.Md. 1993), the plaintiff applied for life insurance from the company, which required her to submit to a blood test. *Doe*, 860 F. Supp. at 245. The insurance company's agent notified the plaintiff that her application was rejected because of the blood test, and prepared a letter that would allow the plaintiff to request that a copy of the blood test be sent to her physician. *Id.* at 246. The plaintiff never signed the letter and did not seek to ascertain the results of the blood test. *Id.* When the plaintiff was diagnosed with AIDS some eighteen months after the denial of her application, she sued the insurance

---

[8] For the convenience of the Court, all unpublished decisions cited herein are being submitted as an Appendix to this memorandum.

company for failing to notify her that she was infected with AIDS, which she claimed delayed

her commencement of treatment. *Id.* at 247. The court held the plaintiff was contributorily

negligent as a matter of law, stating:

> The very basis for the claim asserted by [the plaintiff] in this case
> is that she experienced delay in knowing that she was HIV-
> positive. Yet, [the plaintiff] was not willing to have this critical
> information furnished to her doctor, an act which would have
> immediately permitted her to start necessary treatment for any
> illness disclosed. What an ordinarily prudent and careful person
> would do under a given set of circumstances is usually controlled
> by the instinctive urge of one to protect oneself from harm.

*Id.* at 255 (citing *Menish v. Polinger Co.*, 356 A.2d 233, 236 (Md. 1976)).

In *Thomas v. Washington Industrial Medical Center, Inc.*, No. 08-1652, 1999 U.S. App.

LEXIS 16771 (4th Cir. July 19, 1999) (applying Maryland law), plaintiff, a post office worker,

suffered an on-the-job injury after being hit in the head. The nurse at the post office health unit

sent the worker to seek treatment at a medical facility. A medical facility staffer advised the

plaintiff to return to the medical facility to be seen by a physician later that same day and so

informed the nurse at the post office health unit. However, the plaintiff did not return to the

medical facility that day. Sixteen days later, he went to the health unit complaining of a

headache and dizziness. *Thomas*, 1999 U.S. App. LEXIS at *4. The nurse instructed him to

return to the health unit after his shift for follow-up instructions; however, the plaintiff did not

return. *Id*. Seven days later, the plaintiff again went to the health unit complaining of a

headache and was told by the nurse to go to the medical center that day, which he did not do. *Id*.

The plaintiff ultimately did not return to the medical center until the nurse at the health unit

insisted that he do so, which was three and a half weeks after being hit in the head. *Id*. at * 5.

The plaintiff eventually was hospitalized due to his injuries, and sued the medical center for

negligence. *Id*. at *5-6. The Fourth Circuit affirmed the trial court's finding that the plaintiff

was contributorily negligent as a matter of law, citing two Maryland decisions for the proposition

that a patient who, after receiving treatment, fails to return to the physician or surgeon for further

treatment, as instructed, is guilty of contributory negligence, thus preventing recovery for

injurious consequences from such failure. *Id*. at *12-13 (quoting *Chudson v. Ratra*, 548 A.2d

172, 182 (Md. Ct. Spec. App. 1988); *Myers v. Estate of Alessi*, 560 A.2d 59, 64 (Md. Ct. Spec.

App. 1989)).

In still another Maryland "repeat exposure" case, a minor girl voluntarily but

impermissibly entered the boys' locker room at her school, where she was sexually assaulted.

*Campbell v. Montgomery County Bd. of Educ.*, 533 A.2d 9 (Md. Ct. Spec. App. 1987).  The

appellate court found that the trial court erred in finding that the plaintiff was contributorily

negligent as a matter of law.  Key to the appellate court's decision was the fact that on four

previous occasions the plaintiff had entered the boys' locker room without being assaulted.

"[F]or [the plaintiff] to be barred from recovery as a matter of law, the evidence must clearly

demonstrate that she knew or should have known that by entering the boys' locker room she

subjected herself to danger or injury….  Since her earlier excursions into the boys' locker room

were without incident, she was not obliged as a matter of law to anticipate that she would be

sexually molested upon a subsequent visitation."  *Campbell*, 533 A.2d at 15.

Plainly, if the plaintiff in *Campbell* had been assaulted on even one of her four prior trips

to the boys' locker room, much less on all four, she would have been found to be contributorily

negligent as a matter of law.  Thus, what emerges from *Campbell*, *Quigley*, *Payne*, *Doe*, and

*Thomas*, as well as "repeat exposure" cases in other jurisdictions,[9] is that when repeatedly faced

with an event or circumstance which triggers an obligation on the part of a reasonable person to

take reasonable steps to prevent the injurious consequences that may otherwise result from such

event or circumstance, an individual who fails to take these steps will be found to be

contributorily negligent as a matter of law.[10]  Accordingly, once Ms. Evans began to be exposed

to Dr. Kulawy's unwanted advances and the other forms of battery and sexual harassment which

she states increasingly began to adversely affect her, her "repeatedly" exposing herself to his

conduct constituted contributory negligence as a matter of law because that continued exposure

contributed to the injuries she claims.

    The facts Ms. Evans alleges demonstrate that, as a matter of law, she did not act

reasonably for her own protection because Ms. Evans could at any time have informed TWC of

Dr. Kulawy's repeated and ongoing touching, comments and advances simply by picking up the

telephone and calling TWC or by informing anyone in a position of authority at CIBT, at which

---

[9] Other courts have found contributory negligence as a matter of law where plaintiffs have failed to exercise due care when facing repeated exposure to a known risk.  *See, e.g.*, *Fore v. Vermeer Mfg. Co.*, 287 N.E.2d 526 (Ill. App. Ct. 1972) (plaintiff knew brakes on machine were ineffective because the machine had run away with him on a hillside on two previous occasions but continued to use the machine); *O'Leary v. Siegel*, 256 N.E.2d 127 (Ill. App. Ct. 1970) (construction worker assisted in assembly of scaffold and knew it was missing certain parts, but used the scaffold for a period of approximately two months when his injury occurred); *Sears v. Waste Processing Equip., Inc.*, 695 So.2d 51 (Ala. Civ. App. 1997) (plaintiff was aware that the automatic door closing mechanism on a compacting machine was broken and that manual operation of the door was dangerous, but used the machine for at least two months before she was injured).

[10] The "reasonableness" of a plaintiff's actions and inactions must be measured against the conduct of a reasonable person under like circumstances.  Restatement (Second) of Torts § 464 (1965).

[12] Plaintiff Jamie Evans' Opposition to Motion to Dismiss for Failure to State a Claim of Defendant Steven Kulawy, D.C., and Center for Integrative Body Therapies (hereinafter "Pl.'s July 11 Oppo.").

- 13 -

point his conduct would have ended, which is established by the fact that, as described above, the day she finally did notify TWC was her last day at CIBT because TWC immediately removed her; however, by that time, all the injuries Ms. Evans is suing for had been inflicted.

The conclusion that Ms. Evans failed to take reasonable action to protect herself is further demonstrable by the fact she had an affirmative duty to "[i]nform in a timely and reasonable manner, [CIBT] or TWC of any problems that may occur, including concerns regarding substantive work issues, during the course of the internship." Internship Agreement at 1. Given the Internship Agreement, Ms. Evans can hardly deny that TWC had a mechanism in place for her to report the problem she was having as a result of Dr. Kulawy's "pattern of conduct" toward her, Pl.'s July 11 Oppo. at 5,[12] or deny that her failure to adhere to this provision of the Internship Agreement "contribute[d] to the plaintiff's injury" within the meaning of *Scoggins v. Jude*, 419 A.2d at 1004.

