# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Ms. Jamie Evans,

     Plaintiff,

     v.

     Case No. 1:08-cv-00875

The Washington Center for
Internships and Academic Seminars, et al.

     Defendants

## MOTION OF DEFENDANTS STEPHEN KULAWY, D.C., NATIONAL INTEGRATED HEALTH ASSOCIATES, LLC, CENTER FOR INTEGRATIVE BODY THERAPIES, AND DANIEL G. STORCK'S TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6)

Defendants Steven Kulawy, D.C., National Integrated Health Associates, LLC ("NIHA"),[1] the Center for Integrative Body Therapy ("CIBT"), and Daniel G. Storck ("Storck"), respectfully move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing each and every one the six counts in the First Amended Complaint, with prejudice, for failure to state a claim upon which relief can be granted. The grounds for this motion are set forth more fully in the accompanying memorandum in support of this motion, which is incorporated herein by reference.

In the event that this motion is not granted, Defendants NIHA and Storck each ask that

---

[1] NIHA is a limited liability company and not a corporation, and counsel has therefore not filed a Certificate Pursuant to LCR 7.1. For the information of the Court, NIHA, to the best of counsel's understanding and belief, is privately held and has no parents or subsidiaries. CIBT is a trade name for Physical Medicine Associates, LLC, also a privately held limited liability company with no parents or subsidiaries.

they be dismissed as parties to the suit for failure to state a claim against each of them pursuant to

F.R.C.P. 12(b)(6), and that CIBT be dismissed as a party as it is without the capacity to be sued

pursuant to F.R.C.P. 17(b). The grounds for these requests are set forth more fully in the

accompanying memorandum in support of this motion.


*Alan Dumoff*

_____

Alan Dumoff
Law Office of Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
D.C. bar No. 425926
voice: 301-987-0970
fax: 301-987-0971
alandlmc@aol.com


## CERTIFICATE OF SERVICE

I certify that I have served the attached MOTION OF DEFENDANTS STEPHEN
KULAWY, D.C., NATIONAL INTEGRATED HEALTH ASSOCIATES, LLC, CENTER FOR
INTEGRATIVE BODY THERAPIES, AND DANIEL G. STORCK'S TO DISMISS SECOND
AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P.
12(b)(6) upon the parties below by successfully filing it through the Courts' CM/ECF electronic
notificaiton system on August 4th, 2008.

James R. Klimaski, Esq.
Klimaski & Associates P.C.
1625 Massachusetts Avenue, NW
Suite 500
Washington, D.C. 20036-2245


Date: August 4, 2008                          *Alan Dumoff*
                                              _____
                                              Alan Dumoff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ms. Jamie Evans,

     Plaintiff,

     v.                                             Case No. 1:08-cv-00875-ESH

The Washington Center for
Internships and Academic Seminars, et al.

     Defendants

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS STEVEN KULAWY, D.C., NATIONAL INTEGRATED HEALTH ASSOCIATES, LLC, CENTER FOR INTEGRATIVE BODY THERAPIES, AND DANIEL G. STORCK'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6)**

Alan Dumoff, Esquire
D.C. Bar No. 425926
Law Office of Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
voice:  301-987-0970
fax:    301-987-0971
e-mail: alandlmc@aol.com

ATTORNEY FOR STEVEN KULAWY, D.C.
DANIEL G. STORCK
NATIONAL INTEGRATED HEALTH
ASSOCIATES, LLC
CENTER FOR INTEGRATED BODY
THERAPIES

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BRIEF STATEMENT OF CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STANDARD OF DECISION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      The Complaint Does Not Allege Conduct That Meets the Elements of Battery.. . . . . . . . 7

II.     Plaintiff was not an Employee and Thus Has No Standing to Sue Nor Claim That Can be
        Prosecuted Under the DCHRA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

III.    The Complaint Does Not Allege Conduct That Rises to the Level of Sexual Harassment.14
        A.      No *Prima Facie* Case is Made for Sexual Harassment. . . . . . . . . . . . . . . . . . . . 14
        B.      Plaintiff Evans Gave No Notice to Kulawy, Storck, or Any Other Manager or
                Staff of the Placement Defendants and Thus Failed to Meet an Element of Sexual
                Harassment.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.     Evans Was Contributorily Negligent as a Matter of Law. . . . . . . . . . . . . . . . . . . . . . 20

V.      In the Event the Complaint is Not Dismissed in its Entirety, NIHA, Storck, and CIBT
        Should be Dismissed for Failure to State a Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        A.      The Complaint Against NIHA Should be Dismissed for Failure to State a Claim. 22

        B.      The Complaint Against Storck Should be Dismissed for Failure to State a Claim.24
                1.      The Pleading Against Storck is Deficient . . . . . . . . . . . . . . . . . . . . . . 24
                2.      The Pleading Does Not Make Out a Case Against Storck in his Personal
                        Capacity .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
                        a.      Generally, cases under the District of Columbia Human Rights Act
                                may not be brought against individuals in their personal capacity
                                given District of Columbia Law about the liability of LLC members
                                to third-parties and the requirement that DCHRA suits be levied
                                against employers. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
                        b.      The general rule in sexual harassment cases under both Federal and
                                District of Columbia law is that suits against persons in their
                                individual capacity are not favored. . . . . . . . . . . . . . . . . . . . . . . 25

c.    The pleading does not allege that storck participated in the alleged wrongs; courts have in fact held that individual liability does not rest in sexual harassment cases . . . . . . . . . . . . . . . . . . . . . . . . . 27

d.    The pleading is insufficient as a matter of law to pierce the corporate veil and take the Plaintiff's cause of action to Storck... 29

C.    CIBT Does Not Have the Capacity to be Sued and Must Be Dismissed.. 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# <u>TABLE OF AUTHORITIES</u>

<u>FEDERAL CASES</u>

*Andrews v. Wilkins*, 934 F.2d 1267 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22

*Beckwith v. Career Blazers Learning Ctr.*, 946 F. Supp. 1035 (D.D.C. 1996). . . . . . . . . . 14-18

*Brown v. Brody*, 339 U.S. App. D.C. 233, 199 F.3d 446 (D.C. Cir. 1999). . . . . . . . . . . . . . . . 10

*Bundy v. Jackson*, 205 U.S. App. D.C. 444 (D.C. Cir. 1981. . . . . . . . . . . . . . . . . . . . . . . . . 11

*Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 104 L. Ed. 2d 811, 109 S. Ct. 2166 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Conley v. Bostic,* 1993 U.S. Dist. LEXIS 20260 (N.Ga. 1993). . . . . . . . . . . . . . . . . . 10, 15, 19

*Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 1997 U.S. Dist. LEXIS 11110, 1997 WL 431830, at 2-3 (D.D.C. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*EEOC v. Johnson & Higgins*, 91 F.3d 1529 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Frankel v. Bally, Inc.*, 987 F.2d 86 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gary v. Long*, 313 U.S. App. D.C. 403, 59 F.3d 1391 (D.C. Cir. 1995). . . . . . . . . . . . . . . 15, 26

*Gastineau v. Fleet Mortgage Corp.* 137 F.3d 490 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 26

*Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Henson v. City of Dundee,* 682 F.2d 897 (11th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251 (D.C. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Krombein v. Gali Service Industries, Inc.*, 317 F. Supp. 2d 14 (D.D.C. 2004). . . . . . . . . . . . 22

*Land v. Midwest Office Technology, Inc., et al.*, 979 F. Supp. 1344 (D.C.Ka. 1997). . . 17, 26, 30

*Maalouf v. Swiss Confederation,* 208 F. Supp. 2d 31 (D.D.C. 2002). . . . . . . . . . . . . . . . . . . 20

*Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221 (D.C. Cir. 1993). . . . . . . . . . . . . . 3

*\*McGovern v. Jack D's, Inc., et al.*, 2004 U.S. Dist. LEXIS 1985 (E.D. Pa. 2004). . . . . . . . 28, 29

*McKinney v. Oklahoma*, 925 F.2d 363 (10th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047 (10th Cir. 1993). . . . . . . . . . . . . . . . . . 30

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 117 L. Ed. 2d 581, 112 S. Ct. 1344 (1992).  12

*Norman v. Gannett Co., Inc.*, 852 F. Supp. 46 (D.D.C. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*\*Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship*, 518 F. Supp. 2d 179 (D.D.C. 2007) . . . . . . 10, 26

*\*O'Connor v. Davis*, 126 F.3d 112 (2d Cir. N.Y. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Park v. Howard Univ.*, 315 U.S. App. D.C. 196, 71 F.3d 904, 906 (D.C. Cir. 1995). . . . . . . . . 16

*Pauling v. McElroy*, 107 U.S.App.D.C. 372, 278 F.2d 252, cert. denied, 364 U.S. 835, 5 L. Ed. 2d
60, 81 S. Ct. 61 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Psychiatric Inst. of Washington v. District of Columbia Comm'n on Human Rights*, 871 A.2d 1146
(D.C. 2005. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Purcell v. Thomas*, 928 A.2d 699 (D.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

*Quigley v. Speedy Muffler King*, 745 F. Supp. 3 (D.D.C. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131 (D.D.C. 2004). . . . . . . . . . . . . . . . . . . 26

*Roberts v. Air Capitol Plating, Inc.*, 1997 U.S. Dist. LEXIS 11245, 1997 WL 446266 (D.C. Ka.
1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*\*Rogers v. Loews L'enfant Plaza Hotel*, 526 F. Supp. 523 (D.D.C. 1981), 29 Fair Empl. Prac. Cas.
(BNA) 828; 28 Empl. Prac. Dec. (CCH) P32, 553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 23

