IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMIE EVANS, <br><br>            Plaintiff, <br><br> v. <br><br> THE WASHINGTON CENTER FOR INTERNSHIPS AND ACADEMIC SEMINARS, <br><br> STEVEN KULAWY, <br><br> CENTER FOR INTEGRATIVE BODY THERAPIES, <br><br> DANIEL STORCK, and <br><br> NATIONAL INTEGRATED HEALTH ASSOCIATES, <br><br>            Defendants. | Case No. 1:08-cv-00875-ESH |

**REPLY OF DEFENDANT WASHINGTON CENTER FOR INTERNSHIPS
AND ACADEMIC SEMINARS TO JAMIE EVANS' OPPOSITION TO ITS MOTION
TO DISMISS COUNT I OF THE FIRST AMENDED COMPLAINT**

Leslie H. Wiesenfelder (D.C. Bar. No. 173500)
Adam M. Jones (D.C. Bar. No. 973761)
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C. 20036
Tel:   (202) 776-2726
Fax:   (202) 776-4726 or (202) 776-2222

Attorneys for Defendant Washington
    Center for Internships and
    Academic Seminars

Dated:   September 4, 2008

Defendant Washington Center for Internships and Academic Seminars ("TWC"), by and through counsel, hereby respectfully submits this reply to Ms. Evans' Opposition to its motion to dismiss Count I of the First Amended Complaint,[1] which is the sole cause of action asserted against it, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

TWC's motion to dismiss is based on its contention that Ms. Evans' claims against TWC are barred as a matter of law under the doctrines of contributory negligence and avoidable consequences. However, despite the fact that the Opposition is 18 pages in length, only pages 16-17 address the issue of contributory negligence and Ms. Evans does address the doctrine of avoidable consequences at all.[2] The balance of the Opposition is either irrelevant or inapposite. Thus, while Ms. Evans is correct that "the question of [TWC's] negligence raises a multitude of factual issues," Oppo. at 15, not one of those factual issues affects the question of whether her claims are barred as a matter of law under the doctrines of contributory negligence or avoidable consequences based on the factual allegations asserted by Ms. Evans in the First Amended Complaint, all of which are accepted as true for purposes of the instant motion. As a result,

---

[1] Jamie Evans' Opposition to the Motion to Dismiss Count I Against The Washington Center for Internships and Academic Seminars (hereinafter "Opposition" or "Oppo.").

[2] Under the doctrine of avoidable consequences, "[a] person who fails to avert the consequences of a tort, which he could do with slight effort is entitled to no damages for the consequences." Restatement (Second) of Torts § 918 cmt. b. *See* Memorandum of Points and Authorities of Defendant Washington Center for Internships and Academic Seminars in Support of Motion to Dismiss Count I of the First Amended Complaint (hereinafter "TWC's Memorandum" or "TWC's Mem."), Mem. at 16-17, where TWC contends that because the consequences of Dr. Kulawy's conduct could have been avoided if Ms. Evans had undertaken the minimal effort required to inform TWC or Dr. Kulawy's employer, the Center for Integrative Body Therapies ("CIBT"), of Dr. Kulawy's repeated and ongoing touching, comments and advances — which Ms. Evans considered to be sexual harassment and battery — she should be barred from any recovery against TWC. However, because Ms. Evans does not respond to TWC's contentions in this regard, there is nothing for TWC to reply to here.

Section I of Ms. Evans' Opposition, titled "Statement of Facts," is irrelevant to any issue raised by TWC in its motion to dismiss.

Section II.A. of Ms. Evans' Opposition, titled "The Courts Do Not Favor Rule 12(b)(6) Motions," adds nothing because it merely restates the legal standard set forth in TWC's Memorandum at 4, or cites cases that are inapposite.[3]

Section II.B. of Ms. Evans' Opposition, titled "The Precedent the Center Principally Relies Upon Does Not Involve Rule 12(b)(6) Motions," is based on the entirely illusory distinction between facts assumed to be true for purposes of a motion to dismiss and facts established through discovery or trial. It is self-evident that the manner in which a fact is established is irrelevant to the legal effect of that fact on TWC's contention that Ms. Evans' claims are barred by the doctrines of contributory negligence and avoidable consequences. Tellingly in this regard, nowhere in her Opposition is there any assertion by Ms. Evans that any of the facts on which TWC's motion to dismiss is based misstates or mischaracterizes the facts she has alleged.