The foregoing facts dovetail closely with *Doe*, discussed above, where the Court held:

> One simple act on [plainttiff's] part would have avoided any harm which resulted from her failure to know in February of 1990 that she was HIV-positive. A mere phone call or letter to defendant requesting release of the results of her blood test to her physician would have immediately placed her in possession of the necessary information. Whatever irrational thoughts may have motivated [plaintiff] to act as she did, it was unreasonable in the extreme for her not to take this simple step.

*Doe*, 860 F. Supp. at 254.

In short, Ms. Evans was contributorily negligent as a matter of law and her claims against TWC should be dismissed.

C.    **Ms. Evans' Failure to Exercise Due Care to Prevent Injury Upon Recognition of the Danger Posed by Dr. Kulawy Constituted Contributory Negligence**

District of Columbia courts also have held plaintiffs to be contributorily negligent as a matter of law in circumstances where a plaintiff recognizes the existence of a dangerous situation yet fails to exercise due care to avoid injury.[13]  For example, in *Krombein v. Gali Service Industries, Inc.*, 317 F. Supp. 2d 14, 19 (D.D.C. 2004), a cleaning company was entitled to summary judgment because the undisputed evidence showed that the plaintiff knew the floor was wet based upon her observation of the floor and "wet floor" signs, understood the dangers of a wet floor, and proceeded across the wet floor instead of taking an available alternative route to her office.  In *Andrews v. Wilkins*, 934 F.2d 1267 (D.C. Cir. 1991), an individual fleeing from arrest eventually drowned in the Washington Channel.  In the resulting negligence action, the district court held the decedent's flight from arrest, use of the Washington Channel as an escape route in violation of federal regulations, and intoxication with illegal drugs and alcohol constituted contributory negligence as a matter of law.  *Id.* at 1272.  The court of appeals affirmed, stating that these "uncontroverted facts make out a clear case for contributory negligence."  *Id.*

Maryland courts have invoked similar reasoning in cases where a plaintiff did not exercise due care when voluntarily encountering a visible danger.  In *Craig v. Greenbelt Consumer Services, Inc.*, 222 A.2d 836 (Md. 1966), the plaintiff testified that she saw sawdust on the floor in the aisle of the supermarket and admitted she knew it to be slippery; however, she intentionally walked through the sawdust, even though she had a reasonable alternative to walk

---

[13] This form of contributory negligence corresponds to the type of contributory negligence described in Section 466(a) of the Restatement (Second) of Torts.  Restatement (Second) of Torts § 466(a) (1965).

in an area that was clear.  The court found the plaintiff contributorily negligent as a matter of law, holding that "the plaintiff's conduct must be measured by the standard of a reasonably prudent [person] who saw the sawdust and knew it to be slippery…. She failed to exercise the care of a reasonably prudent person under the circumstances of this case." *Craig*, 222 A.2d at 837.  Similarly, in *Sugar v. Traub*, 196 A.2d 869 (Md. 1964), the plaintiff, who slipped and fell on a damp strip on the floor in the defendant's utility room, admitted that she knew the floor was occasionally damp, that she was not watching where she stepped, and that if she had looked she would have seen the water and wiped it up.  The court held that "[a] party cannot walk upon an obstruction which has been made by the fault of another and avail himself of it, if he [or she] did not himself use common and ordinary caution."  *Sugar*, 196 A.2d at 870-71 (quoting *Sutton v. Mayor & City Council of Balt.*, 136 A.2d 383, 384 (Md. 1957)).

Just as the plaintiffs in the above-cited cases were held to be contributorily negligent as a matter of law because they failed to take reasonable steps so as not to be injured by conditions or circumstances they knew posed a risk of injury to them, Ms. Evans was contributorily negligent as a matter of law because a reasonably prudent person would not have allowed herself day after day to repeatedly be the victim of Dr. Kulawy's battery and sexual harassment.

**D.    Ms. Evans' Claims Against TWC Are Also Barred By the Doctrine of Avoidable Consequences**

The final reason why Ms. Evans' claims against TWC should be dismissed is that her failure to take actions that a reasonably prudent person would take to avoid the injuries she complains of in the face of a known and keenly felt danger violated the doctrine of avoidable consequences.  Under District of Columbia law, "[t]he avoidable consequences doctrine is that 'one injured by the tort of another is not entitled to recover damages for any harm that he could

- 16 -

have avoided by the use of reasonable effort….'" *Flowers v. District of Columbia*, 478 A.2d

1073, 1077 (D.C. 1984) (quoting Restatement (Second) of Torts § 918 (1979)).

     The First Amended Complaint makes it clear that the injuries for which Ms. Evans is

suing TWC are the cumulative effect of Dr. Kulawy's "pattern of conduct" toward her, Pl.'s July

11 Oppo. at 5, in continually touching and making comments to her, the results of which were

that Ms. Evans "*grew increasingly* anxious and uncomfortable working around Dr. Kulawy,"

First Am. Compl. ¶ 33 (emphasis added), to the point where she "stopped leading a normal life,"

*Id*. ¶ 62, ultimately "changed her career plans to environmental science to avoid the discomfort

and bad memories of working in a personal interaction-related profession," *Id*. ¶ 64, and to this

day "becomes emotionally and physically distressed when she remembers Dr. Kulawy's battery

and sexual harassment of her." *Id*. ¶ 64.

     Thus, the facts set out in the First Amended Complaint establish as matter of law that the

injuries for which Ms. Evans now seeks recovery from TWC would have been avoided but for

her unreasonable actions in the face of a known danger. "A person who fails to avert the

consequences of a tort, which he could do with slight effort is entitled to no damages for the

consequences." Restatement (Second) of Torts § 918 cmt. b. Because the consequences of Dr.

Kulawy's conduct could have been avoided if Ms. Evans had informed TWC of Dr. Kulawy's

repeated and ongoing touching, comments and advances, her claims are barred by the doctrine of

avoidable consequences.

## CONCLUSION

     For the foregoing reasons, defendant Washington Center for Internships and Academic

Seminars requests that the Court dismiss Count I of the First Amended Complaint, which is

plaintiff's sole claim against it, with prejudice, for failure to state a claim under Fed. R. Civ. P.

12(b)(6).

Respectfully submitted,


/s/ Leslie H. Wiesenfelder
Leslie H. Wiesenfelder (D.C. Bar No. 173500)
Adam M. Jones (D.C. Bar No. 973761)
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C.  20036
Tel:    (202) 776-2726
Fax:    (202) 776-4726 or (202) 776-2222

Attorneys for Defendant Washington
        Center for Internships and
        Academic Seminars

Dated: July 16, 2008

# Exhibit A



# Internship Agreement

**The Washington Center**
for Internships and Academic Seminars

1333 16th Street, N.W.
Washington, DC 20036-2205
Fax: 202-238-7700   www.twc.edu

This mutual agreement represents the understanding between The Washington Center for Internships and Academic Seminars (TWC) (the sponsoring institution), having its principal place of business at 1333 16th Street, N.W., Washington, DC 20036-2205, the Center for Integrative Body Therapies ("Agency") and Simone Euans ("Student") to cooperate in on-the-job training for student participating in The Washington Center's academic internship program.