*Sanchez v. Magnum Insurance Agency Co., Inc.* et al, 2001 U.S. Dist. LEXIS 11079 (N.D. Il.
2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*\*Silk v. City of Chicago* 194 F.3d 788, (7th. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554 (11th Cir. Ga. 1987). . . . . . . . . . . . . . . . 10

*Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sullivan v. Presstronics, Inc.,* 1997 U.S. Dist. LEXIS 8402, 1997 WL 327126 (N.D. Ill. 1997. . 26

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). 10

*Thomas v. Washington Industrial Medical Center, Inc.*, No. 08-1652, 1999 U.S. App. LEXIS 16771 (4th Cir. July 19, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*\*United States v. City of New York*, 359 F.3d 83 (2d Cir. 2004).. . . . . . . . . . . . . . . . . . . . . . . . 11

*Walters v. Metropolitan Educ. Enters. Inc.*, 136 L. Ed. 2d 644, 117 S. Ct. 660, 666 (1997). . . . 12

*Wathen v. General Elec. Co.*, 115 F.3d 400 (6th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*White v. Midwest Office Technology, Inc. et al*, 979 F. Supp. 1354 (U.S. Ka. 1997). . . . . . . . . . 17

*Williams v. Banning,* 72 F.3d 552 (D.D.C. 1995), U.S. App. LEXIS 36367; 69 Fair Empl. Prac. Cas. (BNA) 865; 67 Empl. Prac. Dec. (CCH) P43,807 (1995).. . . . . . . . . . . . . . . . . . . . . . . . . . . 27


DISTRICT OF COLUMBIA AND STATE CASES

*Campbell v. Balt. Gas & Elec. Co.*, 619 A.2d 213 (Md. Ct. Spec. App. 1993) . . . . . . . . . . . . . 21

*Campbell v. Montgomery County Bd. of Educ.*, 533 A.2d 9 (Md. Ct. Spec. App. 1987). . . . . . . 22

*Craig v. Greenbelt Consumer Services, Inc.*, 222 A.2d 836 (Md. 1966).. . . . . . . . . . . . . . . . . . 22

*District of Columbia v. Brown*, 589 A.2d 384 (D.C. 1991). . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Estate of Underwood v. National Credit Union Admin.*, 665 A.2d 621 (D.C. 1995).. . . . . . . . . . 9

*\*Howard Univ. v. Best*, 484 A.2d 958 (D.C. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16, 17

*Le Vonas v. Acme Paper Board Co.*, 40 A.2d 43 (Md. 1944).. . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*\*Madden v. D.C. Transit System, Inc.*, 307 A.2d 756 (D.C. App. 1973). . . . . . . . . . . . . . . . . 7, 8

*Payne v. Restaurant Corp. of America*, Civ. No. 7866-74 (D.C. Super. June 10, 1976). . . . . . . 21

*\*Phillips v. D.C. Transit Sys., Inc.*, 198 A.2d 740 (D.C. 1964) . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Poyner v. Loftus*, 694 A.2d 69 (D.C. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 21

*Scoggins v. Jude*, 419 A.2d 999 (D.C. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Sugar v. Traub*, 196 A.2d 869 (Md. 1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Tilghman v. Johnson*, 513 A.2d 1350 (D.C. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Washington v. A.&H. Garcias Trash Hauling Co.*, 584 A.2d 544 (D.C. 1990. . . . . . . . . . . . . . 21

*Wingfield v. Peoples Drug Store*, 379 A.2d 685 (D.C. 1977). . . . . . . . . . . . . . . . . . . . . . . . . 20

## FEDERAL STATUTES

42 U.S.C. § 2000e - 2(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 25

42 U.S.C. § 2000e-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 26

## DISTRICT OF COLUMBIA STATUTES

D.C. Code §§ 2-1401 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 12, 13, 16, 18, 25

D.C. Code § 2-1402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*D.C. Code § 2-1401.02(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*D.C. Code § 2-1401.02(10). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

D.C. Code § 29-1014 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## FEDERAL RULES

F.R.C.P. 12(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

F.R.C.P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

*F.R.C.P. Rule 17(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

<u>OTHER AUTHORITIES</u>

1 HARPER AND JAMES, LAW OF TORTS § 3.3 (1956 ed.). . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*D.C. Std. Civ. Jury Instr. No. 19-3) (Battery). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Restatement (Second) of Torts § 16(2) (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Restatement (Second) of Torts § 463 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## INTRODUCTION

Plaintiff Evans alleges in this diversity action that she was the victim of battery and sexual harassment by Steven Kulawy, D.C. ("Kulawy") during the course of an uncompensated summer academic internship in physical therapy arranged by The Washington Center for Internships and Academic Seminars ("TWC").[1] Evans claims liability rests not only with Kulawy, but pleads negligence based on alleged failure to warn and alleged failure to provide a means to complain about Kulawy's conduct against the Center for Integrative Body Therapy ("CIBT"), the practice location, Daniel G. Storck ("Storck") as an owner of National Integrated Health Associates, LLC, ("NIHA"), NIHA, a separate company uninvolved in these events but of which Storck happens to be a co-owner, and even TWC for having placed her there.

Evans filed her original Complaint on May 22, 2008, and her First Amended Complaint on July 3, 2008. In their initial filing for dismissal for failure to state a claim,[2] Defendants Steven Kulawy, D.C., Daniel G. Storck, National Integrated Health Associates, LLC, and Center for Integrated Body Therapies (constituting all defendants other than TWC, these defendants are all allegedly involved with Evan's internship placement, and are collectively referred to herein as the "Placement Defendants") raised two forms of argument; one was aimed at the substantive failure to make out a claim for either battery or sexual harassment, the other at various failures of Plaintiff to sue proper parties to the action. Each of these issues are addressed by this motion to dismiss for failure to state a claim pursuant to F.R.C.P. 12(b)(6).

---

[1]    TWC, the one other co-defendant in this suit, filed a motion to dismiss Count I of the complaint, the one count against it, for failure to state a claim on July 16, 2008, to which Plaintiff's memorandum in opposition remains outstanding.

[2]    These initial motions also sought dismissal under F.R.C.P. 12(b)(5) for failure to properly serve defendants, which has since been corrected.

1

## BRIEF STATEMENT OF CASE

Having now filed and served a First Amended Complaint (hereinafter referred to as "First Am. Compl.") upon all parties, Evans retreats from claiming sexual battery and now alleges simple battery instead. Yet the amended complaint remains absent of any pleading that she gave notice to Kulawy that the alleged pattern of giving "shoulder massages" and placing "an arm around the waist" were unacceptable. By her own pleading, the nature of the touch was not clearly unacceptable, was not clearly intended to be offensive, and yet none of the defendants, not even Kulawy, were informed by Evans that she considered his alleged conduct unwelcome, let alone in violation of her legally protected rights. The battery claim against Kulawy, and negligence claims against all other defendants flowing from this allegation, are not viable as a matter of law given this lack of notice, and applied consent to an alleged continuing course of conduct, that she considered his massage of her shoulders or touch around the waist to be unwelcome and instructed him to stop. She pleads that she did tell Kulawy just before leaving her internship, *after* all of the conduct complained of had occurred. Evans makes much in her previous papers that the issue was an alleged on-going pattern of behavior, yet never voiced concern until the day she left. There being no notice that touch of such an ambiguous nature was offensive, and no allegations that Kulawy touched Evans in a fashion he knew or should have known was a battery upon her person, a battery count cannot stand as a matter of law and must be dismissed.

Plaintiff also continues to claim alleged violations of the District of Columbia Human Rights Act ("DCHRA") even though Defendant's motion to dismiss the original complaint made it clear that an unpaid intern has no standing or remedy under that Act.[3] Assuming the truth of

---

[3]     *See esp*., Defendants National Integrated Health Associates, Center for Integrative Body Therapies, and Daniel G. Storck's Reply to Plaintiff's Opposition to Their Motion Dismiss,

Evans' factual allegations in the First Amended Complaint for purposes of this motion to dismiss, her claims against all party defendants under the DCHRA do not state a claim because, as an unpaid intern, Evans was not an employee and case law in the District clearly limits recovery under the Act to employees against the actions of employers. Arguing the novel proposition that receiving college credits under an internship arrangement makes Evans an employee, Plaintiff's counsel signed and served the Amended Complaint continuing to allege her DCHRA claim.

Further, the pleading does not give rise, as a matter of law, to a *prima facie* case of sexual harassment. The allegations of negligence cannot therefore be ascribed to any of the other parties, as no case under the DCHRA or for battery can be made even where the facts in the pleading are given every benefit of the doubt for the Plaintiff.

Finally, as conclusively argued in TWC's motion to dismiss, holdings in the District of Columbia regarding contributory negligence and avoidable consequences constitute a complete bar to any recover on either battery or DCHRA claims. Evans' allegations demonstrate that, as a matter of law, she failed to take actions that a reasonably prudent person would have taken to avoid the injuries she complains were caused by Kulawy because she allowed the conduct she alleged constituted battery and sexual harassment to continue without any protest to Kulawy or notice to any other defendant or their staff. A simple instruction at the outset of the alleged course of behavior from Evans to Kulawy would likely have resolved and ended any matter that was making her uncomfortable. Instead, Evans failed to take any steps a reasonable person would take to voice her concern and protect herself, thus directly contributing to the alleged pattern of

---

filed July 10, 2008 at 11-13. On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider a plaintiff's previous filings before this Court. *See Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222 (D.C. Cir. 1993)).