Section III.A. of Ms. Evans' Opposition, titled "The Question of the Center's Duty to Investigate Dr. Kulawy and Place Ms. Evans in an Internship that Did Not Expose Her to Sexual Harassment Raises Factual Questions that Preclude Grant of a Rule 12(b)(6) Motion," is irrelevant to any issue raised by TWC in its motion to dismiss for two reasons. First, despite Ms. Evans' unsupported and unsupportable contention to the contrary, nowhere in its motion to dismiss has TWC questioned Ms. Evans' allegation that TWC was negligent, which allegation is accepted as true for purposes of the instant motion. Second, as a matter of law, if Ms. Evans was

---

[3] Ms. Evans' reliance on *In re Estate of Joseph P. Curseen v. Ingersoll*, 890 A.2d 191, 194 (D.C. App. 2006), is inapposite because TWC has not contended that the First Amended Complaint should be dismissed for lack of evidence supporting Ms. Evans' factual allegations.

2

contributorily negligent, she is completely barred from recovery against TWC regardless of any alleged primary negligence on TWC's part.

Section III.B. of Ms. Evans' Opposition, titled "Contributory Negligence Is a Question of Fact and Rarely a Question of Law, and a Rule 12(b)(6) Dismissal of a Case Based on this Defense is Inappropriate," finally addresses one of the two grounds on which TWC actually has based its motion to dismiss; namely, whether Ms. Evans' claims are barred as a matter of law under the doctrine of contributory negligence. However, in so doing, she improperly seeks to limit the grounds relied on by TWC in its motion to dismiss by contending that "[t]he crux of the Center's argument is that Ms. Evans did not report Dr. Kulawy's advances to the Center." Oppo. at 17. In fact, however, TWC's position is that "when repeatedly faced with an event or circumstance which triggers an obligation on the part of a reasonable person to take reasonable steps to prevent the injurious consequences that may otherwise result from such event or circumstance, an individual who fails to take these steps will be found to be contributorily negligent as a matter of law." TWC's Mem. at 13. Discharging the affirmative duty she undertook to "[i]nform in a timely and reasonable manner, [CIBT] and/or TWC of any problems that may occur, including substantive work issues, during the course of the internship," Internship Agreement at 1, was only one of the ways a reasonable person in the circumstances in which Ms. Evans found herself could have taken to prevent the injuries she claims.[4]

---

[4] In her Opposition, Ms. Evans does not challenge TWC's introduction of the internship agreement that she entered into with TWC and Dr. Kulawy's employer, CIBT, which is attached to TWC's Memorandum as Exhibit A (hereinafter "Internship Agreement"). *See* TWC's Mem. at 3, Ex. A; Oppo. at 13.

**ARGUMENT**

I. **THE FACTS STATED IN THE FIRST AMENDED COMPLAINT ARE SUFFICIENT TO DEMONSTRATE THAT MS. EVANS WAS CONTRIBUTORILY NEGLIGENT AS A MATTER OF LAW**

In her Opposition Ms. Evans asserts that it would not be appropriate for the Court to grant TWC's motion to dismiss because the case is not in the right "procedural posture" for disposition on a Rule 12(b)(6) motion, Oppo. at 9, and that further development of the facts is necessary to decide the issue of Ms. Evans' contributory negligence. *Id.* at 9-10. These assertions are unavailing because the facts necessary to a determination that Ms. Evans was contributorily negligent as a matter of law have been stated by Ms. Evans herself in the First Amended Complaint and are assumed to be true by TWC for purposes of its motion. *See* TWC's Mem. at 1 ("[a]ssuming the truth of Ms. Evans' factual allegations in the First Amended Complaint for purposes of this motion to dismiss…"). If Ms. Evans' own factual allegations demonstrate that she was contributorily negligent as a matter of law – and thus barred from any recovery against TWC – the Court ought not postpone dismissal of her claims against TWC until after discovery or trial.