WHEREAS, The Washington Center, the "Agency" and "Student" recognize the need and benefits of providing educational and professional training to students;

NOW, THEREFORE, in consideration of above-mentioned goals, the parties agree as follows:

The "Student" agrees to:
- Intern a minimum of 32-36 hours per week, depending on TWC program enrollment, for the duration of this agreement in exchange for academic credit.
- Inquire about work hours, report to the agency at the agreed upon time(s), and make any special travel arrangements with the agency for any transportation that is required on behalf of the agency.
- Learn and abide by all agency policies and procedures, including emergency preparedness, as set forth by the agency.
- Seek assistance in understanding agency policies and procedures from the agency when necessary.
- Inform in a timely and reasonable manner, the agency and/or TWC of any problems that may occur, including concerns regarding substantive work issues, during the course of the internship.
- Supply forms/evaluations to the agency at the beginning of the semester.
- Assist in arranging the site visit.
- Ensure that the agency is timely informed of mandatory TWC events vital to the student's ability to earn credit.

The "Agency" agrees to:
- Comply with all state and federal labor laws.
- Provide the student with substantive work projects for at least 80% of the student's time.
- Ensure that the student reports to work for a minimum of 32-36 hours per week, depending on TWC program enrollment.
- Provide the student with information regarding the agency's policies and procedures, including emergency preparedness directions, and be available to respond to any questions the student may have.
- Provide the student with an orientation to the office and the student's position in addition to training the student on the use of office equipment.
- Provide the student with ample instructions and feedback for completing projects.
- Provide the student with a desk and computer and other necessary tools in order to effectively complete internship responsibilities.
- Review and sign the student's final Learning Objectives Statement ("LOS") by the stated due date.
- Complete the student's mid-term and final evaluations by the stated due date.
- Participate in on-site reviews of the student's performance and conduct additional meetings as is necessary.
- Work with The Washington Center to establish and implement a work plan in accordance with the student's skills and goals and that is in alignment with the agency's mission and needs.
- Allow flexibility in the student's workflow to avoid scheduling conflicts with mandatory TWC academic events.
- Notify TWC in a timely and reasonable manner if any problems arise, including the possible termination of the student.

The Washington Center agrees to:
- Monitor the internship for quality assurance as it relates to both the student and the agency.
- Ensure 80% of the student's time is spent on substantive projects.
- Ensure the student's professionalism and work product is consistent with agency requirements.

| 2/2 | The Washington Center for Internships and Academic Seminars | Form 3 |

- Work with the agency to develop and implement a work plan for the student that is in accordance the student's skills and goals and that is in alignment with the agency's mission and needs.
- Conduct on-site visits to review the student's performance and the internship quality.
- Respond and assist the student and the agency, in a timely manner, in answering questions and/or in resolving any problems that may arise during the course of the internship.
- Provide evaluation forms to the student and agency.
- Notify and consult with the agency in a timely and reasonable manner regarding the possible termination of the student.
- Advise the student in the development and implementation of learning objectives.
- Conduct honest and meaningful evaluation of the student's academic and personal growth.
- Work with the student to address areas where room for improvement exists.
- Explain and enforce The Washington Center policies and procedures as is necessary.

Please check one:
☑ This is an unpaid internship.
☐ This internship is paid.

For questions relating to specific compensation arrangements, please contact The Washington Center Finance Department.

After reading this agreement, I understand and voluntarily agree to this contract.

Student: _____    Date: _6/5/07_

Agency Supervisor: _____    Date: _6/1/02_

This agreement is valid from _5/29/2007_ until _8/3/2007_

# Appendix of Unpublished Decisions

# NEGLIGENCE
### Slip and Fall

**Judgment NOV granted in slip and fall case where plaintiff is unable to say whether fall was caused by greasy condition or water on ramp and plaintiff had prior knowledge of greasy condition.**

PAYNE v. RESTAURANT CORPORATION OF AMERICA, ETC., Super. Ct. D.C. Civil No. 7688-74, June 10, 1976. *Opinion* per Korman, J. *James B. Goding* for plaintiff. *Richard W. Boone* for defendant.

KORMAN, J.: After a jury verdict in favor of the plaintiff in a "slip and fall" case, the defendant moves for judgment non obstante veredicto charging that the verdict is contrary to the evidence and contrary to applicable law. Specifically, the defendant says that, as a matter of law, the evidence does not establish negligence on the part of the defendant, and that it does, as a matter of law, demonstrate that the plaintiff assumed the risk of the injuries he sustained and that he was guilty of contributory negligence. A recitation of the facts is necessary to a resolution of these propositions.

According to the statements of points and authorities in support of and in opposition to the motion and from the Court rather complete bench notes, the following appears. Plaintiff, a resident of Arlington, Virginia, was employed for about one year by the Washington Frosted Foods Company, which sold frozen foods to the defendant restaurant operator. For that entire year, he made deliveries six days a week to the defendant's place of business on the ground floor of the Watergate complex. From his truck, parked somewhere in the vicinity of the kitchen or pantry entrance to the restaurant, he transported frozen foods into the restaurant on a two-wheeled handtruck having a stationary handle. Each day's delivery required two or more handtruck loads.

A one-step difference in height of approximately six inches had to be negotiated between the driveway and a walkway into the restaurant and, for that purpose, the restaurant provided a ramp constructed of wood about four and one-half to five feet wide and approximately the same length. It was plaintiff's practice to back up the ramp pulling the handtruck after him. On the day of his injury, plaintiff had made one trip into the restaurant with merchandise and testified that the area of the walkway at the top of the ramp was dry. He said, however, that, as he approached the ramp on his second trip that day, he noticed that two employees of the restaurant were washing the walkway with a hose. The one holding the hose had his back to the plaintiff and a steward of the restaurant was stationed at the bottom of the ramp.

Defendant points to the following critical portions of plaintiff's testimony on direct and cross examination: that the ramp was greasy-indeed, that it was always greasy and he saw the grease on his first trip that day-that he knew it was slippery, that he had slipped on it once before, and that he knew he had to use more care than in other areas he was required to traverse. Nevertheless, on the second trip he backed up the ramp as usual and , as he got near the top, he felt water hitting his legs or feet, his feet slipped and he fell, allegedly injuring his back. The plaintiff did not know whether the grease or the water or both caused his fall. While the plaintiff had a regular itinerary of restaurants to which he was to deliver frozen foods, he did not have any fixed schedule to follow and made his own decisions concerning deliveries and how they were to be made. He was not required to enter a place he believed to be dangerous and could have, with impunity from his employer, delayed entrance to the defendant's restaurant.

The issues for the Court are (1) whether the is plaintiff's statement that he did not know what caused him to fall left to the jury without sufficient proof the question of original negligence by the defendant, and (2) whether the plaintiff's entry upon the ramp in the face of his knowledge of its slippery and dangerous condition constituted on his part either contributory negligence or an assumption of risk of injury or both.

Though usually questions of fact for a jury, negligence, contributory negligence, and assumption of risk are issues which should be decided by the Court as a matter of law where the facts are not in dispute and, considering every legitimate inference, only one conclusion can be drawn therefrom. *D. C. Transit System, Inc. v. Harris,* 284 A.2d 277 (1971). The facts in evidence must, of course, be considered in the light most favorable to the plaintiff, *Howard v. Safeway Stores, Inc.,* 263 A.2d 656 (1970), but a proprietor of an establishment is not an insurer of the safety of

persons entering his place of business, *Seganish v. District of Columbia Safeway Stores, Inc.,* 132 U.S.App.D.C. 117, 406 F.2d 653 (1968), and proof of a fall or the happening of an accident does not establish negligence, *Ruffin v. Trans-Lux Theatre,* 156 A.2d 678 (1959), *Paylor v. Safeway Stores, Inc.,* 225 A.2d 312, 314 (1967), quoting from *Brown v. Alabama Foods, Inc.* 190 A.2d 257 (1963). From these and other cases it is clear that the burden is upon the plaintiff to prove negligence on the part of the defendant and "where plaintiff's evidence invites the jury to speculate as to negligence or causation a directed verdict is properly granted." *St. Paul F. & M. Ins. Co. v. James G. Davis Const. Corp.,* 350 A.2d 751, 752-753 (1976).