3

behavior. This failure on the part of Evans was a contributing cause of the injuries she claims, and under the District of Columbia's view of contributory negligence, this is a complete bar to any recovery against any party for negligence.

Accordingly, all counts against all parties must be dismissed.[4]

## STATEMENT OF FACTS

In March 2007, Evans applied to TWC for a 2007 summer academic internship in physical therapy. First Am. Compl. ¶¶ 12-13. Evans' paid $7,200, for this placement, *Id.* at ¶ 15, that would allow her to obtain twelve credits toward her college degree for successfully completing this internship. Id. ¶ 14. Evans internship was unpaid; she received neither wages, contract payments or benefits from any of the defendants in the suit. *See* Exhibit A to Memorandum of Points and Authorities of Defendant Washington Center for Internships and Academic Seminars in Support of Motion to Dismiss Count I of the First Amended Complaint, and argument for the consideration by the Court of this exhibit at 3 n. 3 of that Memorandum, incorporated herein by reference, showing at page 2 of the exhibit that the internship was unpaid.

Evans decided to intern at the Center for Integrative Body Therapies ("CIBT"), ¶ 17. Kulawy is a chiropractor whose practice is at CIBT/PMA. Id. at ¶ 18. On or about May 29, 2007, Evans started her academic internship with CIBT. *Id. at* ¶ 25. She worked with Dr. Kulawy and

---

[4]    Plaintiff brings six counts – Count I is against the Washington Center for Negligence; Count II against Kulawy for Battery; Count III against CIPT/PMA/NIHA and Storck for Negligence, Count IV against Kulawy for Sexual Harassment; Count V against CIBT/PMA for Respondent Superior, and Count VI against Storck and NIHA for Respondent Superior.

The entire case is predicated upon Kulawy having committed battery and sexual harassment; if these claims fall, no claims survive against any party. The Battery claim appears to be a common law tort, while the sexual harassment claim is predicated specifically upon DCHRA, Code §§ 2-1401 and 2-1402.

several physical therapists. Id. ¶ 26. Evans states that "during her first few days at CIBT, [she] was informed that when Kulawy was with a female patient, the door to the exam room had to remain open," although "no one explained the reason for this policy" to her. *Id.* at ¶¶ 27.

Evans states that she never asked anyone about the reason for the policy until her last day at CIBT/PMA, and even then only because a representative of TWC who was there on that date to conduct a site visit "directed" her to do so, after Evans made her first and only report to any of the Defendants, an agent of TWC, about Dr. Kulawy's "touching and comments." *Id.* at ¶¶ 56-57.

On an undisclosed date, and on an undisclosed number of occasions, the Complaint alleges that "Dr. Kulawy began making advances and comments to Ms. Evans." *Id.* at ¶ 29. As examples of this behavior, the First Amended Complaint states that "Dr. Kulawy repeatedly approached Ms. Evans from behind when she was typing and massaged her shoulders," "repeatedly wrapped his arm around Ms. Evans' waist while they were walking through the office," and "repeatedly made comments to Ms. Evans about her appearance." Id. ¶¶ 32, 58, 85.

Ms. Evans states that as a result of Kulawy's advances and comments, she "grew increasingly anxious and uncomfortable working around Dr. Kulawy," *Id.* at ¶ 33 and that she "stopped wearing make-up and changed the style of her clothes to make herself less attractive in an effort to stop Dr. Kulawy's advances and comments as well as any possible unwanted attention from other males." *Id.* at ¶ 34.

Evans learned that Kulawy was required to keep the door open because of a history of inappropriately touching female patients. *Id.* at ¶ 57. Evans learned that Kulawy had been disciplined by the District of Columbia and Virginia Boards of Chiropractic for conduct regarding

5

female patients. *Id.* at ¶¶ 42-52. After learning this, Evans states that she "finally reported this [Dr. Kulawy's touching her] to another [CIBT] staff member," Pl.'s July 3 Opp. at 4 (emphasis added), thereby admitting that this day was the very first time that Ms. Evans reported Dr. Kulawy's actions to anyone at TWC or CIBT. As the complaint notes, the day Evans finally reported her allegations of Kulawy's repeated touching and comments over the period of her internship was the last day she spent at CIBT because once "Ms. Evans notified [TWC],…[TWC] immediately removed her" from CIBT. Pl.'s July 3 Opp. at 4. *See also* First Am. Compl. at ¶ 59-61.

## STANDARD OF DECISION

A motion to dismiss must be granted where a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor, accept[ing] as true all of the factual allegations contained in the complaint." *Kassem v. Wash. Hosp. Ctr.*, 513 F.3d 251, 252 (D.C. Cir. 2008)). The plaintiff is to receive "the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006)). As is demonstrated below, the standard for granting a motion to dismiss under Rule 12(6)(b) is met in this case.

6

# ARGUMENT

## I.    The Complaint Does Not Allege Conduct That Meets the Elements of Battery.

Battery requires both clear intention to cause harm, and where, as here, the nature of the touch is ambiguous, it requires notice that the touch is unwelcome. Here, Evans continuing acceptance implies consent as a matter of law.

### A.    The Pleading Does Not Describe Intention to Harm.

A central element of battery is intent to commit harm. Plaintiff attempts by pleading Kulawy's prior disciplinary history, First Am. Compl. ¶¶ 42-52 to plead by inference that he intended harm, but that is insufficient as a matter of law:

> The complaint was deficient also in respect to the alleged battery [which require one] to allege intent -- one of the essential elements of the tort of battery. RESTATEMENT (SECOND) OF TORTS § 16(2) (1965). *See also* 1 HARPER AND JAMES, LAW OF TORTS § 3.3 (1956 ed.). *Appellant contends nevertheless that his allegations of wanton and malicious conduct were sufficient to satisfy the requisite intentionality. We disagree.* Such allegations were nothing more than legal conclusions which the court was not bound to accept. *Pauling v. McElroy*, 107 U.S.App.D.C. 372, 373-374, 278 F.2d 252, 253-254, cert. denied, 364 U.S. 835, 5 L. Ed. 2d 60, 81 S. Ct. 61 (1960).

> Appellant has not cited this court to any authority which supports the cause of action he sought to maintain, and we decline to create for him a cause of action. Because we have been unable to find in the allegations of the complaint the requisite intentionality which inheres in a claim for assault and battery, the judgment of the court below [dismissing the action] is Affirmed.
> *Madden v. D.C. Transit System, Inc.*, 307 A.2d 756 (D.C. App. 1973)(emphasis added.)

The pleading about Kulawy's previous disciplinary history regarding contact with patients is not sufficient to make out a case that such ambiguous conduct that went uncontested and unremarked upon by Evans as plead in the complaint constitutes battery. Intention requires substantial certainty that the contact is offensive in the tort context as well:

> In order that the actor may be liable under the rule stated in this Section, it is necessary that an act be done for the purpose of bringing about a harmful or offensive contact or an apprehension of such contact to another or to a third person or with knowledge that such a result will, to a substantial certainty, be produced by his act. *It is not enough to make the act intentional that the actor realize that it involves any degree of probability of a harmful or offensive contact or an apprehension of such contact, <u>less than a substantial certainty</u> that it will so result.*
> Restatement (Second) of Torts § 16(2) (1965) (Comment *e.*)(emphasis added.)

Critically, the fact that Evans never told Kulawy that she found his conduct offensive and asked him to stop, but rather allowed it to continue, combined with the nature of the contact–shoulder massages and an arm around the waist–cannot meet this standard as a matter of law. Plaintiff attempts to plead her failure to tell Kulawy that his conduct was unwelcome as due to her naivete', First Am. Compl. at ¶¶ 10, 34, 38, but her conduct is unreasonable. Her statement that Kulawy's "advances and comments caused Ms. Evans to stop leading a normal life. She stopped showering, refused to take part in touring and other recreational activities, and stayed in bed watching TV," *Id. at* ¶ 62, lacks credibility and does not reflect a reasonable person's response to the situation. The fact remains that a prudent person would have given at least some notice that the conduct was unacceptable. *Rodgers v. Loews L'enfant Plaza Hotel*, 526 F. Supp. 523, 529 (D.D.C. 1981), 29 Fair Empl. Prac. Cas. (BNA) 828; 28 Empl. Prac. Dec. (CCH) P32, 553 (Plaintiff survived motion to dismiss because she plead that she specifically told defendant that his advances were unwanted.)

**B.    Kulawy Gave Implied Consent, or At the Very Least, Failed to Give Adequate Notice that the Touch Was Unwelcome.**

The jury instructions for battery for the District of Columbia, make note that the "defendant cannot be liable for battery if the plaintiff consented to be touched." D.C. Std. Civ. Jury Instr. No. 19-3) (Battery). Evans conduct demonstrates implied consent because she never

objected until after the alleged pattern of conduct was at an end, and thus the pleading fails as a matter of law. At the very least, she did not give sufficient notice to Kulawy for him to know she did not want such contact.

All claims of negligence or respondeat superior arising therefrom, against the Placement Defendants, must be dismissed as well as Count II against Kulawy.

## II.    Plaintiff was not an Employee and Thus Has No Standing to Sue Nor Claim That Can be Prosecuted Under the DCHRA.