Equally unavailing is Ms. Evans' contention that granting TWC's motion to dismiss would somehow constitute "a ruling on the merits, outside the realm of Rule 12(b)(6)." Oppo. at 8. This is because "Rule 12(b)(6) dismissals, and all other accepted forms of pretrial disposition are specifically designed to weed out claims that lack merit as a matter of law." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). Therefore, if the Court, based on the First Amended Complaint, determines that Ms. Evans was contributorily negligent as a matter of law, then no relief may be granted against TWC under District of Columbia law and her claims against TWC

4

should be dismissed regardless of their merits. *See, e.g., Andrews v. Wilkins*, 934 F.2d 1267, 1272 (D.C. Cir. 1991) (citing *Wingfield v. Peoples Drug Store*, 379 A.2d 685, 687 (D.C. 1977)).

It is also important to note that Ms. Evans' assertion, without citation to anything in the record, that TWC "essentially asks this Court to make a finding on the merits that [TWC] did not owe a duty to Ms. Evans to investigate Dr. Kulawy and place her in an internship safe from sexual harassment," Oppo. at 10, is manufactured out of whole cloth. Moreover, the "multitude of factual issues" Ms. Evans seeks to develop, Oppo. at 15, are relevant only to the alleged negligence of TWC and hence have no bearing on whether Ms. Evans' actions as set forth in the First Amended Complaint constituted contributory negligence as a matter of law.

Not only are there are no questions of fact that prevent the Court's grant of TWC's motion, but also Ms. Evans does not claim that any of the facts on which TWC has based its motion to dismiss is inaccurate, much less misstates or mischaracterizes the facts she has alleged in the First Amended Complaint.

## II. THE COURT MAY FIND MS. EVANS CONTRIBUTORILY NEGLIGENT AS A MATTER OF LAW

In stating that contributory negligence is "rarely decided" as a matter of law, Oppo. at 16, and that this Court may find contributory negligence as a matter of law "[o]nly in exceptional cases" where "the evidence is so clear and undisputed that fair-minded men can draw only one conclusion," *id.* (citing *Paraskevaides v. Four Seasons Washington*, 292 F.3d 886, 893 (D.C. Cir 2002)), Ms. Evans is merely reiterating what TWC itself stated in its Memorandum at 6-7. However, as TWC demonstrated in its Memorandum and further demonstrates herein, the instant case meets this standard because Ms. Evan's own factual allegations in the First Amended Complaint constitute "evidence so clear and unambiguous that contributory negligence should be

5

found as a matter of law." *Paraskevaides*, 292 F.3d at 893. Accordingly, there is no need for further factual development on this issue.

### III. MS. EVANS FAILED TO EXERCISE DUE CARE TO PREVENT INJURY AFTER DR. KULAWY'S SEXUAL HARASSMENT AND BATTERY BEGAN AND UPON RECOGNITION OF THE DANGER TO HER POSED BY DR. KULAWY'S REPEATED CONDUCT

#### A. The "Protective Measures" Ms. Evans Took in Response to Dr. Kulawy's Repeated Acts of Sexual Harassment and Battery Upon Her Were Unreasonable As a Matter of Law

In her Opposition, Ms. Evans reiterates the facts stated in the First Amended Complaint that at some undisclosed point in time during her internship at CIBT, "Dr. Kulawy began making advances and comments to Ms. Evans,…repeatedly approached Ms. Evans from behind…and massaged her shoulders,…repeatedly wrapped his arm around Ms. Evans' waist when they were walking through the office, and…repeatedly made comments to Ms. Evans' [*sic*] about her appearance." Oppo. at 5 (citing First Am. Compl. ¶¶ 29-32). In response to Dr. Kulawy's repeated acts of sexual harassment and battery upon her, Ms. Evans states that she took "*what in her mind*, constituted protective measures," including that she "stopped wearing make-up and changed her clothing style to make herself less attractive to Dr. Kulawy." Oppo. at 17 (emphasis added).