In a somewhat analogous situation, the District of Columbia Court of Appeals sustained the entry by the undersigned judge of a judgment n.o.v. in *Howard v. Safeway Stores, Inc., supra.* There the plaintiff, while picking out a head of lettuce, fell in a food market and injured herself. After falling she saw a crushed string bean on the floor near her foot and found wet sawdust on her dress. She had noticed sawdust on the floor and evidence established that water was under the sawdust in the aisle where she fell. Appellant there, however, like the plaintiff here, was unable to say with certainty what had caused the slip and fall. While the facts are not identical, the gravamen of that case, which the Court perceives to be the underlying situation here, was that the injured individual testified to dangerous conditions but was unable to say specifically that either one of them or a combination thereof caused the fall. The plaintiff herein simply assumed that the greasy condition, perhaps augmented by a sprinkle of water, caused him to slip and to be injured and the jury was left by this situation to speculate that the described conditions caused the fall when in fact there was no proof thereof. As was said by the Circuit Court in *Seganish, supra* "Juries* * * cannot be permitted to speculate, and in particular cases the line between legitimate deduction and conjecture may become thin indeed, * * *"

Admittedly, the line of demarcation herein slender and the foregoing question is a close one. There is, however, another ground advanced in support of defendant's motion. The latter argues that, accepting all of plaintiff's testimony as true and giving to him all the favorable inferences that may be drawn therefrom, there can be no doubt that, by backing up the ramp with the knowledge that it was greasy and had previously caused him to slip, and after observing defendant's employees spraying a hose on the walkway at the top of the ramp with their backs to him, he was guilty of contributory negligence or assumed the risk of the slip and fall or both.

Contributory negligence and assumed risk are so closely related as sometimes to be almost indistinguishable. *Weber v. Eaton,* 82 U.S.App.D.C. 66, 160 F.2d 577, 578 (1947). See also Prosser, *Law of Torts,* (4th ed. 1971) 439. The defense of assumption of risk is confined and restricted by two requirements. First, "that the plaintiff must know and understand the risk he is incurring, and, second, that his choice to incur it must be entirely free and voluntary. * * * Furthermore, he must not only know of the facts which create the danger, but he must comprehend and appreciate the danger itself." Prosser at p. 447. Additionally, at pages 446 and 447 Prosser states: "Since in the ordinary case there is no conclusive evidence against the plaintiff of these issues, they normally go to the jury; and since juries are notoriously unfavorable to the defense, the percentage of cases in which the plaintiff has actually been barred from recovery by his assumption of the risk is quite small." As an illustration of the types of risk assumptions barring recovery Prosser includes "plaintiffs who enter business premises as invitees and discover dangerous conditions, such as slippery floors and unsafe stairways * * * [but who] nevertheless proceed freely and voluntarily to encounter them."

It is believed that the Court would be justified in granting judgment non obstante veredicto on the basis of the first proposition alone herein above set forth, namely, failure of the plaintiff to carry his burden of proving negligence. The second ground upon which the defendant bottoms its motion is, however, even stronger.

Professor Prosser's observations, examples, and citations might well have been written for the case at bar. Contributory negligence and assumption of risk, although distinguishable, are closely related. "Assumption of risk involves voluntary or deliberate incurring of a known danger; contributory negligence generally involves inadvertence or failure to observe or act. * * *" *Harris v. Plummer,* 190 A.2d 98, 100 (1963). More specifically, contributory negligence depends entirely upon conduct while assumption of risk involves a mental state of willingness. *Willis v. Stewart,* 190 A.2d 814, 817 (1963), and cases there cited. The application of these distinctions might in some instances be difficult, but the factual situation in the instant case supports both the mental state involved in risk assumption and also the positive action which constitutes contributory negligence.

Nothing in the case negates the propositions that the plaintiff knew before ascending the ramp on the second trip of the day that the ramp was always greasy, that it was slippery, that it was dangerous, that he had slipped on it before, that caution had to be exercised in traversing it, and that persons having their back to him were washing with a hose the walkway at the top of the ramp. Notwithstanding these uncontradicted facts, the plaintiff turned his back on the walk washers and backed up the ramp. The Court has no doubt that the plaintiff thereby assumed the risks of the situation and acted in a manner which materially contributed to his own injury. Under these circumstances, he has no right to recover and the motion of the defendant for judgment non obstante veredicto will be granted.

47 of 899 DOCUMENTS



Analysis
As of: Jun 27, 2008

**TROY G. THOMAS, Plaintiff-Appellant, v. WASHINGTON INDUSTRIAL MEDICAL CENTER, INCORPORATED, a/k/a WIMC, Defendant-Appellee, and R. F.DEL ROSARIO, M.D., Individually and in his capacity as employee for WIMC; ROSITA H. DEE, M.D., P.A., Defendants.**

**No. 98-1652**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

*1999 U.S. App. LEXIS 16771*

**April 6, 1999, Argued
July 19, 1999, Decided**

**NOTICE:**      [*1]  RULES OF THE FOURTH CIRCUIT COURT OF APPEALS MAY LIMIT CITATION TO UNPUBLISHED OPINIONS. PLEASE REFER TO THE RULES OF THE UNITED STATES COURT OF APPEALS FOR THIS CIRCUIT.

**SUBSEQUENT HISTORY:**   Reported in Table Case Format at: *1999 U.S. App. LEXIS 28277.*

**PRIOR HISTORY:**    Appeal from the United States District Court for the District of Maryland, at Greenbelt. Deborah K. Chasanow, District Judge. (CA-95-416-DKC).

**DISPOSITION:**   AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellant sought review of the orders of the United States District Court for the District of Maryland granting appellee physicians' motion for summary judgment, and appellee medical center's motion for judgment as a matter of law in appellant's suit against appellees for negligence.

**OVERVIEW:** Appellant sustained a head injury, went to appellee medical center, and was treated by appellee physician. Appellant was instructed at the health unit where he worked to return to the medical center, but failed to do so on several occasions. When appellant did return, he was referred to appellee second physician, but never went. Appellant experienced hemorrhaging of the brain, and sued appellees, asserting appellees violated appellees' standard of care by failing to order certain diagnostic test earlier. The trial court granted summary judgment in favor of physicians, and judgment as a matter of law in favor of medical center. Appellant sought the court's review. The court affirmed, holding that because appellant's bleeding may have resulted from appellant's delay in failing to return to medical center, without evidence that the failure to order the diagnostic tests was the proximate cause of appellant's injuries, appellant's claims against medical center could not survive summary judgment. Likewise, appellant's evidence on causation was insufficient to establish that an act or omission of physicians either contributed to or delayed the discovery of appellant's hemorrhaging.

**OUTCOME:** Summary judgment in appellees physicians' favor, and judgment as a matter of law in appellee medical center's favor, affirmed where appellant patient failed to show that the acts or omissions of appellees, and not appellant's own failure to undergo ordered tests, were the proximate cause of appellant's hemorrhaging.