Plaintiff was not employed, but an intern, which is a voluntary position, had no vested interest in her position with respect to any of the Placement Defendants, and thus she has no standing to sue under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.* Further, it was legally impossible for her conditions of employment to be adversely affected. D.C. Code § 2-1401.02(9) (Definitions) defines an employee as "any individual employed by or seeking employment from an employer." Plaintiff was neither. D.C. Code § 2-1401.02(10) defines an "Employer" as "any person who, for compensation, employs an individual, except for the employer's parent, spouse, children or domestic servants, engaged in work in and about the employer's household; any person acting in the interest of such employer, directly or indirectly; and any professional association." Neither Kulawy nor CIBT/PMA was Evans employer. *See Estate of Underwood v. National Credit Union Admin.*, 665 A.2d 621, 640 (D.C. 1995) (Discussing sexual harassment in the context of emotional distress claims, but that the underlying sexual harassment had to arise out of employment and she could not recover because the harm was not inflicted "because of" her employment.)

In order to demonstrate a discrimination claim under the DCHRA, a plaintiff must show

all of the following:

> that (1) he [sic] is a member of a protected class; (2) he [sic] suffered an adverse employment action; (3) and the adverse action gives rise to an inference of discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); *Brown v. Brody*, 339 U.S. App. D.C. 233, 199 F.3d 446, 452 (D.C. Cir. 1999).
>
> *Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship*, 518 F. Supp. 2d 179, 185 (D.D.C. 2007) fn. 11

Plaintiff's case fails to meet at least two of these elements. Evans was an unpaid intern, First Am. Compl. ¶¶ 12-14, *see also* Exhibit A to TWC's Motion to Dismiss, and thus not a member of the protected class. On the second element, she could not be subject to an adverse employment action as she was not an employee, and the complaint in fact alleges no such adverse action.

Understanding whether the claims even meet the third element is illuminated by looking more broadly at the law regarding sexual harassment. Referring generally to sexual harassment claims, another Court delineated these elements, stating that such a claim must establish the following:

> A plaintiff may establish a *prima facie* case of hostile work environment sexual harassment by showing that (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome sexual harassment in the form of requests for sexual favors, sexual advances, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the harassment complained of affected a "term, condition, or privilege" of employment; and (5) either that the harasser meets the definition of employer or that the employer is liable through respondeat superior. *Sparks* [*v. Pilot Freight Carriers, Inc.,*] 830 F.2d 1554, 1557 (11th Cir. Ga. 1987)]; *Henson v. City of Dundee*, 682 F.2d 897, 903-05 (11th Cir. 1982).
>
> *Conley v. Bostic*, 1993 U.S. Dist. LEXIS 20260 (N.Ga. 1993).

As noted above, the first element is not met, as Evans is not an employee. The forth element here also cannot be met, as the alleged harassment could not affect a "term, condition, or

privilege" of a relationship that did not exist, nor does the pleading allege that a term, condition or privilege of employment was affected. While Courts have held that outright reduction in job status is not a prerequisite to a sexual harassment claim, a Plaintiff does have to show that a defendant created a discriminatory work environment; that the "harassment complained of affected a term, condition, or privilege of employment." *Howard Univ. v. Best*, 484 A.2d 958, 978 (D.C. 1984); *Bundy v. Jackson*, 205 U.S. App. D.C. 444 (D.C. Cir. 1981). This complaint does not make out such a showing on its face, and this necessary element of sexual harassment, by the Plaintiff's own admissions, cannot be met.

The fifth element is also plainly missing, as none of the defendants were Evans' employer. Evans received no pay, no benefits, nor other remuneration from any source, neither from the Placement Defendants nor TWC. Courts have examined whether one who is uncompensated can be an "employee" and receive protection under the DCHRA, and the clear answer is "no."

In a Title VII case, for example, which apply to DCHRA cases as well, *see infra* at 25, one court noted that:

> In O'Connor, we articulated the requirement that a Title VII plaintiff be "hired in the first instance." *O'Connor*, 126 F.3d at 115. In that case, a college student sued a hospital in which she had been working as an intern, alleging sexual harassment in violation of Title VII. Id. at 113. In rejecting the intern's Title VII claim, we held that she had never been hired as a hospital employee because she was owed no "direct or indirect economic remuneration" amounting to "compensation" for her work. Id. at 116. We specifically relied on the fact that the plaintiff received "no salary or other wages, and no employee benefits such as health insurance, vacation, or sick pay, nor was she promised any such compensation." Id.
> *United States v. City of New York*, 359 F.3d 83, 104 (2d Cir. 2004).

This case followed the more exhaustive consideration to whether an intern is an employee for the purpose of sexual harassment claims in *O'Connor v. Davis*, 126 F.3d 112, 115-116 (2d Cir. N.Y. 1997):

11

O'Connor's first argument on appeal is that the district court improperly
concluded that she was not a Rockland employee within the meaning of Title VII.
She argues that although she worked at Rockland as an unpaid intern, she
nevertheless satisfies the common-law agency definition of "employee." We disagree.

The definition of the term "employee" provided in Title VII is circular: the Act
states only that an "employee" is an "individual employed by an employer." 42
U.S.C. § 2000e(f); see also *EEOC v. Johnson & Higgins*, 91 F.3d 1529, 1538 (2d
Cir. 1996). However, it is well-established that when Congress uses the term
"employee" without defining it with precision, courts should presume that
Congress had in mind "the conventional master-servant relationship as understood
by the common-law agency doctrine." *Nationwide Mut. Ins. Co. v. Darden*, 503
U.S. 318, 322-23, 117 L. Ed. 2d 581, 112 S. Ct. 1344 (1992) (quoting *Community
for Creative Non-Violence v. Reid*, 490 U.S. 730, 739-40, 104 L. Ed. 2d 811, 109
S. Ct. 2166 (1989)); see also *Walters v. Metropolitan Educ. Enters. Inc.*, 136 L.
Ed. 2d 644, 117 S. Ct. 660, 666 (1997); *Frankel v. Bally, Inc.*, 987 F.2d 86, 90
(2d Cir. 1993).
. . .

As a volunteer . . . . [w]e believe that the preliminary question of remuneration is
dispositive in this case. It is uncontested that O'Connor received from Rockland
no salary or other wages, and no employee benefits such as health insurance,
vacation, or sick pay, nor was she promised any such compensation.
*O'Connor v. Davis*, 126 F.3d 112, 115-116 (2d Cir. N.Y. 1997).

As a result, Title VII claims, and by inference, DCHRA claims as well, did not apply and

O'Conner was not a member of the class of persons protected by the suit. This is true of Evans as

well.

    In her Plaintiff's Opposition to Motion to Dismiss for Failure to State a Claim of

Defendants Steven Kulawy, D.C., and Center for Integrative Body Therapies (hereinafter "Pl.

Opp. Kul."), filed July 11, 2008, Plaintiff argues that the Placement Defendants did not cite any

cases demonstrating that actual employment is required under the DCHRA. The cases cited here

had been filed in their reply brief on behalf of Defendant Storck just prior to the filing of Plaintiff's

Opposition to Kulawy's motion to dismiss. Evans argued that because she would receive college

credits, she has rights under the Act. At best, college credits would be an argument that Evans

12

had some vested interests in her time working at CIBT/PMA. But the requirements under the Act are not merely that one have a vested interest, but specifically, that they be in an employment relationship. College credits are not wages or contract payments, no declaration about them made to the Internal Revenue Service, no unemployment compensation insurance payments made, no master/servant relationship created.[5] Nor were these college credits to have been awarded by Defendants.

In order to advance her strained argument that college credits give her an employment interest, Plaintiff argues in Pl. Opp. Kul. at 9, that "Kulawy's sexual harassment of Ms. Evans did affect a term or condition of her working — her ability to complete the internship and earn the college credits." Under this novel view, there need not be an employer-employee relationship, but merely some claimed future ability to be employed that is arguably affected. This argument proves far too much, as Evans' University, for example, would be her employer because it is preparing her for working life. This specious argument would turn labor law on its head. The overreaching to save her complaint is so extreme that Evans even argues that "[m]oreover, as Ms. Evans has alleged, her adverse experience caused her to abandon her career plans to work in physical therapy and change her college major to environmental sciences. (First Amended Complaint at ¶ 63)." Pl. Opp. Kul. at 9. While the credibility of such an experience souring one's career plans would need to be tested under a different posture than a motion to dismiss, the idea that any person who affects another's career becomes their employer for the purposes of analysis under the DCHRA is simply preposterous.

---

[5]    Evans in fact incurred uncompensated expenses and had to take out a loan to participate in this internship, First Am. Compl. ¶ 15-16, making it all the more clear since she was paying to have the experience that she was not at CIBT/PMA as an employee.

13

Plaintiff's sexual harassment claims, and any claims of negligence or respondeat superior arising therefrom, against the Placement Defendants (and TWC) under the DCHRA is wholly deficient as a matter of law and must be dismissed.