However, when faced with a known danger such as Dr. Kulawy's repeatedly engaging in acts of sexual harassment and battery, the law requires an individual to take those actions to avoid injury that were *objectively* reasonable; i.e., reasonable when measured against the conduct of a reasonable person under like circumstances. *See* Restatement (Second) of Torts § 465 (1965). Regardless of whether Ms. Evans genuinely believed her actions in response to Dr. Kulawy's repeated acts of sexual harassment and battery upon her constituted "protective

6

measures," not only did they not protect her, but also *subjective* reasonableness is not the standard. To the contrary, the standard is whether Ms. Evans, "chargeable with notice of what a *reasonably and ordinarily prudent person* would have known and foreseen and chargeable with foreseeing what common experience tells may occur, took proper precautions for her own safety." *Doe v. Prudential Ins. Company of America*, 860 F. Supp. 243, 255 (D.Md. 1993) (emphasis added). The factual allegations in the First Amended Complaint establish that she did not take proper precautions for her own safety as a matter of law because she continued to expose herself to Dr. Kulawy "repeatedly" committing acts of sexual harassment and battery upon her.

Those same factual allegations also establish that Ms. Evans is like the delivery person in *Payne v. Restaurant Corp. of America*, Civ. No. 7866-74 (D.C. Super. June 10, 1976),[5] who was injured while walking backwards up a ramp he knew "was slippery, that it was dangerous, that he had slipped on it before, that caution had to be exercised in traversing it, and that persons having their back to him were washing with a hose the walkway at the top of the ramp." Just as the *Payne* court held based on those "uncontradicted facts" that the plaintiff "acted in a manner that contributed to his own injury" and entered judgment for the defendant, this Court should hold that Ms. Evans similarly contributed to her own injuries by allowing Dr. Kulawy to "repeatedly" commit acts of sexual harassment and battery upon her.[6]

---

[5] This decision has previously been submitted as an Appendix to TWC's Memorandum.

[6] In her Opposition, Ms. Evans does not attempt to distinguish her behavior from the contributorily negligent behavior described in *Payne* or in any of the other cases cited in TWC's Memorandum.

### B. Ms. Evans' Failure to Notify TWC or CIBT of Dr. Kulawy's Behavior was Unreasonable

The facts presented by Ms. Evans establish that neither she nor anyone acting on her behalf notified TWC or CIBT of Dr. Kulawy's "repeatedly" committing acts of sexual harassment and battery upon her – or even attempted to do so – until the day she finally did report his conduct to a CIBT staff member and later that same day to TWC, which resulted in TWC that day removing Ms. Evans from her internship. *See* TWC's Mem. at 5 (citing Plaintiff's Opposition of July 3, 2008[7]). Prior to that day, instead of contacting TWC or CIBT, Ms. Evans "asked her parents how to handle [Dr. Kulawy]" and "asked her fellow summer interns for advice on these unwanted advances." Oppo. at 5 (citing First Am. Compl. ¶¶ 33-37).

Ms. Evans' failure to notify TWC or CIBT is all the more inexplicable in light of the fact that Ms. Evans affirmatively undertook in her agreement with TWC and CIBT to "[i]nform in a timely and reasonable manner, [CIBT] and/or TWC of any problems that may occur, including substantive work issues, during the course of the internship." TWC's Mem. Ex. A (Internship Agreement) at 1. Ms. Evans' attempt in her Opposition to deflect the Court's attention from the never answered question of why she "did not report Dr. Kulawy's sexual advances to" TWC by posing questions such as "what procedures, if any, did [TWC] have in place for reporting problems," Oppo. at 17, is borne of desperation. Tellingly, the First Amended Complaint does not make any allegation that TWC lacked procedures for reporting problems, that TWC's procedures were in any way inadequate, that Ms. Evans was unaware of those procedures, that she tried to contact TWC and was unsuccessful or that she did contact TWC but TWC took no