**LexisNexis(R) Headnotes**

*Civil Procedure > Trials > Judgment as Matter of Law > General Overview*
*Civil Procedure > Judgments > General Overview*

[HN1] Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment.

*Healthcare Law > Actions Against Facilities > General Overview*
*Public Health & Welfare Law > Healthcare > Services for Disabled & Elderly Persons > Care Facilities > General Overview*
*Torts > Malpractice & Professional Liability > Health-care Providers*
[HN2] The general principles which govern negligence cases ordinarily also apply in medical malpractice claims. A hospital or other health care facility will be held vicariously liable for the negligent acts of its employees, including physicians, nurses, and other medical and nonmedical personnel. In order to state a prima facie claim for medical malpractice, a plaintiff must (1) establish the applicable standard of care; (2) demonstrate that the health care facility, or its employee, violated the standard; and (3) develop a causal relationship between the violation and the alleged harm.

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Summary Judgment > Burdens of Production & Proof > Movants*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN3] The court reviews the district court's summary judgment determination de novo, considering the evidence in the light most favorable to the losing party. Once the moving party discharges its burden by showing that there is an absence of evidence to support the non-moving party's case, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial. Summary judgment will be granted unless a fair-minded jury could return a verdict for the nonmoving party on evidence presented.

*Civil Procedure > Appeals > Standards of Review > Abuse of Discretion*
*Evidence > Procedural Considerations > Rulings on Evidence*
[HN4] The court reviews the district court's decision to exclude testimony for abuse of discretion.

*Civil Procedure > Discovery > Disclosures > Mandatory Disclosures*

*Evidence > Procedural Considerations > Rule Application & Interpretation*
*Evidence > Testimony > Experts > General Overview*
[HN5] Under *Fed. R. Civ. P. 26(e)(1)*, a party is under a duty to supplement its disclosures if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. This duty extends to the testimony of an expert witness, pursuant to *Rule 26(e)(1)*, who prior to testimony is required to submit a report outlining the opinions to be expressed and the data supporting the opinions.

**COUNSEL:** ARGUED: George Livingston Garrow, Jr., GARROW & EVANS, L.L.P., Washington, D.C., for Appellant.

Alfred Francis Belcoure, II, MONTEDONICO, HAMILTON & ALTMAN, P.C., Washington, D.C., for Appellee.

ON BRIEF: Thomas C. Mugavero, MONTEDONICO, HAMILTON & ALTMAN, P.C., Washington, D.C., for Appellee.

**JUDGES:** Before WIDENER, MURNAGHAN, and MOTZ, Circuit Judges.

**OPINION**

**OPINION**

PER CURIAM:

Appellant Troy Thomas sued the Washington Industrial Medical Center ("Medical Center") and Drs. Rolando del Rosario and Rosita Dee for allegedly negligent care following a head injury he sustained while working. He argues that Defendants violated the proper standard of care by failing to order certain diagnostic tests earlier. He maintains that, had Defendants ordered the proper tests, his subsequent brain hemorrhage would have been avoided. The district court granted [*2] summary judgment in favor of Drs. del Rosario and Dee and, at the close of Plaintiff's case, judgment as a matter of law in favor of the Medical Center. Thomas now appeals the judgments in favor of Dr. del Rosario and the Medical Center. Finding no reversible error, we affirm the district court's decision.

I.

In October 1990, Appellant Troy Thomas was employed as a mailhandler at a post office station in Washington, D.C. His job was to remove sacks of mail from trucks and place them on conveyor belts that then

dropped the sacks into cages. During the night shift on October 23, 1990, the gate of one of the cages flew open and hit Thomas on his forehead, where he sustained a small abrasion and contusion. Accompanied by a co-worker, Thomas went to the health unit at the post office where a nurse examined him. The nurse determined that Thomas should go to the Medical Center [1] for further examination and treatment, which he did.

1   Washington Industrial Medical Center, which at the time of trial was known as "Concentra," is a clinic located in Cheverly, Maryland. It provides health services to employees for work-related health needs, including the treatment of work-related injuries.

[*3] Thomas arrived at the Medical Center shortly before 2:30 a.m. on October 23. Carlton Romney was the physician's assistant on duty. Romney asked Thomas a series of questions, including basic inquiries regarding personal identification (e.g. name, address, date of birth) and the nature of the visit. According to Romney, Thomas exhibited no identifiable neurological abnormalities. He followed all instructions during the examination; his speech was clear; and he appeared to be coherent. In addition, the medical records suggest that Thomas indicated that he had not lost consciousness. Romney cleaned Thomas' wound with peroxide and applied bacitracin and a bandage to cover the area.

After his examination and treatment, Romney gave Thomas a typed instruction sheet for Thomas' follow-up care. Romney explained the instructions to Thomas and described warning signs for which Thomas should watch. Romney advised Thomas to return to the Medical Center to be seen by a physician later that same day. Thomas signed documents indicating that he understood everything Romney had told him, and Romney released Thomas to return to work for the rest of his shift. Romney then called the post office health [*4] unit and informed the nurse of his diagnosis and instructions for Thomas' follow-up visit.

Thomas returned to work and, upon arrival, went to the health unit. He gave the nurse the documents Romney had given him and told her that he was to return to the Medical Center that day. The nurse completed a medical report that included his diagnosis, work status, and follow-up visit. Thomas then completed his shift but did not return to the Medical Center that day.

Sixteen days later, on November 8, 1990, Thomas returned to the health unit, complaining of a headache and dizziness. When the nurse asked Thomas if he had returned to the Medical Center, he told her that he had not. The nurse took his vital signs and concluded there were no acute symptoms. She gave him some Tylenol,

put him on a less strenuous work assignment for the balance of the shift, and told him to return at 7 a.m. for follow-up instructions. Thomas did not return.

Seven days later, on November 15, Thomas again went to the health unit and complained of a headache. The nurse gave him Tylenol and told him to go to the Medical Center that day. Once again, Thomas failed to comply with the instructions.

The next day, Thomas [*5]   again contacted the nurse at the health unit. The nurse told him that he must go to the Medical Center and obtain a medical certificate confirming that he had been there for treatment. Thomas returned to the Medical Center that day and complained of continued, severe headaches. Dr. del Rosario performed a neurological examination and found no evidence of any abnormalities. Because Thomas was reporting headaches three and one-half weeks after his accident, however, Dr. del Rosario recommended that Thomas see a neurologist. Accordingly, Dr. del Rosario referred Thomas to Dr. Dee.

On November 23, Dr. Dee performed a neurological examination of Thomas, the results of which were within normal limits. Because of Thomas' report of headaches, however, Dr. Dee scheduled a computed tomography (CT) scan and an electroencephalogram (EEG) of Thomas to take place on November 26 and November 27. Thomas failed to keep either appointment.

On November 30, 1990, Thomas was admitted to the emergency room at Prince George's Hospital Center, after exhibiting unusual behavior. The attending physician at the hospital ordered a CT scan. The results of the scan indicated a condition "suggestive of mild hydrocephalus, [*6]   " or pressure due to fluid in the brain. The eventual diagnosis was acute hydrocephalus with intra ventricular hemorrhage (bleeding in the brain). To release the fluid in Thomas' brain, the attending doctor inserted a catheter into the brain. As a result of the procedure, Thomas suffered further bleeding in the brain. The hemorrhage gradually resolved, and the doctor removed the catheter when Thomas became stabilized. Thomas improved slowly and was discharged from the hospital on December 22, 1990.