### III. The Complaint Does Not Allege Conduct That Rises to the Level of Sexual Harassment.

The complaint states that Kulawy made "advances and comments," Complaint, *inter alia*, at ¶ 29 and 62, and accuses him of sexual harassment, First Am. Compl., *inter alia* at ¶¶ 84, 85, 103, and yet the only allegations plead with sufficient specificity to determine the actual conduct complained of throughout the entire complaint is that Kulawy is alleged to have "massaged [Evans'] shoulders," *Id.* at ¶ 30, "wrapped his arms around [Evans'] waist," *Id.* at ¶ 31, and "made comments to Ms. Evans about her appearance." *Id.* at 32. Evans made no comment to Kulawy or any other of the Placement Defendants until her leaving. This is not sufficient as a matter of law to make a case of sexual harrasment,

#### A. No *Prima Facie* Case is Made for Sexual Harassment.

These allegations are, as a matter of law, too trivial to sustain a *prima facie* case for sexual harassment. The complaint on its face only alleges a few isolated incidents and does not rise to the level of harassment required by *Psychiatric Inst. of Washington v. District of Columbia Comm'n on Human Rights*, 871 A.2d 1146, 1151 (D.C. 2005). "More than a few isolated incidents must have occurred, and genuinely trivial occurrences will not establish a prima facie case," *See also Purcell v. Thomas*, 928 A.2d 699 (D.C. 2007). Even if the allegations were true, the conduct described does not rise to the level of offensiveness necessary to create a *prima facie* case of sexual harassment. The pleading must clearly make out a case that is offensive. See *Katz*

14

*v. Dole*, 709 F.2d 251 (4th Cir. Va. 1983).

This was addressed specifically at length by the Court in *Beckwith v. Career Blazers Learning Ctr.*, 946 F. Supp. 1035 (D.D.C. 1996):

> Discriminating sexual harassment may take on two forms: "the grant or denial of an economic quid pro quo in exchange for sexual favors" and the "creation [of] a hostile or abusive work environment." *Gary v. Long*, 313 U.S. App. D.C. 403, 59 F.3d 1391, 1395 (D.C. Cir. 1995)(citations omitted). Ms. Attwell does not allege quid pro quo harassment. Her claim is limited solely to hostile work environment.
>
> Ms. Attwell charges that she was subject to unwelcome physical advances of a sexual nature, citing four situations: (1) when Mr. Rogers' pinky brushed her knee while the two were reviewing a document; (2) when Mr. Rogers' knee pressed against her knee while reviewing documents; (3) when Mr. Rogers brushed her shoulder while pointing something out on a calendar; and (4) when Mr. Rogers stood so close to her while discussing a business matter that she could feel his breath on her neck.
>
> She further charges that she was subject to unwelcome verbal advances of a sexual nature on four occasions: (1) when, in response to her inquiry as to whether her attire was in compliance with the company's dress code, Mr. Rogers said that, "in my opinion, you always dressed very professionally. In fact, you look beautiful"; (2) when Mr. Rogers said to her, "when you work with someone, its hard to have any other kind of relationship with them other than just professional;" (3) when Mr. Rogers suggested they go running together; and (4) when Mr. Rogers offered her a treadmill exercise machine provided she picked it up at his house. *Beckwith,* 946 F. Supp. at 1047.

Plaintiff argues that she has plead a "pattern" of conduct that rises to the level of sexual harassment, Pl. Opp. Kul. at 5. In that memorandum of law, Plaintiff puts forward two arguments: 1) that she need not prove a *prima facie* case, and 2) that she has met any burden to go forward by pleading that the repetitive exposure to shoulder massages, an arm around the waist, and unspecified comments about appearance constitute a pattern that, interpreted most favorably for the Plaintiff, make out a case as a matter of law.

Plaintiff argues incorrectly that "even summary judgment is improper because Ms. Evans

does not have to prove a *prima facie* case in her pleadings." Pl. Opp. Kul. at 4. This is flatly

wrong; clearly, the pleadings must set forth a *prima facie* case to survive dismissal, *see Conley v.*

*Bostic,* 1993 U.S. Dist. LEXIS 20260 (N.Ga. 1993); *Psychiatric Inst. of Washington*, 871 A.2d

at 1151; *Purcell,* 928 A.2d at 708; *Beckwith*, 946 F. Supp. at 1047. In the present posture the

pleadings do not, as a matter of law, make out a case against defendants. To support her odd

proposition, Plaintiff cites language in *Best* that "the burden of proving that the alleged incidents

of sexual harassment are 'isolated or trivial' is on the defendant as a defense against the *prima*

*facie* case." *Citing Best, 484 A.2d* at 980, fn. 25. Yet Plaintiff fails to notice the clear implication

of this language; before defendants must adopt the burden of such a showing, the Plaintiff must

have made out a *prima facie* case in the first instance.

In making such a determination, it is helpful to review the facts in the *Beckwith* case, in

which the Court found that the pleading did not give rise to a claim:

> In order to establish a claim for maintenance of a sexually hostile work
> environment under DCHRA, the evidence of sexual harassment "must be
> sufficiently pervasive so as to alter the conditions of employment and create an
> abusive working environment." [*Howard Univ. v.*] *Best*, 484 A.2d 958, 979-980
> (D.C. 1984) (finding the unlawful employment practices section of DCHRA, D.C.
> CODE § 211(a)(1) [sic] substantially similar to that of Title VII, 42 U.S.C. §
> 2000e - 2(a)(1)). "More than a few isolated incidents must have occurred, and
> *genuinely trivial occurrences* will not establish a prima facie case." *Id*. at 980.
>
> The physical advances complained of by Ms. Attwell were isolated and trivial as a
> matter of law. These incidents complained of were not "so severe or pervasive that
> it created a work environment abusive to [an] employee because of [her]…gender
> … thus offending Title VII's [and the DCHRA's] broad rule of work place
> equality." *Park v. Howard Univ*., 315 U.S. App. D.C. 196, 71 F.3d 904, 906 (D.C.
> Cir. 1995)(citations and internal quotes omitted). Accordingly, the defendants'
> motion for summary judgment on this claim will be granted.
> *Beckwith,* 946 F.Supp at 1047-48. (Emphasis added.)

In *Beckwith*, the suit was dismissed as the pattern of conduct was too trivial as a matter of law.

This was done upon summary judgment, but other decisions have made it clear that where the

pleading cannot reasonably make out a legitimate case it is appropriate to dismiss the matter:

> Dismissals under Rule 12(b)(6) typically occur only after the plaintiff is afforded
> notice and an opportunity to amend the complaint to cure the defective allegations.
> *Hall v. Belmon*, 935 F.2d at 1109-10. The court, however, "may dismiss sua
> sponte 'when it is patently obvious' that the plaintiff could not prevail on the facts
> alleged, and allowing him an opportunity to amend his complaint would be futile.'"
> *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)).
> *Land*, 979 F.Supp. at 1349.

See also *White v. Midwest Office Technology, Inc. et* al, 979 F. Supp. 1354 (U.S. Ka. 1997);

*Phillips v. D.C. Transit Sys., Inc.*, 198 A.2d 740, 741 (D.C. 1964); *Poyner*, 694 A.2d at 71

(citing *District of Columbia v. Brown*, 589 A.2d 384, 387-88 (D.C. 1991)).

The First Amended Complaint does not make out a sufficient allegation of sexual

harassment is in fact being made; the complaint alleges no serious, pervasive, offensive conduct,

does not describe the type of behavior at which sexual harassment laws are designed to remedy.

The complaint does not make out a *primae facie* case.

In response, Plaintiff cites *Best*, 484 A.2d at 980-981, *see* Pl. Opp. Kul. at 6-7, quoting the

obvious concept that there is no specific number of incidents or level of egregiousness required to

make out a case. *Best*, 484 A.2d at 980. But this does not mean that the Court is not capable, as

in *Beckwith* above, from dismissing a case when a pleading does not reflect sufficient facts.

In her Opposition, Plaintiff reminds the Court that *Best* requires the courts consider all the

circumstances, including:

> the amount and nature of the conduct, *the plaintiff's response to such conduct*,
> and *the relationship between the harassing party and the plaintiff*. In other words,
> the totality of the circumstances must be considered.
> *Best*, 484 A2d at 982. (Emphasis added).

Given the nature of the allegations, the plaintiff's lack of response, and that there was no

employer-employee relationship, the totality of the circumstances call for the dismissal of this case.

With regard to comments Kulawy is alleged to have made about Evans' appearance, First Am. Compl. at ¶¶ 32, 58, 85, this is by itself inadequate to make out a claim for sexual harassment. Defendant Kulawy argued in his previous motion that comments upon appearance, without more, does not make out a case of harassment. He might have neutrally informed Plaintiff that she looked nice, or told her that she was dressed inappropriately for a work environment, or a host of other legally acceptable comments. Nothing about discussing appearance is inherently harassing, and the First Amended Complaint is thus deficient as a matter of law. D.C. Code § 2-1401.02 specifically states that it is acceptable to comment upon "the requirement of cleanliness, uniforms, or prescribed standards, when uniformly applied for admittance to a public accommodation, or when uniformly applied to a class of employees for a reasonable business purpose . . ."

As the Court in *Beckwith* noted:

> Moreover, the verbal advances of an alleged sexual nature are to be viewed in "the totality of the circumstances," and when so considered, they too fail to establish a prima facie case of sexual harassment. "No reasonable person would feel that an offensive or hostile work environment was created merely because a male supervisor or manager complemented a female employee on her appearance without more," *Norman v. Gannett Co., Inc.*, 852 F. Supp. 46, 49 (D.D.C. 1994), especially when the employee solicited his opinion on the business appropriateness of her attire.
> *Beckwith,* 946 F.Supp. at 1047-48.