---

[7] Plaintiff Jamie Evans' Opposition to Defendants National Integrated Health Associates', Center for Integrative Body Therapies', and Daniel G. Storck's June 19, 2008 Motion to Dismiss for Failure to State a Claim Pursuant to F.R.C.P. 12(b)(6) and for Insufficient Service of Process Pursuant to F.R.C.P. 12(b)(5) (hereinafter Pl.'s July 3 Oppo.).

action.[8] The fact that Ms. Evans fails to make any of these allegations against TWC in the First Amended Complaint or even in her Opposition stands in marked contrast to Ms. Evans' allegations that "CIBT/PMA, Mr. Storck, and National Integrated Health Associates did not have any complaint mechanism in place for employees who were subjected to sexual harassment," First Am. Compl. ¶ 39, and that "[i]f CIBT/PMA, Mr. Storck, and National Integrated Health Associates had any complaint mechanisms in place for employees who were subjected to sexual harassment, they did not inform Ms. Evans about them." *Id.* ¶ 40.

Also borne of desperation is Ms. Evans' inaccurate assertion that TWC "claims that Ms. Evans gave up her right to complain against it for failing to investigate Dr. Kulawy because she signed a contract in which she agreed to: Inform in a timely and reasonable manner, [CIBT] and/or TWC [the Center] of any problems that may occur, including concerns regarding substantive work issues, during the course of the internship." Oppo. at 13. As noted above, TWC's Memorandum is silent regarding Ms. Evans' claim that TWC was negligent in placing her at CIBT. Rather, TWC's Memorandum introduces the Internship Agreement solely in the context of TWC's contention that Ms. Evans was contributorily negligent because her failure to adhere to her contractual obligation to inform TWC or CIBT of Dr. Kulawy's repeatedly engaging in actions of sexual harassment and battery upon her contributed to the injuries she alleges in the First Amended Complaint. TWC Mem. at 14. ("Ms. Evans can hardly...deny that her failure to adhere to this provision 'contribute[d] to the plaintiff's injury...'").

---

[8] Compare, for example, Ms. Evans' behavior with the behavior of the plaintiff in *Silvers v. Associated Technical Institute, Inc.*, 1994 WL 879600 (Mass. Super. 1994), which is one of the cases cited and relied on by Ms. Evans in her Opposition at 11-14. Unlike Ms. Evans, the plaintiff in *Silvers* reported her supervisor's repeated sexual assaults and sexual harassment to the placement office that had placed the plaintiff in the job, but the placement office took no action. *Silvers*, 1994 WL 879600 at *2. TWC, however, took immediate action to remove Ms. Evans because on the very same day that "Ms. Evans notified [TWC],...[TWC] immediately removed her" from CIBT. Pl.'s July 3 Oppo. at 4.

Ms. Evans' responses to a known danger were unreasonable. She failed to exercise the care of a reasonably prudent person under like circumstances, and this failure was a contributing cause of the injuries she complains of. Thus, Ms. Evans was contributorily negligent as a matter of law based on her own factual allegations in the First Amended Complaint and her claims against TWC should be dismissed.

**CONCLUSION**

For the foregoing reasons, and for the reasons stated in TWC's Memorandum, defendant Washington Center for Internships and Academic Seminars requests that the Court dismiss Count I of the First Amended Complaint, with prejudice, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

/s/ Leslie H. Wiesenfelder
Leslie H. Wiesenfelder (D.C. Bar No. 173500)
Adam M. Jones (D.C. Bar No. 973761)
DOW LOHNES PLLC
1200 New Hampshire Ave., N.W., Suite 800
Washington, D.C. 20036
Tel:   (202) 776-2726
Fax:  (202) 776-4726 or (202) 776-2222

Attorneys for Defendant Washington
   Center for Internships and
   Academic Seminars

Dated: September 4, 2008