Thomas has encephalomalacia (a softening) in the right parietal portion of his brain. Since his surgery, Thomas continues to experience intermittent headaches, which his current treating physician has diagnosed as migraines. He has had several neurological and diagnostic examinations which, with the exception of the encephalomalacia, have revealed no abnormalities.

Alleging negligence, Thomas filed suit in October 1993 in federal district court [2] against the Medical Center, Dr. del Rosario, and Dr. Dee. Thomas charged that

(1) Carlton Romney, the physician's assistant who treated Thomas on October 23, 1990, breached the relevant standard of care by failing to order pertinent diagnostic [*7] tests and/or an x-ray of Thomas' head and failing to provide proper follow-up care; (2) Dr. del Rosario, who treated Thomas on November 16, 1990, also breached the applicable standard of care because he did not order an immediate CT scan, magnetic resonance imaging (MRI), or x-ray but instead referred Thomas to Dr. Dee, a neurologist; and (3) Dr. Dee, who saw Thomas on November 23, 1990, breached the standard because she arranged for a CT scan of Thomas to occur on November 26, 1990, rather than immediately.

> 2    The case was initially filed in the District Court for the District of Columbia, which transferred the case to the District of Maryland on grounds of *forum non conveniens.* The District Court for the District of Maryland then issued an Order staying the action, in order to allow Thomas to pursue his claim before the Maryland Health Claims Arbitration Office. Due to delay, Appellees elected to waive arbitration and, in February 1997, asked the court to reopen the case.

Drs. del Rosario and Dee moved [*8] for summary judgment. The court granted the motion, determining that no reasonable jury could find that either doctor had committed malpractice in rendering treatment to Thomas. The court's ruling left for trial the allegation that Romney, the physician's assistant employed by the Medical Center, had committed medical malpractice with respect to the treatment he provided Thomas in October 1990.

The case then proceeded to trial. At the close of Thomas' case, the court entered judgment as a matter of law in favor of the Medical Center. The court ruled, in part, that the evidence did not establish that Thomas' current condition, or brain damage, was the proximate result of the Medical Center's treatment of Thomas.

This appeal followed. Appellant charges that the district court erred in granting the Medical Center judgment as a matter of law at the close of Thomas' case and Dr. del Rosario summary judgment prior to trial. [3] Appellant also asserts that the district court abused its discretion by excluding certain testimony. We find Appellant's claims to be without merit and, therefore, affirm the district court's decision.

> 3    Appellant Thomas has not appealed the district court's ruling in favor of Dr. Dee.

[*9]  II.

A. *Judgment as a Matter of Law in Favor of the Medical Center*

Appellant charges that the district court erred in concluding that, as a matter of law, there could be no finding of negligence with respect to the Medical Center's delivery of care to Thomas. We review the court's grant of the Medical Center's motion for judgment as a matter of law *de novo, see Malone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir. 1994),* viewing the evidence in the light most favorable to Thomas. *See id. at 472 n.1.* [HN1] "Judgment as a matter of law is proper 'when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment.'" *Price v. City of Charlotte, 93 F.3d 1241, 1249 (4th Cir. 1996), cert. denied, 520 U.S. 1116, 117 S. Ct. 1246, 137 L. Ed. 2d 328 (1997).*

[HN2] Under Maryland law, [4] the general principles which govern negligence cases ordinarily also apply in medical malpractice claims. *See Franklin v. Gupta, 81 Md. App. 345, 567 A.2d 524, 528 (Md. Ct. Spec. App.), cert. denied, 319 Md. 303, 572 A.2d 182 (Md. 1990).* A hospital or other health [*10] care facility will be held vicariously liable for the negligent acts of its employees, including physicians, nurses, and other medical and nonmedical personnel. *See 567 A.2d at 535.* In order to state a *prima facie* claim for medical malpractice, a plaintiff must (1) establish the applicable standard of care; (2) demonstrate that the health care facility, or its employee, violated the standard; and (3) develop a causal relationship between the violation and the alleged harm. *See id. at 528-29; see also Weimer v. Hetrick, 309 Md. 536, 525 A.2d 643, 651 (Md. Ct. Spec. App. 1987).* Appellant Thomas urges that he has satisfied all three elements.

> 4    The district court, in a diversity action, is bound to apply the substantive law of Maryland. See *Hanna v. Plumer, 380 U.S. 460, 471, 14 L. Ed. 2d 8, 85 S. Ct. 1136 (1965).* While the substantive elements of the medical malpractice claim are defined by Maryland law, whether Thomas presented sufficient evidence to create a jury issue as to those substantive elements "is controlled by federal rules." *Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982).*

[*11]  First, Thomas' expert witness, Dr. Maxfield, who is a radiologist, testified that "the standard of care for a head injury is to obtain a CT image of the brain and then to have close follow-up of the individual with subsequent CTs and close monitoring of the individual to put them at rest." Dr. Maxfield continued: "For the night [of Thomas' injury], [the standard of care] would have been to request a CT scan of the brain to be performed

1999 U.S. App. LEXIS 16771, *

and to have established a protocol to be followed for the monitoring and future care of the patient."

Second, Thomas maintains that he provided ample evidence to establish that Defendants breached the relevant standard of care. Defendants, Thomas argues, failed to perform any diagnostic studies and failed to provide proper follow-up treatment for a head injury patient, which arguably includes ensuring that the patient, or someone close to the patient, understood the nature and extent of the injury. Dr. Maxfield opined that "the care and treatment rendered to Mr. Thomas [by the Medical Center on the night he sustained his injury] was below the usual and customary standard of care."

Assuming, without deciding, that the expert witness adequately [*12] described the standard of care and that Thomas established a breach of that standard, no reasonable juror could conclude from the evidence in record that the breach was the proximate cause of Thomas' encephalomalacia and periodic headaches. First, even if there had been an immediate CT scan performed on Thomas, there is no evidence that the bleeding had started at that point and, therefore, no evidence that the scan would have revealed the presence of any bleeding. Furthermore, even if bleeding had been present, a CT scan performed at the time of the accident may not have detected any abnormalities. Second, the record shows that additional hemorrhaging occurred as a result of Thomas' surgery on November 30; the surgery-related bleeding could have been the cause of Thomas' current condition. Finally, Thomas' own conduct, *i.e.*, his failure to keep follow-up appointments, may have served as a concurrent cause of his injury. [5] *See Myers, 560 A.2d 59 at 64, 80 Md. App. 124 (1989) (determining that patient's "failure to return for further treatment as instructed constituted contributory negligence 'preventing recovery for injurious consequences from such failure'"); Chudson, 548 A.2d 172 at 182, 76 Md. App. 753* [*13] ("'A patient who, after receiving treatment, fails to return to the physician or surgeon for further treatment, as instructed, is guilty of contributory negligence preventing recovery for injurious consequences from such failure.'"). Thomas was under specific and repeated instructions to return to the Medical Center for further treatment. Assuming the bleeding existed during the initial weeks after the accident, Thomas directly contributed to his injury by precluding diagnosis and treatment at a time when his condition was treatable.