In this instance, though, as Plaintiff attempts to levy $500,000 from these allegations, she cannot describe what the remarks allegedly entailed. Though on notice that actual solicitous, harassing or other troubling remarks should be plead, rather than the neutral and protected

18

statement that "he remarked on her appearance," Plaintiff failed when she amended her complaint

to specify what those remarks where, and then argued beyond her own pleading in their Pl. Opp.

Kul. at 7 that "the Kulawy comments were not about cleanliness, prescribed standards or

uniforms." Yet there is no way to know that from the pleading, and the peculiar absence of

sufficient pleading that might demonstrate that these comments were of a harassing nature makes

it apparent that Plaintiff hopes to keep the matter mysterious and thus avoid dismissal by arguing

that this remains a disputed fact. Such conduct should not be countenanced. Plaintiff has had two

opportunities to plead specifically what comments were made that would rise to the level of

sexual harassment. They have not done so, the complaint makes out no case for sexual harassment

as a matter of law, and the matter should be dismissed.

>    **B.    Plaintiff Evans Gave No Notice to Kulawy, Storck or Any Other Manager or
>    Staff of the Placement Defendants and Thus Failed to Meet an Element of
>    Sexual Harassment.**

One of the elements of sexual harassment is that the defendant be given express notice that

the conduct complained of is offensive. *Conley,* 1993 Lexis at 20274. This is particularly true

where the allegations are not of the clearly offensive behavior documented in numerous sexual

harassment cases, but rather simply touching shoulders and the waist, and making unspecified

comments upon appearance. Such conduct may be offensive to some, but crossed no clear

behavioral or statutory lines. Plaintiff had an obligation, especially if she found the conduct so

offensive that she now comes to Federal Court demanding $500,000 in compensation, to give

notice that she found this  conduct offensive. But she gave notice to no one until the time of her

leaving, after the conduct complained of allegedly occurred, First Am. Compl. ¶¶ 58-61, and thus

cannot fill this critical element of a sexual harassment claim.

19

None of the defendants is alleged by the original or amended complaints, by its own terms, to have been given such notice. The sexual harassment claim therefore cannot be sustained and must be dismissed as a matter of law.

## IV.    Evans Was Contributorily Negligent as a Matter of Law.

In TWC's Motion to Dismiss, it argues that Evans was contributorily negligent as a matter of law, and that such contributory negligence constitutes a complete bar against both the battery and DCHRA claims, and as a consequence, the claims of negligence against TWC would also fail. Were the Court to accept TWC's conclusive demonstration that this is correct as a matter of law, then all claims against the Placement Defendants would have to be dismissed as well. The contributory negligence on Evans' part would not only bar the underlying claims of battery and sexual harassment, but would also bar any claims of negligence or respondeat superior alleged to flow from these underlying claims against all of the defendants.

Evans' allegations demonstrate that she failed to take actions that a reasonably prudent person would take to avoid the injuries she complains of, as she neither informed Kulawy, CIBT, TWC or any other defendant that she took issue with his conduct. Evans' failures to take the steps a reasonable person would take to protect herself were a contributing cause of the injuries she claims. This contributory negligence is a complete bar to any recovery against any of the Placement Defendants, as well as against TWC, under District of Columbia law. *Andrews v. Wilkins*, 934 F.2d 1267, 1272 (D.C. Cir. 1991) (citing *Wingfield v. Peoples Drug Store*, 379 A.2d 685, 687 (D.C. 1977)).

"Contributory negligence is 'conduct 'which falls below the standard to which a plaintiff

20

should conform for his [or her] own protection' and contributes to the plaintiff's injury.'"

*Maalouf* [*v. Swiss Confederation,*] 208 F. Supp. 2d 31, 42 (D.D.C. 2002)(quoting *Scoggins v.*

*Jude*, 419 A.2d 999, 1004 (D.C. 1980) (quoting Restatement (Second) of Torts § 463 (1965)).

While "[o]rdinarily, questions of negligence and contributory negligence must be decided by the

trier of fact," *Poyner v. Loftus*, 694 A.2d 69, 71 (D.C. 1997) (citing *Washington v. A.&H.*

*Garcias Trash Hauling Co.*, 584 A.2d 544, 545 (D.C. 1990), and that "'[o]nly in the exceptional

case is evidence so clear and unambiguous that contributory negligence should be found as a

matter of law.'" *Poyner*, 694 A.2d at 71 (quoting *Tilghman v. Johnson*, 513 A.2d 1350, 1351

(D.C. 1986)). However, when, as here, "the facts clearly appear from the evidence to be such

that, conceding every logical inference, but one reasonable conclusion may be drawn, the issue

becomes one of law for the court." *Phillips v. D.C. Transit Sys., Inc.*, 198 A.2d 740, 741 (D.C.

1964) (citations omitted); *Poyner*, 694 A.2d at 71 (citing *District of Columbia v. Brown*, 589

A.2d 384, 387-88 (D.C. 1991)). The trial court may...take the issue of contributory negligence

from the jury and rule that there was contributory negligence as a matter of law when the

undisputed facts of the case support such a finding as a matter of law." *Campbell v. Balt. Gas &*

*Elec. Co.*, 619 A.2d 213, 216 (Md. Ct. Spec. App. 1993) (citing *Le Vonas v. Acme Paper Board*

*Co.*, 40 A.2d 43 (Md. 1944)).

Plaintiff argues that Defendants fail to recognize the seriousness of the allegations, as she

plead a "pattern of practice." Pl. Opp. Kul. at 5. But the fact that the allegations are of a pattern

of practice, and yet Evans never took any steps to address them, in fact demonstrates her

contributory negligence.

District of Columbia courts have held plaintiffs to be contributorily negligent as a matter

of law in circumstances where a plaintiff *repeatedly or continuously* exposes himself or herself to a known hazard that was created by another party, and thereafter is injured by that hazard. *Quigley v. Speedy Muffler King*, 745 F. Supp. 3 (D.D.C. 1990), *Payne v. Restaurant Corp. of America*, Civ. No. 7866-74 (D.C. Super. June 10, 1976); *Thomas v. Washington Industrial Medical Center, Inc.*, No. 08-1652, 1999 U.S. App. LEXIS 16771 (4th Cir. July 19, 1999); *Campbell v. Montgomery County Bd. of Educ.*, 533 A.2d 9 (Md. Ct. Spec. App. 1987).

District of Columbia courts have also held plaintiffs to be contributorily negligent as a matter of law in circumstances where a plaintiff recognizes the existence of a dangerous situation yet fails to exercise due care to avoid injury. *Krombein v. Gali Service Industries, Inc.*, 317 F. Supp. 2d 14, 19 (D.D.C. 2004); *Andrews v. Wilkins*, 934 F.2d 1267 (D.C. Cir. 1991); *Craig v. Greenbelt Consumer Services, Inc.*, 222 A.2d 836 (Md. 1966); *Sugar v. Traub*, 196 A.2d 869 (Md. 1964).

Just as the plaintiffs in these cases were held to be contributorily negligent as a matter of law because they failed to take reasonable steps so as not to be injured by circumstances they believed posed a risk of injury, Evans was contributorily negligent as a matter of law because a reasonably prudent person would not have allowed herself day after day to repeatedly be the victim of Dr. Kulawy's alleged conduct.

**V.    In the Event the Complaint is Not Dismissed in its Entirety, NIHA, Storck, and CIBT Should be Dismissed for Failure to State a Claim.**

   **A.    The Complaint Against NIHA Should be Dismissed for Failure to State a Claim.**

While the First Amended Complaint continues to allege that NIHA should have known or

22

taken certain steps with regard to Kulawy's disciplinary history, the pleading states no facts that would make NIHA responsible. The complaint alleges that NIHA owed a duty to Evans, First Am. Compl. at ¶ 78, but nothing in the complaint alleges any basis for such a duty. The complaint does not allege, as indeed it could not, that NIHA had any involvement at all in Evans' placement. It does not allege that NIHA arranged the internship, was the location for the internship, was involved in managing the internship.

The First Amended Complaint in fact completely omits any mention of NIHA in the "Parties and Jurisdiction" section of the pleading, First Am. Compl. ¶¶ 1-6. While listed in the caption, the paragraph that would aver NIHA as a party was in fact dropped from the amended complaint. The Compliant nowhere asserts anything about NIHA that connects NIHA to these events, it simply and mysteriously ascribes a duty to NIHA later in the Complaint without any basis whatsoever. Such pleading is deficient as a matter of law, and is not only technically deficient but fails to demonstrate a basis for holding NIHA responsible. This was clearly placed at issue in the first round of motions for dismissal against the original complaint,[6] yet rather than clarify the basis for including NIHA in its amended complaint, Plaintiff in fact deleted the paragraph pleading a basis for suing NIHA. Plaintiff argued in her opposition to the initial motion to dismiss that a letter from TWC was addressed to Storck at NIHA, but that is not enough to create a legitimate controversy as NIHA is merely Storck's primary business contact address, and this certainly cannot overcome the complete failure to plead NIHA as a party. A corporate defendant, to be liable, must in fact be plead to have control of the day-to-day operations of the

---

[6]         In the original complaint, the only relevant statement merely alleged that NIHA operates "a.k.a. Physical Medical Associates, L.L.C." (Complaint at ¶ 6). This is inaccurate, NIHA does not operate "a.k.a." PMA. PMA is an independent limited liability company, and this statement was abandoned in the First Amended Complaint.