    5  In order for a plaintiff to be found contributorily negligent, he must either (1) intentionally and unreasonably expose himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or (2) act in a way that falls short of the standard to which the reasonable person should conform in order to protect himself from harm. See *Myers v. Estate of Alessi, 80 Md. App. 124, 560 A.2d 59, 63* (Md. Ct. Spec. App.), *cert. denied, 317 Md. 641, 566 A.2d 101 (Md. 1989)*. Appellant argues that contributory negligence, if present at all, is a jury question. *See Chudson v. Ratra, 76 Md. App. 753, 548 A.2d 172, 173 (Md. Ct. Spec. App. 1988)* ("The absence or presence of contributory negligence is generally a question for the jury."), *cert. denied, 314 Md. 628, 552 A.2d 894 (Md. 1989)*. However, "when the minds of reasonable persons cannot differ ... the court is justified in deciding the question as a matter of law." *Id.* Here, there is no factual dispute as to whether Thomas returned for follow-up care. He did not return to the Medical Center, even though he was instructed to do so on multiple occasions, until the nurse at the post office health unit insisted he do so. Since this fact is undisputed, it was appropriate for the court to resolve the issue as a matter of law.

[*14]  As support for the contention that there may have been some other cause of Thomas' injuries besides the alleged negligence of the Medical Center, we need look no further than Appellant's own witnesses. Dr. Maxfield did not testify that Thomas' current condition was the proximate result of the Medical Center's treatment. Indeed, Dr. Maxfield could not say if Thomas' injury was due to the original head injury or to subsequent developments. Moreover, Dr. Michael Batipps, Thomas' treating neurologist, specifically linked Thomas' headaches to the original head injury. He could not testify with certainty as to the effect of any subsequent events on Thomas' current condition. If the medical experts cannot form an opinion with sufficient certainty so as to make a medical judgment, we surely cannot expect a jury to make a decision with sufficient certainty so as to make a legal judgment.

Without evidence that, more likely than not, the failure to perform a CT scan or other diagnostic test on October 23, 1990 was the proximate cause of Appellant's injury, Thomas' claims against the Medical Center cannot survive Defendants' motion for judgment as a matter of law. *See Fitzgerald, 679 F.2d at 348* [*15] ("Where there are a number of possible causes for a plaintiff's disability, the physician's negligence will be regarded as the proximate cause only if the evidence is that it is 'more likely' or 'probable' that his negligence was such cause than the other possible causes."); *see also Weimer, 525 A.2d at 648* ("'If the evidence shows that an injury may have resulted from one of several causes, but only one of the causes can be attributed to the defendant's negligence, the plaintiff must fail.'"). The district court's grant of the motion was, therefore, proper.

B. *Summary Judgment in Favor of Dr. del Rosario*

The district court determined prior to trial that, as a matter of law, Thomas could not prove his case as to any negligent act allegedly committed by Dr. del Rosario. Appellant maintains that based on the expert testimony of Dr. Maxfield and the requirement that all inferences be drawn in his favor, summary judgment was inappropriate. [HN3] We review the district court's summary judgment determination *de novo*, considering the evidence in the light most favorable to the losing party. *See Henson v. Liggett Group, Inc., 61 F.3d 270, 274, 275 (4th Cir. 1995).* [*16] Once the moving party discharges its burden "by showing ... that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986),* the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)* (emphasis in original); *Fed. R. Civ. P. 56(c)* (noting that summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law"). Summary judgment will be granted unless a "fair-minded jury could return a verdict for the [nonmoving party] on evidence presented." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).*

Again, Appellant's evidence on causation is insufficient to establish, more likely than not, that an act or omission of Dr. del Rosario either contributed to Thomas' hemorrhaging or to the alleged delay in its discovery. Indeed, according [*17] to the evidence, Thomas' bleeding may have had its onset after he saw Dr. del Rosario, or may have arisen from the delay caused by his own failure to keep his appointments for the diagnostic tests that Dr. Dee had scheduled for him. [6] Under the circumstances, no jury could reasonably conclude that Thomas met his burden on causation. The district court's grant of summary judgment was, therefore, appropriate.

> [6] We recognize the evidence in the record that indicates that it is not unusual for an individual who has endured a head injury to become forgetful. There is no record evidence, however, supporting the notion that Thomas' failure to return to the Medical Center for follow-up care was, in fact, due to his injury. Furthermore, Romney took reasonable steps to mitigate against such memory loss: he gave Thomas written instructions, as well as called the post office's health unit to inform the nurse of Thomas' diagnosis and prescribed follow-up care.

C. *Exclusion of Certain Testimony*

Finally, Appellant Thomas [*18] challenges the district court's exclusion of certain testimony elicited from Dr. Maxfield and Carlton Romney. [HN4] We review the district court's decision to exclude testimony for abuse of discretion. *See Tyger Construction Co., Inc. v. Pensacola Construction Co., 29 F.3d 137, 142 (4th Cir. 1994), cert. denied, 513 U.S. 1080, 130 L. Ed. 2d 633, 115 S. Ct. 729 (1995).*

At trial, Plaintiff asked Dr. Maxfield whether the CT scan would have revealed Thomas' brain injury if it had been taken on October 23, 1990. The district court sustained Defendants' objection to the question. Appellant maintains that the testimony was appropriate under *Federal Rule of Evidence 702,* [7] since it would "assist the trier of fact to understand the evidence or to determine a fact in issue." *Fed. R. Evid. 702.*

> [7] *Federal Rule of Evidence 702* provides as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." *Fed. R. Evid. 702.*

[*19] Appellee correctly retorts, however, that there was no factual foundation on which Dr. Maxfield's opinion could rest, making the testimony irrelevant. The evidence indicated that an immediate CT scan may not have shown the presence of bleeding, and there was no evidence that there was, in fact, any bleeding on October 23, 1990. Any opinion, even that of a witness with Dr. Maxfield's experience and training in diagnostic procedure, would have been wholly speculative. *See Tyger Construction, 29 F.3d at 142* ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record."). The district court was within its discretion in excluding such evidence.

Second, Appellant argues that the court improperly excluded expert testimony regarding the quality of treatment afforded Thomas. Thomas' counsel asked Dr. Maxfield to provide his "assessment of the treatment of Mr. Thomas." Defendants' counsel objected, and the district court sustained the objection. We find no clear abuse of discretion in the district court's determination, especially since the court allowed the testimony once Plaintiff's counsel provided the [*20] proper foundation and correctly phrased the inquiry. Plaintiff's counsel later asked Dr. Maxfield, "within a reasonable degree of medical certainty, do you have an opinion with respect to the care

that was rendered to Mr. Thomas on [October 23, 1990] by Mr. Romney, the physician assistant?" Dr. Maxfield replied in the affirmative and then stated his opinion. We will not reverse a district court's evidentiary decision under such circumstances.

Relatedly, Thomas' counsel later inquired of Dr. Maxfield if the Medical Center's failure to schedule a follow-up appointment with Thomas was a violation of the standard of care. Again, the district court sustained Defendants' objection. Appellees argue that, although Dr. Maxfield articulated a standard of care, he did not provide any supporting evidence, such as relevant literature in the field, or testify to customary practices in the medical profession. *See Alevromagiros v. Hechinger Co., 993 F.2d 417, 421, 422 (4th Cir. 1993)* (rejecting expert testimony unsupported by any evidence). Rather, he simply stated his own subjective opinion. *See id. at 421* ("We are unprepared to agree that 'it is so if an expert [*21] says it is so.'"). Under the circumstances, it was proper for the court to exclude such testimony.

Third, the court sustained an objection to a question that elicited Dr. Maxfield's opinion regarding Thomas' medical condition at the time of trial. The court so ruled because Appellant had not supplemented his pretrial disclosures regarding Dr. Maxfield's anticipated trial testimony to include these matters. [HN5] Under *Federal Rule of Civil Procedure 26(e)(1)*, "[a] party is under a duty to supplement ... its disclosures ... if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." This duty extends to the testimony of an expert witness, Fed. R. Evid. 26(e)(1), who prior to testimony is required to submit a report outlining the opinions to be expressed and the data supporting the opinions, Fed. R. Evid. 26(a)(2)(B).