23

site at issue. *Rodgers*, 526 F. Supp. at 533. Evans pleading, however, shows no relationship at all, let alone that of day-to-day management. Clearly, Plaintiff cannot make a case for suing NIHA, and NIHA must be dismissed as a party.

**B.  The Complaint Against Storck Should be Dismissed for Failure to State a Claim.**

**1.  The Pleading Against Storck is Deficient.**

Plaintiff alleges that Storck had a duty to Plaintiff, but the pleading based this entirely upon its allegation in First Am. Compl. ¶ 5 that Storck is a "partner and owner" of NIHA. But NIHA is not a proper party to the action as demonstrated above. Plaintiff argued in opposing the motion to dismiss the original complaint that Storck is involved in Physical Medicine Associates, LLC, which is the location at which Evans conducted her internship, but then failed to plead this fact in her First Amended Complaint despite clear notice that this was an issue. If the Court reaches the issue of the parties rather than dismissing the suit for failure to state a claim, it should not allow Evans yet another opportunity to amend their complaint when the minimally proper method of pleading Storck was made plain prior to the First Amended Complaint but Evans failed to do so, especially as Storck is not individually liable in any event.

**2.  The Pleading Does Not Make Out a Case Against Storck in his Personal Capacity.**

**a.  Generally, cases under the District of Columbia Human Rights Act may not be brought against individuals in their personal capacity given District of Columbia Law about the liability of LLC members to third-parties and the requirement that DCHRA suits be levied against employers.**

The Respondent Superior claims made in the Complaint, at most, arguably point to Physical Medicine Associates, LLC, the location of Evan's internship. They do not point to

24

Storck in his individual capacity no matter what his connection to PMA or co-defendant NIHA. The District of Columbia courts have addressed those rare instances when sexual harassment suits may be laid at the feet of an employer in his individual capacity, and none of the facts that can lead to such a finding are alleged in the First Amended Complaint.

Even were Plaintiff to allege that Storck is an owner of PMA/CIBT, where the events complained of unfolded (a matter that Plaintiff has not plead even in her First Amended Complaint, *see* First Amended Complaint, ¶ 5), as a matter of law Storck cannot be found to be personally liable and he should be dismissed as a Defendant. As a threshold matter, mere membership in an limited liability company is not adequate to place individual liability. Suits against individuals are in fact barred on this basis:

> (b) Except as otherwise provided by this chapter or as expressly provided in the articles of organization, no member, manager, employee, or other agent of a limited liability company shall have any personal obligation for any debts, obligations, or liabilities of a limited liability company, whether such debts, obligations, or liabilities arise in contract, tort, or otherwise, solely by reason of being a member, manager, employee, or agent of a limited liability company. D.C. Code § 29-1014  (2008) (Liability to third parties).

It would therefore take some conduct on the part of Storck to place personal liability, or a means to pierce the corporate veil. As argued below, this complaint alleges no facts that could support such a finding.

**b.      The general rule in sexual harassment cases under both Federal and District of Columbia law is that suits against persons in their individual capacity are not favored.**

To survive a motion to dismiss Storck in his individual capacity, Plaintiff must demonstrate either direct participation by him or a corporate veil that insufficiently covers him because he is operating a company as an alter ego. In sexual harassment cases, courts have

examined the issue and consistently found that individual supervisors and employees cannot be

held personally liable for actions which subject the employer to the federal equivalent of the

District of Columbia Human Rights Act ("DCHRA"), which is liability under Title VII, 42 U.S.C.

§ 2000e *et seq. See Silk v. City of Chicago* 194 F.3d 788, 797 n.5 (7th. Cir. 1999).

Title VII cases are apposite here because D.C. Courts look to federal cases interpreting

Title VII, 42 U.S.C. § 2000e-16 in construing the DCHRA under which the instant suit is filed.

*See Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship,* 518 F. Supp. 2d 179, 183 (D.D.C. 2007);

*Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 134 (D.D.C. 2004).[7]

The established rule in a majority of circuits, including the District, is that personal

capacity suits against individual supervisors or managers are inappropriate under Title VII. *See,*

*e.g., Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 1997 U.S. Dist. LEXIS 11110,

1997 WL 431830, at 2-3 (D.D.C. 1997); *Haynes v. Williams*, 88 F.3d 898, 901 (10th Cir. 1996);

*see Wathen v. General Elec. Co.*, 115 F.3d 400, 404-06 (6th Cir. 1997). "'The proper method for

a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory

employees as agents of the employer or by naming the employer directly.'" *Sauers v. Salt Lake*

*County*, 1 F.3d 1122, 1125 (10th Cir. 1993) (quoting *Busby v. City of Orlando*, 931 F.2d 764,

772 (11th Cir. 1991)).

---

[7]   When the action is brought against not only the employer and but also against one
or more employees in their official or representative capacity, the claims against the employees
merge with the claim against the employer. *Gary v. Long*, 313 U.S. App. D.C. 403, 59 F.3d 1391
(D.C. Cir.), *cert. denied*, 116 S. Ct. 569 (1995); *see Sauers*, 1 F.3d at 1125; *Busby*, 931 F.2d at
772. The dismissal of the official or representative capacity suits promotes "judicial economy and
efficiency" and "prevents the possibility of juror confusion." *See Cooke*, 973 F. Supp. at 3; *Land
v. Midwest Office Technology, Inc., et al.*, 979 F. Supp. 1344 (D.C.Ka. 1997). The Plaintiffs
interests are protected by seeking relief against the actual company(ies) that employed them, not
by carrying the Court thorough a lengthy effort to somehow parts a corporate actor away from
the corporation in which he functions.

Moreover, "courts have determined that individuals cannot be "employers" under Title VII. *See Gastineau v. Fleet Mortgage Corp.* 137 F.3d 490, 493-94 (7th Cir. 1998) and *Sullivan v. Presstronics, Inc.,* 1997 U.S. Dist. LEXIS 8402, 1997 WL 327126 (N.D. Ill. 1997)(*citing Williams v. Banning,* 72 F.3d 552, 554-555 (D.D.C. 1995), U.S. App. LEXIS 36367; 69 Fair Empl. Prac. Cas. (BNA) 865; 67 Empl. Prac. Dec. (CCH) P43,807 (1995) (dismissing Tile VII claim against an owner of a small, closely held business because there is no owner exception to the rule that supervisors cannot be held liable under Title VII). *Sanchez v. Magnum Insurance Agency Co., Inc.* et al, 2001 U.S. Dist. LEXIS 11079 (N.D. Il. 2001).

Given this disfavor against individual capacity suits, they may only be sustained in unusual cases: either the individual's own conduct independently give rise to an action under statute or contract, generally due to actual participation in the harassment, or because the activity was outside the corporate protection as it was conducted *ultra vires* or in which the corporate veil can be pierced. Neither was plead here, certainly neither can be demonstrated.

**c.    The pleading does not allege that Storck participated in the alleged wrongs; courts have in fact held that individual liability does not rest in sexual harassment cases.**

By alleging the Storck should have taken certain actions, see First Am. Compl. at ¶¶ 78 ("a duty to warn"), Plaintiff appears to be asserting that Storck's alleged participation in the claimed conduct makes him individually liable. But reading the Complaint reveals no alleged misfeasance on Storck's part, but merely alleged omissions Plaintiff asserts would have protected her from alleged misconduct; Plaintiff should have been told about Kulawy's history, and a formal process for communication to Evans about how to make a complaint in a small office where the staff were known to Evans.

27

Even in jurisdictions where participation is seen as a route to individual exposure, the pleading here would be insufficient. In Pennsylvania, for example, a plaintiff in a sexual harassment suit indirectly asserted the 'participation theory,' under which a corporate officer can be held individually liable as an actor for *participating* in tortious activity. See *Wicks*, 503 Pa. at 621. The Supreme Court of Pennsylvania has endorsed the following definition of 'participation theory:'

> The general, if not universal, rule is that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such tort, nor for the acts of other agents, officers or employees of the corporation in committing it, *unless he specifically directed the particular act to be done or participated, or cooperated therein*. (Emphasis added) Id. at 621-22, citing 3A Fletcher, Cyclopedia of the Law of Private Corporations § 1137, p. 207 (perm. ed. rev. 1975).
> *McGovern v. Jack D's, Inc., et al.*, 2004 U.S. Dist. LEXIS 1985 (E.D. Pa. 2004).

A corporate officer may only be held individually liable if he or she has taken some sort of affirmative act in furtherance of the alleged tort. Even in such a case:

> . . . the court noted that corporate officers may only be held liable for misfeasance, and not 'mere nonfeasance.' Id. at 622. Accordingly, the Wicks court reasoned that the fact that 'a corporate officer should have known the consequences of the liability-creating corporate act . . . is insufficient to create liability.' Id. at 622-23. *McGovern*, 2004 U.S. Dist. LEXIS at 3.

This is precisely the allegation here; not that Storck was complicit in a scheme to sexually harass Plaintiff, but rather that he allegedly should have known about the potential for Kulawy to act improperly and failed to act to inform Evans as to Kulawy's history, and how to tell someone if there was a problem. Whether or not these facts are true, and whether or not they rise to the level of negligence, interpreting the Complaint in favor of the Plaintiff, by her own pleading she at most points to nonfeasance, not malfeasance. No allegation is made that Storck participated in

28

any fashion in the alleged battery or harassment, and as matter of law the suit can at most be

addressed to the corporation, but not to Storck's individually.[8]

> Applying the foregoing to a sexual harassment case, the court in *McGovern* said that:
> Returning to the case at hand, we find that Plaintiff has failed to allege facts which
> would show that the DiMaios directed, participated, or cooperated in tortious
> conduct. Plaintiff has alleged that tortious and criminal conduct occurred, but she
> has not alleged that the DiMaios were complicit in it.
> *McGovern*, 2004 U.S. Dist. LEXIS at 3.