The district court's decision barring expert testimony that had not been previously disclosed in accordance with Rules 26(a)(2)(B) and 26(e)(1) was well within the court's discretion [*22] to manage its proceedings to ensure that there be no unfair surprise at trial. [8] *See American Casualty Co. v. Baker, 22 F.3d 880, 886 n.3 (9th Cir. 1994)* (noting that "the district court was within its discretion by precluding expert testimony as a sanction for the [defendant's] failure to seasonably supplement its interrogatory responses pursuant to Federal Rule of Civil Procedure 26(e)(1)"); *Hancock v. Hobbs, 967 F.2d 462, 468 (11th Cir. 1992)* (finding no abuse of discretion where district court excluded expert testimony because party advancing testimony did not comply with *Rule 26(e)(1))*; *Thibeault, 960 F.2d 239 at 248* (finding no abuse of discretion where district court precluded expert testimony because plaintiff "failed seasonably to

supplement his answers as required by *Rule 26(e)*"). Indeed, it would have been an abuse of discretion for the district court not to exclude the testimony, since such a practice would allow the party proffering the testimony to notify the other side of its substance for the first time while the witness was on the stand -- clearly circumventing the purpose of *Rule 26(e)(1)* and creating a situation possibly [*23] prejudicial to the adverse party. *See Thibeault, 960 F.2d 239 at 244* (noting that "*Rule 26* increases the quality of trials by ... minimizing surprise") (internal citations omitted); *see also* Fed. R. Evid. 37(c)(1) ("A party that without substantial justification fails to disclose information required by *Rule 26(a)* or *26(e)(1)* shall not, unless such failure is harmless, be permitted to use as evidence at trial ... any witness or information not so disclosed.").

> [8]  We might add that Appellant presents no legitimate reason for his failure to supplement his pretrial disclosures as required under *Rule 26(e)(1)*, a fact that only buttresses our support for the district court's ruling. See *Thibeault v. Square D Co., 960 F.2d 239, 247 (1st Cir. 1992)* (affirming district court's decision to exclude expert testimony where plaintiff provided "no good cause" for its failure to supplement its disclosures in a timely way).

Even if Thomas had not violated *Rule 26(e)(1)*, however, the court still [*24] would have been within its discretion to exclude Dr. Maxfield's testimony regarding Thomas' current medical condition. As the district court recognized, Thomas' treating physician, Dr. Batipps, had already testified about Thomas' current condition. Additional testimony on the same subject would have amounted to "needless presentation of cumulative evidence." *Fed. R. Evid. 403; see also Talkington v. Atria Reclamelucifers Fabrieken BV, 152 F.3d 254, 266* (4th Cir.) (concluding that any error in admitting evidence would be harmless since evidence was cumulative), *cert. dismissed, 119 S. Ct. 634 (1998)*. As such, Dr. Maxfield's testimony was well within the district court's broad discretion to exclude evidence. We, therefore, will not disturb the court's ruling.

Finally, Plaintiff asked Romney, the physician's assistant who cared for Thomas the night of his injury, "Do you know why a doctor or a health professional would order a CT scan or an MRI ... Why don't you tell us?" Again, the district court sustained Defendants' objection, determining that the question called for speculation. Romney was a fact witness, not an expert, and therefore was not qualified [*25] to render an opinion on the motivation of doctors. The court acted properly in excluding such testimony. [9]

9   Even if the court had committed some error with respect to the exclusion of any testimony, which we do not believe to be the case, it would be harmless since the testimony would not have remedied the lack of causation in Appellant's evidence. Even with the excluded testimony, Thomas is unable to demonstrate that some act or omission by the Medical Center proximately caused his injury, so his claims must fail. *See Talkington, 152 F.3d at 266* (determining that any error in admitting evidence would be harmless since evidence did little to support plaintiff's theory of case); *see also Fed. R. Evid. 103(a)* (noting that an "error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected").

III.

In summary, we conclude that the district court did not err in granting the Medical Center judgment as a matter of law and Dr. [*26] del Rosario summary judgment. Furthermore, we find no reversible error with respect to the district court's exclusion of certain testimony. Accordingly, the judgment below is affirmed.

   *AFFIRMED*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                )
JAMIE EVANS,                                     )
                                                )
                 Plaintiff,                      )
                                                )
                 v.                              )        Case No. 1:08-cv-00875-ESH
                                                )
THE WASHINGTON CENTER FOR                        )
        INTERNSHIPS AND ACADEMIC                 )
        SEMINARS,                                )
                                                )
STEVEN KULAWY,                                   )
                                                )
CENTER FOR INTEGRATIVE BODY                      )
        THERAPIES,                               )
                                                )
DANIEL STORCK,   and                             )
                                                )
NATIONAL INTEGRATED HEALTH                       )
        ASSOCIATES,                              )
                                                )
                 Defendants.                     )
_____)

## [PROPOSED] ORDER

Upon consideration of the Motion of Defendant Washington Center for Internships and Academic Seminars to Dismiss Count I of the First Amended Complaint, it is this _____ day of _____, 2008,

ORDERED that defendant Washington Center for Internships and Academic Seminars' motion be, and it hereby is, GRANTED, and Count I of the First Amended Complaint is hereby dismissed with prejudice.

SO ORDERED:                          _____
                                     Hon. Ellen S. Huvelle
                                     United States District Judge

Copies to:

James R. Klimaski
Klimaski & Associates, P.C.
1625 Massachusetts Ave., N.W., Suite 500
Washington, DC 20036-2245
Tel.: (202) 296-5600
Fax: (202) 296-5601
Email: klimaski@klimaskilaw.com
Counsel for Plaintiff

Leslie H. Wiesenfelder
Dow Lohnes PLLC
1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C.  20036
Tel: (202) 776-2726
Fax: (202) 776-4726 or (202) 776-2222
Email: lwiesen@dlalaw.com
Counsel for Defendant Washington Center for Internships and Academic Seminars

Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
Tel.: (301) 987-0970
Fax: (301) 987-0971
Email: alandlmc@aol.com
Counsel for Defendants Steven Kulawy, Center for Integrative Body Therapies, Daniel Storck,
    and National Integrated Health Associates

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JAMIE EVANS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:08-cv-00875-ESH |
| THE WASHINGTON CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS, | ) | |
| STEVEN KULAWY, | ) | |
| CENTER FOR INTEGRATIVE BODY THERAPIES, | ) | |
| DANIEL STORCK, and | ) | |
| NATIONAL INTEGRATED HEALTH ASSOCIATES, | ) | |
| Defendants. | ) | |

## CERTIFICATE REQUIRED BY LCvR 7.1

I, the undersigned, counsel of record for The Washington Center for Internships and Academic Seminars, certify that to the best of my knowledge and belief, there are no parent companies, subsidiaries or affiliates of The Washington Center for Internships and Academic Seminars which have any outstanding securities in the hands of the public.

These representations are made in order that judges of this court may determine the need for recusal.

Respectfully submitted,

/s/ Leslie H. Wiesenfelder
Leslie H. Wiesenfelder (D.C. Bar. No. 173500)
DOW LOHNES PLLC

1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C.  20036
Tel:    (202) 776-2726
Fax:    (202) 776-4726 or (202) 776-2222

Dated:    July 16, 2008