In that case, unlike here, Plaintiff:

> 'alleged that she complained to the DiMaios and that they did nothing in response
> to investigate or stop the harassment,' even under those additional circumstances,
> the court said that 'we believe that this failure to act does not rise to the level of
> affirmative action required by the court in *Wick*, and is more akin to nonfeasance
> than misfeasance. As such, we find that under the facts alleged, the DiMaios could
> not be held individually liable under the 'participation theory.
> *McGovern*, 2004 U.S. Dist. LEXIS at 3.

The facts in the instant case lay even less blame on Storck individually, as it is admitted in the

pleading by Evans that she never came and sought help and informed Storck that she perceived

difficulties. Knowing that the failure by Plaintiff to take the simple, obvious, and available act of

communicating to Kulawy or anyone in a management position that Evans believed she had a

problem, she instead tries to create fault for Storck individually by claiming that he should have

told her who she could speak to in the event of some difficulty. Such pleading does not allege

participation, and must fail as a matter of law.

> **d.    The pleading is insufficient as a matter of law to pierce the
>     corporate veil and take the Plaintiff's cause of action to Storck.**

No facts in the pleading allege, as indeed they could not, that NIHA or PMA are alter

---

[8]    Plaintiff argues in her Opposition that Storck was negligent in hiring Kulawy.
Assuming *arguendo* that Storck "hired" Kulawy, there is no allegation in Complaint that Storck
was negligent in hiring Kulawy, so this argument is without merit.

egos of Storck. As Judge Marten recently considered this test in a Title VII case brought against an individual defendant:

> The exact test will depend upon the particular facts of the case. *Id.* [*Frank*, 3 F.3d at 1362-64]. However, the federal common law doctrine of piercing the corporate veil under an alter ego theory can best be described by the following two-part test: (1) was there such a unity of interest and lack of respect given to the separate identity of the corporation by its shareholders that the personalities and assets of the corporation and the individual are indistinct, and (2) would adherence to the corporate fiction sanction a fraud, promote injustice, or lead to an evasion of legal obligations. *N.L.R.B. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993); *Roberts v. Air Capitol Plating, Inc.*, 1997 U.S. Dist. LEXIS 11245, 1997 WL 446266 (D.C. Ka. 1997).
> *Land v. Midwest Office Technology, Inc., et al.*, 979 F. Supp. 1344 (D.C.Ka. 1997).

These are not simply facts that must be proven, but are allegations that must be plead.

In short:

> to plead a claim of individual liability under the alter ego doctrine, two essential elements must be *plead*: (1) that the person exercises such dominion and control with respect to the transaction attacked that the corporation had no separate will of its own; and (2) that the domination and control was used to commit a fraud or wrong against the plaintiff which proximately caused the plaintiff's injuries." *Lane v. Maryhaven Center of Hope*, 944 F. Supp. at 163 (citations omitted)(emphasis added).
> *Land*, 979. F.Supp. at 1349.

The pleading of individual liability through an alter ego theory, the only remaining vehicle that would place liability with Storck, was not made. Therefore the suit against Storck must be dismissed.

**C.    CIBT Does Not Have the Capacity to be Sued and Must Be Dismissed**.

The suit continues to name CIBT as a defendant, even though Placement Defendant's prior motions made it clear that CIBT is a tradename, or "doing business as" name. CIBT is not a legal entity, and does not have the capacity to be sued under F.R.C.P. Rule 17(b). The amended complaint now correctly describes CIBT as a tradename for PMA, First Am. Compl. at ¶ 4 and 6.

Yet the caption of the amended complaint continues to list CIBT as the party. CIBT cannot be a proper party to a law suit and must be dismissed.

In an innovative argument, Plaintiff attempts to turn this into a disputed fact by claiming that this is an issue because "Storck informed Jon Pinkus, a process server for the Plaintiff, on June 11, 2008, that he (Storck) was authorized to accept service for the Center, information from which it is reasonable to infer status as a legal entity, and knowledge on Storck's part of that status." Plaintiff's Statement of Material Facts in Dispute Regarding Defendants' Motion to Dismiss of June 19, 2008, ¶ 8.

Though Storck disputes this as a factual matter, the issue here is one of law. The effort to describe a dramatic encounter including impertinent comments about Stork's supposedly "clenched teeth" in the affidavit of Kulawy's alleged service through Storck aside, the idea that Storck's failure to engage a process server in a legal debate over the existence of a corporate entity as an argument for its existence has no merit. That Storck, a non-lawyer, should be aware of the technicalities of proper parties under the federal rules is also absurd. CIBT either is or is not a tradename, and it either is or is not a legal entity. A search of the D.C. Corporations database, where NIHA and PMA are organized and can be found, shows no legal entity by that name. Amazingly, though Defendants have been forthcoming and explained that the entity at issue is PMA, an actual legal entity that uses CIBT as a tradename, Plaintiff persists in trying to sue a mere name and use that to create an issue of dispute.

## CONCLUSION

Plaintiff has failed to meet crucial elements of all of the claims made. For its battery claim, the pleading does not reveal intention, and more importantly demonstrates ongoing implied

31

consent and a failure to communicate a lack of consent necessary for battery, particularly where

the touch is not clearly offensive. Plaintiff has not shown that an unpaid intern can meet any of the

elements of sexual harassment under the DCHRA. Further, Evans conduct was contributorily

negligence, allowed an alleged pattern of practice to continue unremarked, which she now states

were unwelcome and caused her harm. This was argued in more detail in TWC's motion to

dismiss, a motion which if granted would require dismissal against all of the Placement

Defendants as well. For these reasons, all counts against the Placement Defendants should be

dismissed with prejudice.

Should the Court deny the two motions to dismiss the First Amended Complaint, the

Placement Defendant's then urge that NIHA, Storck, and CIBT be dismissed. The pleading makes

no connection between NIHA and events, as indeed there is none, connects Storck only through

NIHA which is not involved, and in any event the pleading does not make out a case for personal

liability on its face. Finally, CIBT does not have the capacity to be sued. All counts should be

dismissed against these Defendants with prejudice.


_Alan Dumoff_
_____
Alan Dumoff
Law Office of Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
D.C. bar No. 425926
voice: 301-987-0970
fax: 301-987-0971
alandlmc@aol.com

32

## CERTIFICATE OF SERVICE

I certify that I have served the attached MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS STEVEN KULAWY, D.C., NATIONAL INTEGRATED HEALTH ASSOCIATES, LLC, CENTER FOR INTEGRATIVE BODY THERAPIES, AND DANIEL G. STORCK'S MOTION TO DISMISS SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO F.R.C.P. 12(b)(6) upon the parties below by successfully filing it through the Courts' CM/ECF electronic notification system on August 4th, 2008.

James R. Klimaski, Esq.
Klimaski & Associates P.C.
1625 Massachusetts Avenue, NW
Suite 500
Washington, D.C. 20036-2245

Date: August 4, 2008

_____
Alan Dumoff

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Ms. Jamie Evans,

     Plaintiff,

     v.                          Case No. 1:08-cv-00875

The Washington Center for
Internships and Academic Seminars, et al.

     Defendants

## ORDER

UPON CONSIDERATION of the Motion of Defendants Stephen Kulawy, D.C., National Integrated Health Associates, LLC, Center for Integrative Body Therapies, and Daniel G. Storck to Dismiss Second Amended Complaint for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6), and any Oppositions and Replies thereto, it is this ____ day of _____, 2008,

ORDERED that the Motion of the above-named Defendants be, and hereby is, GRANTED, that the First Amended Complaint is hereby dismissed with prejudice in its entirety.

(OR, ALTERNATIVELY,)

____  ORDERED, that the motion to dismiss National Integrated Health Associates, LLC from the above-captioned action is hereby GRANTED, and it is dismissed from the action with prejudice;

____  ORDERED that the motion to dismiss Daniel G. Storck from the above captioned case is hereby GRANTED, and he is dismissed from the action with prejudice;

____  ORDERED that the motion to dismiss the Center for Integrative Body Therapies is hereby GRANTED, and it is dismissed from the action with prejudice.

SO ORDERED:             _____

                              Hon. Ellen S. Huvelle
                              United States District Judge

Copies to:

James R. Klimaski
Klimaski & Associates, P.C.
1625 Massachusetts Ave., N.W., Suite 500
Washington, DC 20036-2245
Tel.: (202) 296-5600
Fax: (202) 296-5601
Email: klimaski@klimaskilaw.com
Counsel for Plaintiff

Leslie H. Wiesenfelder
Dow Lohnes PLLC
1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C. 20036
Tel: (202) 776-2726
Fax: (202) 776-4726 or (202) 776-2222
Email: lwiesen@dlalaw.com
Counsel for Defendant Washington Center for Internships and Academic Seminars

Alan Dumoff
30 Windbrooke Circle
Gaithersburg, MD 20879
Tel.: (301) 987-0970
Fax: (301) 987-0971
Email: alandlmc@aol.com
Counsel for Defendants Steven Kulawy, Center for Integrative Body Therapies, Daniel Storck, and National Integrated Health Associates